# EXHIBIT B
# Part 1 of 2

Name **Elkin Gomez**

Address **P.O. Box 689    F-205L**

**CTF Central**

**Soledad, CA. 93960-0689**

CDC or ID Number **E-44776**

ORIGINAL **FILED**
Los Angeles Superior Court

MAR 0 2 2006

John A. Clarke, Executive Officer/Clerk

By _____, Deputy

**SUPERIOR COURT**

**COUNTY OF LOS ANGELES**
*(Court)*

**PETITION FOR WRIT OF HABEAS CORPUS**

**Elkin Gomez**
Petitioner

vs.

**Board of Prison Terms**
Respondent

No. _____
*(To be supplied by the Clerk of the Court)*

## INSTRUCTIONS — READ CAREFULLY

- **If you are challenging an order of commitment or a criminal conviction and are filing this petition in the Superior Court, you should file it in the county that made the order.**

- **If you are challenging the conditions of your confinement and are filing this petition in the Superior Court, you should file it in the county in which you are confined.**

- Read the entire form *before* answering any questions.

- This petition must be clearly handwritten in ink or typed. You should exercise care to make sure all answers are true and correct. Because the petition includes a verification, the making of a statement that you know is false may result in a conviction for perjury.

- Answer all applicable questions in the proper spaces. If you need additional space, add an extra page and indicate that your answer is "continued on additional page."

- If you are filing this petition in the Superior Court, you need file only the original unless local rules require additional copies. Many courts require more copies.

- If you are filing this petition in the Court of Appeal, file the original and four copies.

- If you are filing this petition in the California Supreme Court, file the original and thirteen copies.

- Notify the Clerk of the Court in writing if you change your address after filing your petition.

- In most cases, the law requires service of a copy of the petition on the district attorney, city attorney, or city prosecutor. See Penal Code section 1475 and Government Code section 72193. You may serve the copy by mail.

Approved by the Judicial Council of California for use under Rules 56.5 and 201(h)(1) of the California Rules of Court [as amended effective January 1, 1999]. Subsequent amendments to Rule 44(b) may change the number of copies to be furnished the Supreme Court and Court of Appeal.

Form Approved by the
Judicial Council of California
MC-275 [Rev. January 1, 1999]

**PETITION FOR WRIT OF HABEAS CORPUS**

Penal Code, § 1473 et seq.;
Cal. Rules of Court, rules 56.5, 201(h)

**This petition concerns:**

| | | | |
|---|---|---|---|
| ☐ A conviction | | ☒ Parole | |
| ☐ A sentence | | ☐ Credits | |
| ☐ Jail or prison conditions | | ☐ Prison discipline | |
| ☐ Other *(specify)*: _____ | | | |

1. Your name:   Elkin Gomez

2. Where are you incarcerated?   Correctional Training Center, P.O. Box 689, Soledad, Ca.

3. Why are you in custody?   ☒ Criminal Conviction   ☐ Civil Commitment

   *Answer subdivisions a. through i. to the best of your ability.*

   a. State reason for civil commitment or, if criminal conviction, state nature of offense and enhancements (for example, "robbery with use of a deadly weapon").

   Kidnap/Extortion

   b. Penal or other code sections:   209(a), 12022(a)

   c. Name and location of sentencing or committing court:   Los Angeles Supreior Court

   d. Case number:   A961451

   e. Date convicted or committed:   1989

   f. Date sentenced:   1/16/1990

   g. Length of sentence:   "Straight Life Sentence" with possibility of parole P.C. 3046

   h. When do you expect to be released?   Unknown

   i. Were you represented by counsel in the trial court?   ☒ Yes.   ☐ No.   If yes, state the attorney's name and address:

      Unknown

4. What was the LAST plea you entered? *(check one)*

   ☒ Not guilty   ☐ Guilty   ☐ Nolo Contendere   ☐ Other: _____

5. If you pleaded not guilty, what kind of trial did you have?

   ☒ Jury   ☐ Judge without a jury   ☐ Submitted on transcript   ☐ Awaiting trial

6. GROUNDS FOR RELIEF

**Ground 1:** State briefly the ground on which you base your claim for relief. For example, "the trial court imposed an illegal enhancement." *(If you have additional grounds for relief, use a separate page for each ground. State ground 2 on page four. For additional grounds, make copies of page four and number the additional grounds in order.)*

See Attached pp. i-vi

a. Supporting facts:

Tell your story briefly without citing cases or law. If you are challenging the legality of your conviction, describe the facts upon which your conviction is based. *If necessary, attach additional pages.* CAUTION: You must state facts, not conclusions. For example, if you are claiming incompetence of counsel you must state facts specifically setting forth what your attorney did or failed to do and how that affected your trial. Failure to allege sufficient facts will result in the denial of your petition. (See *In re Swain* (1949) 34 Cal.2d 300, 304.) A rule of thumb to follow is: *who* did exactly *what* to violate your rights at what time *(when)* or place *(where)*. *(If available, attach declarations, relevant records, transcripts, or other documents supporting your claim.)*

See Attached pp. i-vi

b. Supporting cases, rules, or other authority (optional):

*(Briefly discuss, or list by name and citation, the cases or other authorities that you think are relevant to your claim. If necessary, attach an extra page.)*

See Attached pp vii-viii

7. **Ground 2** or **Ground** _____ *(if applicable):*

_____

_____

_____

_____

a. Supporting facts:

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

b. Supporting cases, rules, or other authority:

_____

_____

_____

_____

_____

8. Did you appeal from the conviction, sentence, or commitment? ☐ Yes. ☒ No. If yes, give the following information:

   a. Name of court ("Court of Appeal" or "Appellate Dept. of Superior Court"): _____

   b. Result: _____    c. Date of decision: _____

   d. Case number or citation of opinion, if known: _____

   e. Issues raised: (1) _____

        (2) _____

        (3) _____

   f. Were you represented by counsel on appeal? ☐ Yes. ☐ No. If yes, state the attorney's name and address, if known:

_____

9. Did you seek review in the California Supreme Court? ☐ Yes. ☒ No. If yes, give the following information:

   a. Result: _____    b. Date of decision: _____

   c. Case number or citation of opinion, if known: _____

   d. Issues raised: (1) _____

        (2) _____

        (3) _____

10. If your petition makes a claim regarding your conviction, sentence, or commitment that you or your attorney did not make on appeal, explain why the claim was not made on appeal:

_____

_____

11. Administrative Review:

   a. If your petition concerns conditions of confinement or other claims for which there are administrative remedies, failure to exhaust administrative remedies may result in the denial of your petition, even if it is otherwise meritorious. (See *In re Muszalski* (1975) 52 Cal.App.3d 500 [125 Cal.Rptr. 286].) Explain what administrative review you sought or explain why you did not seek such review:

NA

_____

_____

_____

_____

_____

_____

_____

_____

   b. Did you seek the highest level of administrative review available? ☐ Yes. ☒ No.

   *Attach documents that show you have exhausted your administrative remedies.*

12. Other than direct appeal, have you filed any other petitions, applications, or motions with respect to this conviction, commitment, or **issue** in any court? ☐ Yes. If yes, continue with number 13. ☒ No. If no, skip to number 15.

13. a. (1) Name of court: _____

     (2) Nature of proceeding (for example, "habeas corpus petition"): _____

     (3) Issues raised: (a) _____

          (b) _____

     (4) Result (Attach order or explain why unavailable): _____

     (5) Date of decision: _____

  b. (1) Name of court: _____

     (2) Nature of proceeding: _____

     (3) Issues raised: (a) _____

          (b) _____

     (4) Result (Attach order or explain why unavailable): _____

     (5) Date of decision: _____

  c. For additional prior petitions, applications, or motions, provide the same information on a separate page.

14. If any of the courts listed in number 13 held a hearing, state name of court, date of hearing, nature of hearing, and result:

_____

_____

15. Explain any delay in the discovery of the claimed grounds for relief and in raising the claims in this petition. (See In re Swain (1949) 34 Cal.2d 300, 304.)

_____

_____

16. Are you presently represented by counsel? ☐ Yes. ☒ No. If yes, state the attorney's name and address, if known:

_____

_____

17. Do you have any petition, appeal, or other matter pending in any court? ☐ Yes. ☒ No. If yes, explain:

_____

_____

18. If this petition might lawfully have been made to a lower court, state the circumstances justifying an application to this court:

_____

_____

I, the undersigned, say: I am the petitioner in this action. I declare under penalty of perjury under the laws of the State of California that the foregoing allegations and statements are true and correct, except as to matters that are stated on my information and belief, and as to those matters, I believe them to be true.

Date: 2/18/06 _____
                                       (SIGNATURE OF PETITIONER)

I
ARGUMENT

The board violates equal protection guarantees pursuant to the due process clauses of both California and Federal Constitution as pretaining to petitioner as follows:

1)   California parole scheme creates a liberty interest;

2)   Board fails to adhere to legislates intent of incorporated by cross reference statutes;

3)   Board fails to adhere to mandatory language of regulation Sections 2280-2291, tri-paritiate matrix maximum terms establishing violation of federal constitution 6th amend

4)   Register 81 No. 37, filed 9/8/81, is not a mandatory section of general guidelines as this curtails a combination of three different intents by the (BPT) regulation management division to offer guidelines for murder of an initiative without voters ratification pursuant to Cal. Const. Art. 10(c).

II
ARGUMENT

The board uses 3041 exception to recharacterize petitioners crime: The decisions are arbitray and capricious, violating equal protection and due process rights: The board violates statutory intent and regulation of incorporation by incorporated by cross reference statutes:

1)   The board fails to provide release pursuant to mandatory language of P.C. 3000(b)(1);

2)   The board fails to comply with the "new information" or the "preponderance of evidence" standard;

3)   The board mis-applies the "some evidence" standard;

4)   The board fails to follow the legislates intent of mandatory uniformity/porporationality of punishment pursuant to the determinate Sentencing Laws scheme;

5)   The board violates equal protection and "substantive"

i

due process by overstepping their jurisdiction;

6) The board violates Federal Constitution 6th Amendment by exceeding regulation that establishes a maximum.

7) The board vandalisizes statutory schemes of the misdemeanors intent by recharacterizing them and classifying them as felony's, overstepping jurisdiction;

8) The board uses the exception to parole rather than the norm, with a <u>low level review</u> of "some evidence" standard thats for a court to review;

9) The board violates Federal Constitution 14th Amendment, by attaching involuntary subjection to psychiatric's, to establish a behavior modification;

10) The board violates equal protection of P.C. 5011(b) by requiring self incrimination of a showing of remores;

11) The board creates a new statute thats provides a guarantee illegals from returning to the United States;

12) The board and or D.A. fabricates reports of Probation Officer in recharacterizing the case, creating false information not found by tier of fact by jury or trial court.

### III
### ARGUMENT

The board violates intent of legislates Tri-paritiate matrix to trigger the exception P.C. 3041(b) to deny (MERPD) actual "A" dates of release to parole, pursuant to suprevision of probation officers 3000(a), of uniformity/porporationality of punishment pursuant to the Determinate Sentencing Laws scheme as follows:

1) The board abused term of regulations pursuant to the meaning of statutes of incorparated by cross reference doctrine and theory;

2) The board violates the Doctrine Of Prison And Campus Context, as 3041(a)(b), vice of vagueness is concealed;

3) The board violates the penological plan of discreationary retention that establish tri-paritiate matrix terms;

4) The board has recharacterized the crime from kidnap with

ii

no bodily injury to murder, denying on 5 grounds of P.C. 190.2 and Rules of Court 421 aggravating circumstances thats not found by jury or Trial judge;

5) The board violates a protected liberty interest in re- lease to parole established by case law of the Supreme Court, where language of a statute or regulation make or uses mandatory commands in statutes or regulations;

6) The board fails to follow contemporaneous opinions of case law and of the A.G. <u>60 Ops. Att. Gen. 143</u>, where, regulations of section 2000 et seq.,., 2200 et seq.,., 2300 et seq.,. with 2281-2291 were not established by (APA) or (OAL) as administrative guidelines but rather as the legislates intent of the Determinate Sentencing laws term setting scheme for all "to life" and "life pri soner/straight life sentences of Both ISL and DSL inmate

7) The board violates procedural due process, as one of "equity" requiring a balancing and assessment of facts that does not run contrary to uniformity and porportion- ality of the rehabilitative DSL's goals.

## IV
### ARGUMENT

The board violates penal code 3041 objective, evades difficult and unpleasuant situtation of established Federal Due Process as to rights of parole by the Dannenberg court application and its interpretation of 3041 vague meaning as follows:

1) The board violates California parole scheme, violating regualtion that establish maximum terms, that establish a federal equal protection due process right not to be placed twice in jeapordy of finality of maximum term;

2) The state courts interpretation is contray to federal due process rights, as statute create a liberty interest for certain crimes as committed under the DSL scheme;

3) The interpretation of Sass & Dannenberg effectively has destroyed 25 years reliance on plain language, to erase

due process rights, disposing of porporationality for
murder <u>only</u>, to ignore jury verdicts, facts admitted to,
violating case law intent of "some evidence" standard;

4) The Dannenberg decision renders suitability factors as
vague, violating Judicial Council sentencing rules and
statutory intent of cross reference as established by
60 Ops. Att. Gen 143.

5) The Dannenberg line of cases, are used to hide and evade
that these sentences were not drafted as part of the DSL
nor ISL scheme and that no provisions or mandates exist
in which to govern or moderate said terms under prior
law or the exception 3041, violating a cognizable liber-
ty interest pursuant to the federal constitution, where
3041 language is virtually identical to Greenholtz & Allen

V

ARGUMENT

The Sass & Dannenberg decision is clearly contrary to estab-
lished United States Supreme Court law; violating a protected lib-
erty interest to release to parole pursuant to legislates incor-
porated by cross reference statutory scheme of the Determinate
Sentencing Law as follows:

1) The some evidence standard is contray to established
Supreme Court Law as adopted in state court fundamental
low level evidentiary review;

2) The some evidence has no standard of tier of facts as en-
unciated in statutory language of incorporated statutes;

3) The Dannenberg decision is contrary to contemporaneous
case law and 60 Ops. Att. Gen. 143, established by regu-
lations matrix;

4) The Dannenberg eliminates the standard of comparative term
by recharacterizing the terms without a preponderance
of evidence;

5) The Dannenberg & Rosenkrantz decisions allow the crime to
be used to be treated as a bar to release, irrespective

iv

of risk or danger, violating legislative intent of penal code statutes. i.e. 1170.1, 3041 & 3000 et seq.,.

6) The Rosenkrantz and Dannenberg violates equal protect and due process in permitting recharacterizing the crime to a greater degree beyond presumptive ranges;

7) The Dannenberg, Rosenkrantz decisions has allowed the board to violate incorporation of incorporated by cross reference statutes and to combine the six different type of sentences and their scheme into one by borrowing a little from this and to take a little from that, in an attempt to make a coherent parole release scheme, violate mandatory statutory scheme;

8) The state court evade consideration of federal issues of rights by an obvious subterfuge to evade interpretation of statutes;

9) The boards discreation violates the presumption of Evid. Code S 605, that implements public policy, in eliminating uniformity and porportionality of uniformity of punish-ment in adopting certain procedures for hearings;

10) The legislates intent of statutory enactments limit the board to what procedure they use in the fixing of maximum release date pursuant mandatory language

11) The "some evidence" standard was never meant to be used for review by the Board as a denial source of parole as established by United States Supreme Court case law, as the preponderance evidence standard and Evid. Code S 115

B. The Dannenberg decision is contrary to clearly establish-ed Supreme Court Law as it relies on vague language as follows:

1) The Dannenberg decision has allowed vague meanings, where men of common intelligence guess at the meaning, and in-vite arbitray & discriminatory enforcement;

2) The board recharacterizes every crime to a greater degree and uses rote wording  using the crime continues as the reason of denial;

3) The above case line Dannenberg, creates a constructive change, as such, a change is a constructive amendment to

crime charged to establish a greater degree of the crime;

4) The decisions have taken statutory terms of three possible terms outside the matrix; As these finding are not made by jury or judges violating the due process of Appendi & Blakely, as petitioner had a jury trial on aggravating circumstances;

5) As noted before Sass, Dannenberg & Rosenkrantz line of cases were not drafted as part of the ISL nor the DSL and this line of cases would not be moderated or governed pursuant to the DSL's statutory scheme, making kidnap outside the Dannenberg and Sass line of cases, violating equal protection and due process of federal constitution;

6) The Dannenberg decisions has allowed violation to occur every time the Board, D.A., A.G. or Governor makes finding about the crime being "exceptionally callous", or "exceptionally heinous, atrocious and cruel", or "dispassionate and calculated", or "trivial or insignificant" as these circumstances are found by jury or sentencing judge at sentence, in violation of jurisdiction

7) California statutory scheme for release to parole creates a presumption of release and establishes a liberty interest by mandatory language of penal codes and regulations that establish tri-paritiate terms within the matrix.

# TABLE OF AUTHORTIES

| CASES | PAGES |
|---|---|
| Perveler v. Estelle (9th Cir. 1992) 974 F.2d 1132, 1134 | 2,12,27 |
| Moody v. Dagget (1976) 429 U.S. 78, 50 L.Ed. 326, 97 S.Ct. 274 | 2,27 |
| U.S. v. Dexter (10th Cir. 1998) 143 F.3d 577 | 3 |
| Schweiker v. McClure 456 U.S. 188, 195, 102 S.Ct. 1665 (1982) | 3 |
| O'Bremski v. Maas (9th Cir. 1990) 915 F.2d 418, 422 | 3 |
| Greenholtz v. inmates of Neb. penal & Corr. Comp. (1979) 442 U.S1 | passima |
| Meachum v. Fano 427 U.S. 458, 101 S.Ct. 2460 | 3 |
| Board of Allen (1987) 482 U.S. 369, 107 S.Ct. 2415 | passima |
| Stanworth 33 C.3d 182 | passima |
| Stoneham v. Rushen (1982) 137 C.A. 3d 729, 188 C.R. 130 | 3,11 |
| Norman G. Morrall (2002) 102 C.A. 4th 280 | 4 |
| United States v. Booker (2004) U.S. App. Lexis 14223 (7th Cir. 7/9/04). | 5 |
| Powell 45 C.3d 895 (1985) | 5,20 |
| Biggs v. Terhune (2003, 9th Cir.) 334 F.3d 910 | 5,7,12,27 |
| Canterino v. Wilson 546 F. Supp. 174, 208-09 (W.D.Ky. 1982) | 6 |
| Gain 10 Cal. 4th 1, 892 P.2d 1224, 40 C.R.2d 481 (1985) | 6 |
| Blany (1947) 30 C.2d 643, 184 P.2d 892 | 9 |
| Saad (1951) 105 C.A.2d Supp. 851, 234 P.2d 785 | 9 |
| Martin (1986) 42 C.3d 437, 299 C.R. 131, 722 P.2d 785 | 9 |
| People v. Jefferson 21 Cal. 4th 86 | 9 |
| Montoya v. United States Parole Commission (10th Cir 1990) 908 F.2d 635 | 9 |
| Monore v. Tripon (11th Cir. 1991) 932 F.2d 1437, 1439-41 | 10 |
| McQuillion I, 306 F.3d 902 | passima |
| American Friends Service Committee v. Procunier (1973) 33 C.A.3d 252, 109 C.R. 22 | 11 |
| Sass v. California Bd. of Prison Terms 376 F. Supp.2d 975 (2005) | 12-28 |
| Ramirez (2001) 94 C.A.4th 549 | 12-28 |
| Rosencrantz (2002) 29 C.4th 616 | 12-28 |
| Dannenberg (2005) 34 C.4th 1061 | 12-28 |
| Jeanice D. (1980) 28 C.3d 210 | 12-28 |
| Schengrath (1967) 66 C.2d 295, 57 C.R. 600, 425 P.2d 200 | 13 |
| People v. Rodriguez (1975) 14 C.3d 639, 122 C.R. 552 | 14 |

### TABLE OF AUTHORITIES CONTINUED

| CASES | PAGES |
|---|---|
| People v. Lynch (1972) 8 C.3d 410 | 14 |
| People v. Duarte 143 C. A. 3d 943 | 14 |
| People v. Seabock 140 C.A. 3d 29 | 14 |
| Consolidated Edison Co. of New York v. NLRB 305 U.S. 197 (1939) | 14 |
| Chrysler Corp. v. U.S. Environmental Protection Agency C.A. 631 F.2d 865, 890 | 14 |
| Mullaney v. Wilbur 421 U.S. 684, 691 (19750 | 14 |
| Wisconsin v. Mitchell 508 U.S. 476, 484 | 15,18 |
| Apprendi v. New Jersey (2000) 530 U.S. 466 | 17,24,25 |
| Blakely v. Washington (2004) 542 U.S. 296 | 17,24,25 |
| Peltier v. Wright 15 F.3d 860 | 18 |
| Evitts v. Lucy (1985) 469 U.S. 387, 393 | 19 |
| Griffin v. Illinois (1956) 351 U.S. 12, 20 | 19 |
| In re Demond (1985) 165 C.A.3d 932, 211 C.R. 680 | 19 |
| People v. McDowell (1988) 46 C.3d 551 | 20 |
| People v. Fudge (1994) 7 Cal. 4th 1117 | 20 |
| People v. Bean (1988) 46 C.3d 919 | 20 |
| United States v. Doremas (9th Cir. 1989) 888 F.2d 630, 634 | 23 |
| Schwartzmiller v. Gardner (9th Cir. 1989) 752 F.2d 1341, 1346 | 23 |
| Supreior Court of Santa Clara v. Engert (1982) 31 C.3d 797,805 | 23 |
| Godfrey v. State of Georgia (1980) 446 U.S. 420 | 24 |
| Shell v. Mississippi (1990) 486 U.S. 1, 3 | 24 |
| Jones v. Smith (9th Cir. 2001) 231 F.3d 1227, 1232-33 | 24 |
| Stirone v. United States 361 U.S. 212, 218 (1960) | 24 |
| People v. Black 35 C. 4th 1238 (2005) | 26 |
| Kansas v. Crane No. 00957, 2002 DJDAR | 27 |
| Bergen v. Spaulding (9th Cir. 1989) 881 F.2d 719, 721 | 27 |
| Powell v. Gomez (9th Cir. 1994) 33 F.3d 39, 40 | 27 |

### OTHER AUTHORITIES

| | |
|---|---|
| 13 Stanf. L. Rev. 341 | 9 |
| 50 Cal. L. Rev. 651 | 9 |
| 26 Stanf. L. Rev. 855 | 9 |
| 60 Ops. Att. Gen. 143 | 11,13,16,17,19 |
| Prop. 7, 1978 | passima |

TABLE OF AUTHORITIES CONTINUED

| PENAL CODES | PAGES |
|---|---|
| 17(b)(3) | 5 |
| Prop. 7, 190 | passima |
| Prop. 7, 190.2 | 9 |
| 209(a)(b) | passima |
| 1168(a)(b) | 1 |
| 1170(a)(1)(b)(2) | 14,16,17,18 |
| 1170.1 | 14,16,17,18 |
| 1170.2(a)(b) | 14,16,18 |
| 2931 | 5 |
| 2932 | 5 |
| 3000(a)(b)(1) | 4,7,10 |
| 3041(a)(b) | passima |
| 3041.5 | 7,18,19 |
| 3041.7 | 19 |
| 3046 | 1 |
| 3050-3065 | 22 |
| 5011(b) | 6 |
| 12022(b) | 1 |

| DIVISON II, TITLE 15 | PAGES |
|---|---|
| 2280 | 4 |
| 2281(a) | 4,20,23 |
| 2282(c) | 3,13,25,26 |
| 2283(c) | 3,20,23 |
| 2402(c) | 3,20,23 |
| 2403(c) | 3 |
| 2450 | 21 |
| 3000 | 22 |
| 3290 | 21 |
| 3320 | 21 |
| 3375.2(7)(a) | 6 |

| | |
|---|---|
| UNITED STATES CONSTITUTION 5th, 6th, 8th and 14th AMENDMENTS. | passima |
| CAL. CONST. ART. 2 § 10(c) | 16 |
| EVIDENCE CODE § 115 & 605 | 19, 21, 22 |

INTRODUCTION

Petitioner is in legal custody of, Warden A.P. Kane, Soledad State Prison, P.O. Box 689, CTF Central, Soledad, California. 93960-0689.

On Febuary 2, 2005, Elkin Gomez, petitioner attended his sixth BPT (hereafter Board) hearing. Petitioner contends said hearing was furtile, due to a "No" parole policy. The Board violates equal protection of the "substantial" due process of Both California and the Federal Constitution. As the Board has recharacteried petitioners 209 kidnap, "straight life sentence" as a "life without" sentence. Thus, the Board violates the federal constitution of the sixth amendment, as petitioner sentence has exceeded the regulations maximum tri-paritate matrixs.

FACTS/BACKGROUND

On 10/25/1988, the D.A. of Los Angeles County, Case No. A961451, Ex. A1-7 alleged Count one (1) violation of P.C. 209(a), kidnap of William McKus; Count two (2) being armed within the meaning of P.C. 12022(b), for the purpose of extortion of money for encurring drug debts.

Petitioner was found guilty Ex. A, in December of 1989, and was sentenced on 1/16/1990, to a term prescribed by P.C. 209(a), 1168(b), 'straight life sentence" with possibility of parole pursuant to P.C. 3046 seven (7) year minimum under the DSL's, uniform/porporationality of punishment scheme.

PRELIMINARY STATEMENT

Petitioner was found guilty of kidnap P.C. 209, with a weapon charge 12022 i.e. stayed. The Board violates, the term prescribed by law. In recharacterized the offense, exceeds bounds of jurisdiction, using the deportation act as an inexcusable i.e. unforgivable/unpardonable act of entry into the U.S. illegally, exceeding matrix maximum of porporationality/punishment of uniform sentences. The Board violates the "new information" standard and the "preponderance  of evidence' standard established by the legislates. The Board vio-

1 | lates the "some evidence" standard as found in (1985) contemporaneous case of

2 | law.  Where the Board supposely acts in "good faith", as facts establish "good

3 | cause" for the Boards action. As here, the Board exceeds the matrix's tri-par-

4 | itiate terms of legislates intent for regulation of statutes of incorporation

5 | incorporated by cross reference harmonized and in pari materia with other sta-

6 | tutes. Thus, the Board violates protected liberty interest within the bounds

7 | of the due process clauses of the federal constitution 5th & 14th, and the me-

8 | aning of the 6th amendment as regulation establish a maximum without gain time

9 | /work time credits. Petitioner is entitled to be deported without being penal-

10 | ized for it.

11 |                                    I
                                   AGRUMENT

12 | THE (BPT) VIOLATES PETITIONER'S EQUAL PROTECTION GUARANTEES UNDER
   THE DUE PROCESS CLAUSES OF BOTH CALIFORNIA AND THE FEDERAL CONST-
13 | ITUTION OF THE 5TH AND 14TH: CALIFORNIA PAROLE SCHEME CREATES A
   "LIBERTY" INTEREST: PAROLE STATUTORY LANGUAGE IS "UNAMBIGIOUS" IN
14 | MEANING: (BPT) FAILURE TO ADHERE TO LEGISLATURE INTENT OF INCORP-
   ORATED-BY-CROSS-REFERENCE OF PAROLE STATUTES THATS HARMONIZED AND
15 | IN PARI MATERIA WITH OTHER STATUTES: WITH THE IMPLEMENTATION    OF
   DIVISION II, TITLE 15 REGULATIONS.

16 |

17 |    The Board Ex:. "C" violates petitioners equal protection under the due pro-

18 | cess clause.

19 |    As petitioner was sentenced to a "straight life sentence" with possibility

20 | of parole pursuant to P.C. 209(b). The parole scheme creates a liberty inter-

21 | est. Perveler v. Estelle, In re (9th Cir. 1992) 974 F.2d 1132, 1134; Moody v.

22 | 429 U.S. 78, 50 L.Ed.2d 236, 97 S.Ct. 274 (1976); with some new "information"

23 | as the factual basis regarding guidelines regulations of a mandatory parole

24 | scheme created by incorporated by cross reference harmonized statutes in pari

25 | materia with other statutes of incorporation. Phifer v. Clark, In re, 115 F.3d

26 | 496 (7th Cir. 1997); Misasi v. U.S. Parole Commission 835 F.2d 754 (10th Cir.

27 | 1989).

28 |    The Boards action has deprived Petitioner of his liberty, U.S. v. Deter,

2

1  In re, 143 F.3d 577 (10th Cir. 1998); denying equal protection under the pro-

2  cedural due process clause of the 5th and 14 th amendment. Schweiker v. McClure

3  In re, 456 U.S. 188, 195, 102 S.Ct. 1665 (1982). As the Boards record is a

4  systematic denial **Ex. "C"** decision compared to **Ex. "D"** as a 'word' for 'word'

5  and 'reason' for 'reason' factor without new "information" establishing a pre-

6  sumptive denial policy. As the recited reason are almost verbatim , implying

7  a pre-determined decision of denial. O'Bremski v. Maas, In re 915 F.2d 418,

8  422 (9th Cir. 1990). Where, Greenholtz v. Inmates of Neb. Penal & Corr. Comp.

9  In re (1979) 442 U.S. 1 at p. 7; established precedents, whereby state prison-

10 ers shall have a constitutionally protected equal protection and due process

11 protection at a parole hearing when: a state parole statute, or regulation con

12 tain a specific intent. Citing, Meachum v. Fano, 427 U.S. 458, 466-67, 101 S.

13 Ct. 2460.

14     Thus, the Supreme Court, held no difference in mandatory language compris-

15 ed of "shall" and "unless" to "trigger" and create a protected liberty inter-

16 est within a statute or regulation. Board of Allen, In re, (1987) 482 U.S. 369

17 373, 107 S.Ct. 2415, 96 L.Ed.2d 303. Thus, the state Supreme Court, used the

18 word **"IS"** as mandatory when considering the DSL's enacted matrix's. Stanworth

19 , In re 33 C.3d 182 at p. 184 (1983). Where, the DSL's "guidelines" "were Not"

20 internal discreation..."But"...rather reflicts the Legislates intent of stat-

21 utes "IS" provided in regulations. Stoneham v. Rushen, In re (1982) 137 C.A.

22 3d 729, 735-737, 188 C.R. 130; holding the new regulations had to be enacted

23 under the APA. As the term range for Kidnap under the system **"IS"** 8 to 17

24 years. Stanworth, In re 33 C.3d at p. 184 (1983). Thus, the Board by the pre-

25 established criteria of Division II, tit. 15, regulations §§ 2282(c) and 2283

26 (c) are legislates mandatory intent for kidnap pursuant to the DSL; As In re,

27 Register 81 No. 37, filed 9/8/1981, sections 2402(c) and 2403(c) are only "

28 general guidelines" enacted pursuant to Prop. 7, murder scheme without being

3

1  ratified by the voters, establishing the Board with "NO" authority for murder.

2  Thus, section 2280 et seq., has established a protected liberty interest pur-

3  suant to incorporated harmonized pari materia statutes and regulations by leg-

4  islates intent of the DSL and the APA of 1976.

5
## II
### ARGUMENT

6  **THE BOARD USED 3041(B) THE EXCEPTION TO RECHARACTERIZE THE**
   **CRIME: THE DECISION  WAS ARBITRARY AND CAPRICIOUS, INDIRECT**
7  **VIOLATION  OF  FEDERAL  EQUAL  PROTECTION AND  DUE PROCESS**
   **RIGHTS: THE BOARD VIOLATES STATUTE STATUTORY INTENT OF IN-**
8  **CORPORATION OF INCORPORATED BY CROSS REFERENCE HARMONIZED**
   **IN PARI MATERIA WITH OTHER STATUTES AND REGULATIONS.**
9

10  Petitioner's minimum eligible release date was 11/21/95; On 2/2/2005,

11  Elkin Gomez Ex. "C" was provided his sixth subsequent parole consideration

12  hearing. Where parole is the rule rather than the exception. As all crimes de-

13  monstrate the potential risk to society safety, yet parole is mandatory for

14  felons. In re, P.C. 3000(b)(1).

15  The Boards hearing was erroneous finding, as petitioner **Ex."E"** presents no

16  current risk of danger to the public. Where the Boards regulations, $ 2281(a)

17  establishes a release date be set unless there is a risk P.C. 3041(b) to the

18  public. As here, the D.A. nor the Board provided any "New Information" nor a

19  "preponderance" of evidence petitioner is a risk or danger to the public. Thus

20  the Board speaks in meaningless generalities of petitioners traits, evading

21  the intent of 3041.5. As there is No "preponderance" of evidence the crime was

22  "particularly egregious, callous, cruel, or disregard for human suffering" to

23  justify the exception. Norman G Morrall, In re (2002) 102 C.A. 4th 280; As pet

24  itioner crime falls squarely within the proporationality matrix, as the maxi-

25  mum "IS" 17 years and the mitigating circumstances of no bodily injury. Thus,

26  petitioner has served 16 years, plus 2 years and 8 months post-conviction time

27  In which, petitioner now exceeds the matrix maximum of regualtions violating

28  the federal constitution of the 6th amendment. United States v. Booker, 2004

1  U.S. App. Lexis 14223 (7th Cir. 7/9/04). Thus, there is no **"New Information"**
2  pursuant to **Ex. "B & E"**, that petitioner is a current risk to society, or be-
3  ing supported by a **"preponderance"** of evidence in the record. Powell, In re,
4  45 C.3d 895 (1985). As the Board shall normally set release dates. Stanworth,
5  In re 33 C.3d pp. 184, 186, 187; In re, 3041(a), 1170(b)(2), 1170.2(b). Since
6  the Board continues to recharacterize the crime in denying release to parole,
7  uses a low level **"some evidence standard"**, which, could apply if P.C. 2931 &
8  2932 with tit. 15 regulations were to provide no standard of review for peti-
9  tioner two 115's. Thus, the Board not only violates Federal Case Law, but the
10 inherent equal protection of the due process of the federal constitution. As
11 here, there is no occurrance of violance in prison.

12     The Board fails to measure petitioner offense with offenses of the same
13 gravity. Which, is the exception rather than the norm, violating petitioners
14 liberty interest by solely relying on the commitment offense, prior history,
15 and recharacterizing his false imprisonment conviction as kidnap, and asking
16 petitioner to guarantee **"how"** he will not return to the United States, because
17 of easy money to justify findings of unsuitability. Biggs v. Terhune, In re
18 (2003, 9th Cir.) 334 F.3d 910.

19     The Board stated **Ex. "C"** HT 65: the offense was carried out in an extreme
20 callous & calculated manner, where others were targeted for drug collection,
21 with full knowledge, and an extremely trivial motive for the offense. That pet
22 itioner has an escaluting criminal conduct, failed from society's previous at-
23 tempts to correct criminal conduct, and a prior term of 44 months.

24     Thus, the Board has vandalisied the once declared P.C. 17(b)(3), misdemea-
25 nors as felonies, violating the equal protection & the substantial due process
26 of the federal constitution, by assuming judicial role not a quasi-role of
27 jurisdiction. Thus, the above does not comply with the "new information" stan-
28 dard or comply with the issues of the "preponderance" of evidence, as the

5

1 | Board has not acted in "good faith",when they recharacterize the crime to es-
2 | tablish 'good cause" for denial of release. Thus, the Board has violated the
3 | federal constitution of the 14th amendment, by abused of their authority, that
4 | is not within the Boards jurisdiction.

5 | The Board, **Ex. "C"** HT 67:21-27;  notes the psychiatric/psychological re-
6 | port synopsis **Ex. "E"** at pp. 10-11, as positive. Thus, the Board violates the
7 | federal constitution 14th amendment, as the stigm attaches an involuntary sub-
8 | jection to psychiatric's that constitutes a deprivation of liberty requiring
9 | due process. As this has subjected petitioner to a behavior modification with-
10 | out a showing of individual need. Canterino v. Wilson, In re 546 F. Supp. 174,
11 | 208-209 (W.D. Ky. 1982).  Just as here, remorse, the Board violates the due
12 | process of the 14th amendment, as the D.A. & Board is not premitted to argue
13 | that petitioner fails to confess guilt to, or show a lack of remores to cope
14 | with stress, gain an understanding of the crime. As here, the Board & D.A. has
15 | full knowledge of being directly in violation of P.C. 5011(b). Where, Gain, In
16 | re 10 Cal. 4th 1, 892 P.2d 1224, 40 C.R.2d 481 (1985), emphasized "mere fail-
17 | ure failure to confess guilt or to express remorse at a later date or time is
18 | not a circumstance of the crime, and does not fit in any statutory sentence
19 | factor and is not an aggravating circumstance to be held against a prisoners
20 | release". Additionally, the Board ignores the fact California Department of
21 | Correction has deemed petitioner a Model prisoner, with A-1-A Status, and not
22 | a threat to society, and the crime is not "particularly egregious" by placing
23 | petitioner in a level II prison setting. As here, CCR tit. 15, § 3375.2(7)(A);

24 | "An inmate serving any life term shall not be housed in a level II
25 | facility if any of the following case factors are present: unusual
   | violence, callous, egregious etc, etc... Scott, supra, In re p.892
   | Fn. 11. See, Ex. "E".
26 |

27 | The Board violates equal protection within the meaning of the federal con-
28 | stitution 14th amendment. Where as here, the Board Ex. "C" HT 68; wants parole

1  plans to be specific job offers because petitioner entered the U.S. to make
2  money. As petitioner had been deported before, when he had these same jobs
3  available before leaving his country. Thus, the Board and D.A. violates the
4  equal protection, as they create a statute that does not exist, providing bias
5  decision, that establishes the low level review of "some evidence" for courts
6  to rubber stamp with denied, as this violates federal case law of the "some
7  evidence" standard.

8      The D.A. Ex. "C" HT 56, stated opposition: petitioner & his crime partners
9  are in the role of enforcers for drug cartel, who collect money from drug sel-
10 ler and dealers, who don't pay their debts & whether petitioner was contacted
11 in Columbia to come and do this type of drug dealing of collecting and he is
12 not an interpreter picked off the street.  Thus, the D.A. violates petitioner
13 equal protection and his "substantive & substantial" due process rights. As
14 the trial transcripts and Probation report establishes petitioner as only an
15 interpreter with a weapon who showed incentive to act on his own, in which the
16 jury found true.  Thus, D.A. has fabricated the Probation Report, recharacter-
17 ized the crime from what he was prosecuted on, creating false information to
18 which  establishes "some evidence" for denial of release to parole. As here,
19 this is contrary to preponderance of evidence, and fails to provided new infor
20 mation. The Board has continued using the crime & prior history to justify its
21 denial of release with deportation, by the reliance of an unchanging circum-
22 stances of the crime. That runs contrary to rehabilitative goals of the DSL's
23 P.C. 3000(a), resulting in violation of state and federal equal protection &
24 due process. Biggs, supra, In re 334 F.3d at 917. As above is the same "some
25 evidence" used through out petitioners six (6) Board hearing, there is been no
26 "new information or preponderance" of evidence that the public requires a len-
27 gthier period of incarceration, in relation to other instances of the same
28 offense. In re, 3041(b), 3041.5.

1       Thus, petitioner is within the matrix's, that has exceeded the maximum. As

2   here, the Board has not substantiated the offense as exceptionally heinous or

3   cruel. When, as here, <u>No</u> bodily injury occurred for the Board to apply a com-

4   parative analysis of the offense to other offenses of the same gravity. Thus,

5   the Board continues to use conclussions of facts that are devoid of evident-

6   iary basis, and void of <u>new</u> "information" or of a "preponderance" of evidence

7   As the Board applies a low level so called "some evidence" standard, and the

8   state Courts approve, by recharacterizing all offenses, denying actual parole

9   release violating petitioner liberty interest of the federal constitution.

10       Thus, the Board & A.G. continued use of "some evidence" as an answer to,

11   set up all defense sufficent on its face that presents no real isues implored

12   in "good faith", but on the other hand sets up "No" defense, as the Board re-

13   characterizies the offense, there will always be "some evidence". Just as pri-

14   or conviction of false imprisonment, where, petitioner admits knowledge after

15   the facts its was a drug related kidnap by other. As said victims were held in

16   a resident that petitioner had "sub-leased" to other, even though petitioner

17   had been with said victims in San Francisco, the victim owen statements proved

18   petitioner was not present during or after the said kidnap & that the victims

19   did not have drug dealings with petitioner.

20       As in this case, the Board conclusion is not supported by "new information

21   or the preponderance" of evidence found by the jury. Thus, petitioner has de-

22   monstrated bias, as here, the Board <u>cannot</u> shield there action by the "some

23   evidence" standard of <u>Superindent v. Hill, In re</u> 472 U.S. 455, 86 L.Ed2d 365.

24   III<br>ARGUMENT

25   THE BOARD VIOLATES INTENT OF TRI-PARITIATE MATRIX<br>USING MECHANICAL PHRASES, TO TRIGGER P.C. 3041(B)

26   TO DENY (MERPD) "A" DATES OF RELEASE TO PAROLE UN<br>DER PROPORATIONALITY/UNIFORMITY.

27

28       The Board abused the terms & meaning of Legislates intent of incorporated

1 statutes by cross reference doctrine and theory. The Board, uses "rote" mech-

2 anical phrases to trigger 3041(b), to deny Maximum Eligible Release Parole

3 Date under porporationality & uniformity of harmonized pari materia statutes

4 and regulations.  As P.C. 3041(a)(b), is vague, fails to state criteria of,

5 provisions of, and mandates of, term setting. The vice of vagueness is the tre-

6 achery concealed pursuant to the Doctrine Of Prison And Campus Contexts. Ci-

7 ting, 26 Stanf. L. Rev. 855; Blany, In re, (1947) 30 C.2d 643, Id. 656, 184

8 P.2d 892; Saad, In re, (1951) 105 C.A.2d Supp. 851, 234 P.2d 785. Thus, the

9 Board violates the penological plan as discreationary retention In re, 13

10 Stanf. L. Rev. 341; 50 Cal. L. Rev. 651. As the Board subverted the fundamen-

11 tal purpose of 3041, porportionate terms guided by the provisions of uniform-

12 ity 1170(a). Martin, In re (1986) 42 C.3d 437, 442-443, 299 C.R. 131, 722 P.2d

13 785.  As 1170 applies tri-paritiate determinate terms, P.C. 3041were intended

14 to serve the same purpose with tri-paritiate matrix terms, established by reg-

15 ulations within legislates intent of statutes. In re, Stats. (1976) Ch. 1139,

16 § 281 p. 5151; Re-affirmed in Stanworth, supra, the uniform terms called for

17 by 3041(a) as analytically equivalent to determinate sentences of 1170 et seq.

18 ,. Citing, In People v. Jefferson 21 Cal. 4th 86, 95-96.

19     The Board has recharacterized petitioners offense pursuant to criteria of,

20 pursuant to, murder special circumstance 190.2. As the Board has 'messaged'

21 the wording & vallanized the offense, from kidnap to murder to deny release on

22 the grounds of (1) "cruel & callous", (2) "especially egregious" (3) dispass-

23 ionate or calculated", (4) victim valurable" (5) "inexplicable or very trival"

24 Thus, the Board has a two dimension of reliance: (1) the nature of the decison

25 is based on erroneous information. (2) The information is not technical in

26 nature, or a reasonable factor in Boards decision. Thus, the Board has relied

27 on "the factually incorrect" record, and due process has been denied and the

28 decision is invalid. Montoya v. United States Parole Commission (10th Cir.

1 1990) 908 F.2d 635, 639; Monore v. Tripon (11th Cir. 1991) 932 F.2d 1437, 1439

2 -1441; decision denying parole deprives prisoner of due process as it is "par-

3 tially" based on false information as grounds. Thus, the Board has continued

4 to rely on the offense and events of 10/25/1988, after 18 years. Now the ques-

5 tion relates to why, release to parole hearings are being held? As petitioner

6 has exceeded the matrix's maximum and the Board violates its jurisdictional

7 authority. As P.C. 3000(a)(1) establishes the intent for public safety is

8 "for the state to provide for suprevison & surveillance of parolees, including

9 the use of revocation, and to provide educational, vocational, family & per-

10 sonal counseling necessary to asist parolee in the transition between impri-

11 sonment and discharge." Thus, rehabilation commisses upon a person return to

12 public life from imprisonment.

13     Thus, petitioner has a federally protected liberty interest in release

14 with parole being served as established by the tri-paritiate determinate terms

15 of the DSL's matrix.

16     The U.S. Supreme Court in Greenholtz v. Inmates of Neb. penal & Corr. Com-

17 plex 442 U.S. 1, 7 (1979), found while there is " no constitutional or inhe-

18 rent right of an inmates to be released unless certain findings are made pur-

19 suant to incorporation of incorporated by cross reference statutes, as such

20 statutory language gives rise to a protected liberty interest in parole. Board

21 of Pardons v. Allen, In re 482 U.S. 369, 376-378 (1987); (Montana's parole

22 statute use the word 'shall' in the mandatory  sense for release of prisoners,

23 except for certain restriction, creates a due process liberty interest in re-

24 lease).  Thus, as certain language is used it gives rise of a liberty interest

25 as prisoner's gain a legitimate expectation in release & this liberty interest

26 cannot be denied without adquate procedural due process protection. Greenholtz

27 v. Allen.

28     The Ninth Circuit's decision in McQuillion I, 306 F.3d at p. 902, is of

1  course binding as 3041 § (b) is the 'substantive' standard which, uses manda-

2  tory language and is virtually identical to Allen and Greenholtz, thereby, cre

3  -ating a protected liberty interest in release. McQuillion I, 306 F.3d at 902.

4      As here, the A.G. at 60 Ops. Att. Gen. 143, has a contemporenuous know-

5  ledge of Section 6, Discharge & Parole, as the opinion of the A.G. recognized,

6  the duty of the Board under 1170.1(b), is to review the sentence of a person

7  committed to prison to determine if a substantial difference exist between the

8  subject sentence & the sentence imposed on other offenders committing the same

9  offense under similar circumstances, (i.e. 3041). To achieve this task the

10  Board shall comply with 1170.3 Rules of the judicial Council, which, relates

11  to the criteria to be utilized to choose appropriate determine prison terms.

12  Id. 60 Ops. Att. Gen. 143.

13      Thus, following the A.G.'s opinion of 60 Ops. Att. Gen. 143, the state

14  Supreme Court stated; the DSL's guidelines were not internal discreation.."But

15  ".. rather "reflicts" legislates intent of statutes as established in the reg-

16  ulations (i.e. 1975-1978). In which, the Legislature over-ruled the state Su-

17  preme Court decision of American Friends Service Committee v. Procunier (1973)

18  33 C.A.3d 252, 109 C.R. 22; Stoneham v. Rushen, In re (1982) 137 C.A.3d 729,

19  735-37, 188 C.R. 130; holding the new regulations are enacted under the Admin-

20  istrative Procedure Act of 1975. Thus, Stanworth, In re 33 C.3d at p. 184, es-

21  tablished the matrix tri-paritiate periods of incarceration of inmates. Accor-

22  dingly, all 'sentences' pursuant to the DSL's enactment of statutes converted

23  all "to life" pursuant to tri-paritiate penal codes , that 3041 does so by the

24  regulations matrix to give rise of a cognizable liberty interest just as the

25  sentencing scheme of incorporation. As noted, In Biggs v. Terhune 334 F.3d 915

26  916, the liberty interest for Prop. 7's, Ex. "F" is created not upon grant of

27  release or parole date, but upon the incarceration of the inmate. The langu-

28  age of 3041 creates a presumption of release being granted, except, where, de-

1  fined determinations are made. **Id.** perveler v. Estelle, In re, 974 F.2d 1132,

2  1134 (th Cir. 1992) found state created liberty interest in release to parole.

3  Thus, petitioner kidnap P.C. 209 is squarely under the matrix's pursuant to

4  3041, establishing a federal constitutionally protected liberty interest in

5  release with parole being served, the Board cannot decline release as he has

6  served beyond the matrix maximum and thus, the Board would violate petitioners

7  procedurally due process protection.

8      Furthermore, as court must look to the Boards decision as one of "equity"

9  to require 'careful balancing & assessment of facts considered'. Sass v. Cal-

10  ifornia Bd. of prison terms, **In re** 376 F. Supp.2d 975 (E.Dist. Cal. 2005) line

11  of cases, and Biggs, supra, at 917, the court found reliance on the future as

12  unchanging factors attributed to the offense, "runs contrary to" (i.e. uniform

13  ity/porportionality of,) the DSL's rehabilitative goals espoused by the prison

14  system resulting in future due process violations. McQuillion I, supra, In re

15  306 F.3d at 902.

16      As here, P.C. 209 kidnap, petitioner has a liberty interest in release to

17  which, parole has been served, and the right to due process, triggers the duty

18  of court review, of the Boards action to recharacterize offense, and their dis

19  creation over suitability decisions is neither unlimited nor immune from jud-

20  icial review. Ramirez, In re (2001) 94 C.A. 4th 549 & Rosenkrantz, In re, 29

21  C.4th 616,658 (2002); The state Supreme Court Dannenberg, In re, 34 C. 4th

22  1061 (2005), disapproved only the portion of Ramirez decision requiring a com-

23  partive, porporationality analysis of the crime pursuant to 3041, with other

24  similar offenses. the Court in Ramirez followed the analysis of **Ex. "F"** pur-

25  suant to Jeanice D. In re, (1980) 28 C.3d 210 at p. 220; Thus, the question of

26  what the intent to mis-lead is? As the A.G. **Ex. "G"** has expounded on the

27  point of Sass & Dannenberg, line of cases, as clearly contrary to, the Legis-

28  lature... clearly contemplated intent of the DSL, and the excutive Branch with

1  its broard discreation, <u>In re Schoengrath</u> (1967) 66 C.2d 295, 300, 57 C.R. 600

2  425 P.2d 200 **italics added**;  over ISL's release to parole decision would con-

3  form with factors prescribed by law. <u>In re</u>, **60 Ops. Att. Gen. 143**. This, is

4  underscored, as the voters **Ex. "F"** never considered the Initiative to cover

5  any of the above factors that courts have written into the Board discreation

6  by "some evidence". Thus, instead of a carefully crafted structure in which,

7  <u>Sass & Dannenberg</u> line of case of Prop. 7, being evaluated for release to par-

8  ole are to be denied, **Ex. "G"** before, even being considered DSL's specific fac-

9  tors, showing unsuitability, using especially dangerous to the public safety.

10  Thus, petitioner 209 kidnap pursuant to the DSL, has an established right

11  to due process of law stemming from his protected liberty interest that is at-

12  tached to release within the 6th Amendment of the federal constitution, as pet

13  itioner has served beyond the matrix's maximum of 17 years, with any and all

14  parole period being served.

15  **IV**
**ARGUMENT**

16  **PENAL CODE 3041 OBJECTIVE EVADES A DIFFICULT AND UNPLEASUANT
SITUATION OF ESTABLISHED FEDERAL DUE PROCESS RIGHTS TO PAR-**

17  **OLE BY DANNENBERG COURT'S APPLICATION & INTERPRETATION 3041.**

18  The parole scheme creates a cognizable liberty interest in parole. Thus,

19  the Board fails to follow the parole scheme violating petitioners sentence of

20  209 kidnap, as he his a federally protected due process right to release. As

21  petitioner has served beyond the regulations matrix maximum **s** 2282(c).

22  The decision in <u>Dannenberg</u>, purports to interpret 3041, so that the A.G.

23  **Ex. "G"** "IS" relying on in <u>Sass</u>, that <u>Dannenberg</u> takes petitioner 209 kidnap

24  established right of federal due process protection to release. However, the

25  state Supreme Court made clear, <u>Jeanice D. Supra</u>, In re 28 C.3d at 220, that

26  Prop. 7, cases were not drafted as part of the DSL's P.C. 209 scheme. Thus,

27  the state court made clear "shall normally" is the rule and 3041(b) the excep-

28  tion must be just that, an exception. <u>29 C. 4th at 683; People v. Rodriquez</u>

13

1  (1975) 14 C.3d 639, 122 C.R. 552; Lynch (1972) 8 C.3d 410; Stanworth, In re

2  33 C.3d 182; Duarte, In re, 143 C.A.3d 943; Seabock, In re 140 C.A.3d 29; As

3  the Boards authority to make exception for setting release date **Ex. "F"** 'the-

4  ory sentences', "to life" terms operate to swallow the DSL's 209 kidnap rule

5  of release to parole as 'normally granted'. Therefore, **Ex. "G"** as interpret-

6  ated by the A.G. & used by the Board, <u>Dannenberg</u> effectively destroys the in-

7  tergrity of more than twenty-five (25) years of reliance on plain language, to

8  effectively erase due process rights created by mandatory language of 3041; by

9  disposing of porportionality & allowing the A.G. & Board to ignore jury ver-

10  dicts, facts admitted to, recharacterize conviction to a greater offense. Thus

11  allowing the A.G. & Board the right to subsequent review, violating the "some

12  evidence" standard of <u>Hill In re,</u>472 U.S. 455 (1985); Violating the "substan-

13  tial evidence" thats required for a reviewing court. <u>Consolidated Edison Co.</u>

14  <u>of New York v. NLRB, In re, 305 U.S. 197 (1939);</u> Chrysler Corp. v. U.S. Envir-

15  onmental Protection Agency, C.A. 631 F.2d 865, 890. Furthermore, the Board &

16  A.G., applying <u>Dannenberg</u> decision, renders suitability factors to determine

17  parole eligibility as unconstitutionally vague, it permits the Board to use

18  facts outside the Judicial Councils 1170.3 sentencing rules and other rules

19  pursuant to 1170.1, 1170(a)(1)(b)(2) to fit the crime into 3041 exception to,

20  pursuant to legislates mandates of 1170.2(a)(b), that parole 3041(a) 'shall

21  normally' be granted. The court holding, in <u>Dannenberg</u> acts as a plan, a act-

22  ion or devise used to hide the true objective, to evade **Ex's. "F & G"** diffi-

23  cult and unpleasuant situtation, that prevents any or all inmates from recie-

24  ving consideration of the cognizable federally protected liberty interest in

25  release to parole. <u>Mullaney v. Wilbur 421 U.S. 684, 691 (1975).</u> As here, state

26  courts generally explain state law. However, federal courts are not bound by

27  state interpretation when the courts decision effectively results a subterfuge

28  to evade federal issues. Id. 691. Furthermore, the ambiguities of the meaning

1  of the meaning of statutes does not prevent state or federal courts from for-

2  ming their own determination for effect, thereby not binding federal to state

3  court's interpretation. <u>Wisconsin v. Mitchell, In re 508 U.S. 484.</u>

4      Thus, 3041 is virtually identical to <u>Nebraska</u> statute in <u>Greenholtz</u>, and

5  the application of <u>Dannenberg</u> to 3041, the court precieved effects, acts to

6  eliminate due process rights which, existed pursuant to <u>Greenholtz and Allen.</u>

V

ARGUMENT

**THE SASS & DANNENBERG DECISION IS CLEARLY CONTRARY TO
ESTABLISHED SUPREME COURT CASE LAW; VIOLATING A PRO-
TECTED LIBERTY INTEREST TO RELEASE PURSUANT TO LEGIS-
LATES INCORPORATED STATUTE SCHEME OF THE DSL.**

11      As petitioner was sentenced pursuant to the DS1 P.C. 209 Kidnap, with P.C.

12  3046 providing a minimum of seven (7) years. The decision of <u>Dannenberg</u> is not

13  consistent with principles of federal law. However, the due process issue rai-

14  sed in <u>Dannenberg</u> is actually contrary to federal principles. Thus, the A.G.

15  **Ex. "G"** and the state Supreme Court decision <u>Jeanice D. In re 28 C.3d 210 at</u>

16  <u>p. 220;</u> decision has full knowledge these sentences <u>were not</u> drafted as part

17  of the ISL's nor DSL's release to parole scheme of 3041. Thus, for federal due

18  process purpose, <u>Dannenberg</u> <u>cannot</u> be relied on as providing governing prin-

19  ciples, to effect the statute it contemplates to interpret, as it does so in

20  violation of state & federal constitutional law.Creating a change in the "sub-

21  stantial & substantive" due process evading the equal protection established

22  by statutes of legislates intent.

23      **A. Some Evidence Standard Is Contrary To Established Supreme Court Law.**

24      As stated, supra, petitioner has an 209 Kidnap pursuant to 3046 has an ex-

25  pectation of release being granted pursuant to <u>Cal. Code Req., tit. 15 § 2282</u>

26  <u>(c)</u>, criteria within the general subject 3041 incorporated statute, as he has

27  meet all factors within regulations matrix and has exceed the matrix maximum

28  terms, violating the  federal constitution of the 6th Amendment.

15

1    The Board & state Court has relied on the "some evidence" standard descri-
2    bed in Rosenkrantz, 29 C.4th at 658, and adopted in Dannenberg, supra, is the
3    wrong level of evidentiary review, based on a fundamental mis-understanding in
4    Hill, In re 472 U.S. 445 (1985). As no standard was dictated by regulations in
5    a disciplinary proceeding, due process required the reviewing court to find
6    "some evidence" in the record to support the decision. Thus, when evaluating
7    the judicial review of parole decision of the Board denial, should be, the
8    court adopted, without legal analysis the "some evidence" standard of Hill &
9    Sandin v. Conner.

10    The premise in Hill decision to apply a "some evidence" level of analysis,
11    has no standard of proof or tier of facts, and as such, does not apply in the
12    Board hearing process. Instead, as enunciated in the statutory language of
13    3041, it creates a presumption of suitability for release, which shifts the
14    burden of state to prove the evidence that places inmates within 3041(b) ex-
15    ception by silencing 1170.1 incorporation of 1170(a)(1)(b)(2)'s provisions pur
16    suant to 1170.2 mandates that cross reference to the general sentence statute
17    209; in case of Dannenberg, Ex. "F" 190, being done in violation of Cal. Const
18    Art. 2 § 10(c) without voters ratification. Thus, as Hill being based on the
19    "some evidence" standard it is inappropriate & has resulted in the erosion
20    of due process rights to release as established by regulations matrix.

21    The Dannenberg decision, the state Supreme Court marred its integarity by
22    dropping the requirement the Board compare, **60 Ops. Att. gen. 143**, 1170.1,
23    offense with similar offenses, despite the Board failure for comparative term-
24    inology as mandated in regulations, for comparison of crimes in the same cat-
25    egory against which to compare. Other than changing a few words in a sentence
26    & saying "some evidence" exists.

27    First of all, the "some evidence" rule, if properly applicable, is for a
28    reviewing court to apply, to petitioner kidnapping 209, not the Board. As any

16

1  evidence will support the preponderance conclusion by recharacterizing the sen

2  tence. Secondly, the Board over-rides psychologist **Ex. "E"**, charged with mak-

3  ing determination of inmates past, current or future risk evaluation, as dan-

4  gerous to society if released. The Board <u>is not</u> an <u>arbiter</u> of what constitutes

5  evidence that is "more than minimally necessary to convict". Thus, <u>Rosenkrantz</u>

6  <u>UU, (2000) 80 C.A. 4th 409, 427</u>; and <u>Dannenberg</u> decision, the state court has

7  allowed any crime to be treated as a bar to release, irrespective of whether

8  the inmate currently presents a risk of danger at <u>less than average citizen</u> if

9  released. Thus, violating the Legislates intent of 1170.1 et seq.,, 3041 and

10  3000 et seq., parole scheme.

11    Thirdly, <u>Rosenkrantz & Dannenberg</u> standard permits recharacterizing any

12  offense & to create a greater degree than the conviction called for, by plea,

13  or jury or trial court, in violation of equal protection & due process. In add

14  ition, the Board is allowed to make findings beyond any findings made by tier

15  of facts, taking the case outside the presumptive sentencing range of the mat-

16  rix's <u>uniformity/porportationality</u> terms in violation of <u>Apprendi-Blakely</u>

17  rule. <u>In re, 530 U.S. 466 (2000); 542 U.S. 296 (2004)</u>. Yet the <u>Dannenberg</u>

18  court has ignored these basic concepts, so effectively no meaningful checks

19  exist on the exercise of the Executive branch's Parole Power, as state Courts

20  effectively do no more than "rubber stamp" the decisions under the "no more

21  minimally necessary to convict" test.. Since the standards of <u>Dannenberg</u> has

22  silanced the "substantial evidence" test, the claimed findings of the parole

23  authority would never actually be reviewed anyway. Thus, the Board re-tries

24  each inmate, making findings that are not new "information" and then uses the

25  same evidence as "some evidence". While state courts review blindly this stan-

26  dard with full knowledge of, <u>supra, **60 ops. Att. Gen. 143**</u>, with **Ex. "F & G"**,

27  and the decisions of supra, <u>28 C.3d 210 at p. 220</u>, being violative of due pro-

28  cess Clauses of both California and federal Constitution.

1    As here, the analysis of 3041(a) subject statute, one year before the min-

2  imum eligible date, the Board 'shall" meet with the inmate & "shall normally"

3  set an (a) date of release..(emphases added). Thus, with amendment Ch. 1139

4  (1976), 3041(a) goes on to 3041(c), that pursuant to 1170.2 mandates the rele-

5  ase date 'shall" be set in a manner established by 1170.1 Judicial Councils

6  sentencing rules of uniform terms pursuant to 1170(a)(1)(b)(2) provisions for

7  offenses of similar gravity in respect to their threat to the public. " The

8  only exception 1170.2(b), directs the Board to 3041(b) "shall" set a date un-

9  less it determines that consideration of public safety requires a lengthier

10  period of incarceration for this individual, and therefore, cannot be fixed at

11  this meeting." As noted, the reference to "this meeting" is not a reference to

12  the initial hearing 3041.5. Its a reference to the crime or crimes of an incar

13  cerated inmate & his continued criminal agenda. Thus, 3041 does not create a

14  presumption of release unless inmate falls under the DSL's & ISL's "Life Pri-

15  soners/Straight Life Sentences" with a minimum pursuant to 3046, or the "Inde-

16  terminate Life Sentence" of 1994, "Three Strike Law's" incorporation statutes.

17    As here, the decision of Dannenberg & Rosenkrantz, has twisted the langu-

18  age & 3041 intent, in an attempt to avoid federal interpretation, as Ex. "F"

19  is not drafted as part of Ex. "G" 3041 scheme, violating due process under the

20  synopsis of Greenholtz & Allen. As 3041 being a single statute alone does not

21  by its self create a liberty interest as it is a combination of statutes in

22  pari materia with other statutes.

23    Thus, federal courts are not bound by state court's interpretation of sta-

24  tutes, when it is an obvious subterfuge to evade consideration of federal is-

25  sues of rights. Peltier v. Wright, In re, 15 F.3d 860; Wisconsin v. Mitchell

26  508 U.S. 476. As the Boards decisions are completely contrary to the liberty

27  interest created by 3041 language & its 3046 sentences. Thus, it could not be

28  hoped, that the state Supreme Court's decision of Dannenberg & Sass line of

1  cases, the court did not have full knowledge of the contemporaneous decision

2  of Jeanice D., supra, 28 C.3d 210 at p. 220; that said sentences could not and

3  would not be moderated within the bounds of the DSL's scheme. Thus, the state

4  courts cannot say the Legislature had merely hoped that uniform release dates

5  would be typical or common, as this is an absurb result for Ex. "F" Dannenberg

6  and Sass line of cases, which is completely at odds Ex. "G" with ISL's "Life

7  Prisoners/Straight Life Sentences" of the DSL and its 1994 Three Strike Law.

8      The Legislates created incorporation of incorporated statutes, as 1170.1,

9  Judicial Council Rules, establish a presumption of release within the subject

10  statute 3041a) reference by 1170(a)(1)(b)(2) provisions pursuant to the man-

11  dates of 1170.2(a) uniform terms for offense of similar gravity and magnitude.

12  supra, 60 Ops. Att. Gen. 143.

13      Thus, the Boards discreation 3041.5$^{1/}$ does not give an understanding as

14  3041(a) creates a presumption for four (4) of six (6) different lines of cases

15  pursuant to harmonized statutes. Thus, the public policy of achieving uniform-

16  ity of terms serve federal due process consideration, by placing the burden

17  for the continued loss of liberty on the confining authority. As presumption

18  affects burden of proof in furtherance of public policy, the presumption en-

19  sures a failure to set any release date pursuant to uniformity/porportational-

20  ity in sentences. Violating Cal. Evid. Code § 605, as presumption is establish

21  ed to implement some public policy other than to facilitate the determination

22  in which, the presumption applied. Clearly, the U.S. Supreme Court authority

23  requires state to adopt certain procedures for hearings of any person involved

24  being entitled to the benefit of those procedures. Evitts v. Lucy, In re 91985

25  469 U.S. 387, 393; Griffin v. Illinois 351 U.S. 12, 20 91956).

---

26  Fn. 1: The amendment to § 3041.5 of the P.C. made by this act shall be made applicable to off-
    enses committed before July 1, 1977, on or after January 1, 1991, Stats. 1990 Ch. 1053 § 2; De-
27  mond, In re, (1985) 165 C.A.3d 932, 211 C.R. 680, at p. 935; In enacting 3041.7, the Legislature
    was refering "only" to parole release hearing pursuant to the provisions of the DSL's P.C.'s, in
28  referancing 3041.5, and its enumerating procedures & time limits granting hearings under the DSL'
    s scheme.

1    Hence, the stated first step, 1170.1(a), 3041(a), specifically directs the

2  Board to set a date at the initial hearing, absent 1170(b) factually supported

3  findings of 1170.2(b) mandates referenced from 3041(c), that the inmates 3041

4  (b) currently presents an unreasonable risk of danger to the public if relea-

5  sed. McQuillion I, 306 F.3d at p. 905; In re, Cal. Code Regs., tit. 15 §§ 2281

6  (a) & 2402(a), people v. McDowell (1988) 46 C.3d 551, 571; People v. Fudge 7

7  Cal. 4th 1117 (1994). Thus, the state is not free to apply whatever procedure

8  they choose to the legislative directive 3041. As 3041.5 confines the Board

9  within the parameters of the matrix § 2403 release dates. As noted, the court

10  decision of Dannenberg realized the matrix was mandatory on the Board, due to

11  the legislative directive of **60 Ops. Att. Gen. 143 & 1170.1**, to ensure uniform

12  terms. Stanworth In re, 33 C.3d 180 at p. 184; Dannenberg 34 C. 4th **1079** FN. 7

13    **Thus**, the court analysis ended, with the "some evidence" doctrine Hill, In

14  re, 472 U.S. 455, without looking to why a low level review was imposed. As

15  Admininistrative review is only a vehicle for court review, it is not a stan-

16  dard for the Board. Where, the initial decision to deny parole required fact-

17  ual evidence the inmate poses an "unreasonable risk" of danger to the public.

18  In re, Cal. Code Regs. tit. 15 §§ 2402(a) & 2281(a); People v. Bean (1988) 46

19  C.3d 919, 951; In re Powell 45 C.3d 894.

20    Thus, the "some evidence" standard evolved from Hill, supra, In re 472 U.

21  S. 455, established a standard of proof of guilt in disciplinary proceedings,

22  and subsequent 'court' review of that decision. Where the Constitutional gua-

23  rantee of due process required 'some evidence' to support its determination.

24  Thus, state courts have applied Hill's "some evidence", without analysis up-

25  holding Board findings for denying parole. As Powell, In re 45 C.3d 894, pet-

26  itioners P.C. 209 kidnap, any or all **Ex. "F"** line of cases, is based on a fail

27  ure to analyze the issue that led to Hill, and the assumption by the court of

28  no evidentiary standard of parole hearings, requiring the Boards regulatory

1    prescription scheme. This, assumption however, is flawed.

2    Unlike <u>Hill</u>, the legislates have determined an inmates liberty interest in

3    a disciplinary hearing. As a finding of guilt supported by preponderance of

4    evidence. The provision of tit. 15 § 3320, "Hearing procedures & Time Limita-

5    tions", read in relevant part as follows:

6    "The inmate may present documentary evidence in defense or mitigation
      of the charge. Any finding of guilt shall be based upon determination
7    of official(s) conducting the disciplinary hearing that a preponder-
      ance of evidence submitted substantiate the charge." Id. 3320(1).)
8

9    Thus, CDC reiterated the importance of "preponderance" standard in its pro-

10   mulgated rules of guilt & imposition of credit loss on offenders for illegal

11   substance violation. Tit. 15 § 3290, in relevant part as follows:

12   "(g) When evidence after a field test or resulting from a field test is
      not suitable or sufficient for submission as laboratory  confirmation
13   may, be considered in a disciplinary hearing. Under such circumstances
      a finding of guilt shall be based upon the preponderance of all eviden-
14   ce presented at the hearing."

15   (h) "Field" or "laboratory" test is not required if other evidence cor-
      roborates use. Cedit loss & other authoritzed disciplinary action  may
16   be taken based on a preponderance of evidence & testimony." (Emphases).

17   The above distinguishes California from massachusetts procedures. While

18   <u>Hill</u> had no standard of proof defined, California does, impose a "preponder-

19   ance of evidence" upon any fact finding before denial of a right. As <u>Hill</u> is

20   based solely upon reasoning the state imposed no standard of proof in discip-

21   linary hearing.

22   In the Boards regulations, there is no specific standard of proof in par-

23   ole hearing process. However, California is explicit as to what proof is in

24   any proceeding when no specific standard is defined. As <u>Cal. Evid. Code § 115</u>

25   provides a standard of proof not specified, the standard used by tier of facts

26   is preponderance of evidence. The note worthy issue is when the Board extends

27   an offender's incarceration, as they follow strict guidelines. Cal. Code Regs.

28   tit. 15, § 2450 provides as follows:

21

1    "The ISL parole date of an ISL prisoner or the parole date of a life
     or non-life 1168 prisoner may be postponed or recinded for good cause
2    at a rescission hearing." Emphases added.

3    The term "good cause" is specific, legally defined standard for Boards
4    regulations:
        "Good Cause. A finding by the Board based upon preponderance of evid-
5       ence that there is factual basis & good reason for the decision made."
        Cal. Code Regs., tit. 15 § 3000, emphasis added.
6

7    Even tit. 15 § 2451, provides that delay or rescision of release by the
8    Board can be imposed if found guilty of disciplinary action. Thus, any of the
9    finding of guilt in any disciplinary hearing requires support by a "preponder-
10   ance of evidence", In re P.C.'s §§ 3050-3065 DSL's scheme.

11   Thus, the above is required by California law, because neither Prop. 7's,
12   190, 190.1-190.5, nor any other initiative amending Dannenbergs line of cases,
13   has allowed for Cal. Code of Regs., tit. 15, Div. 2, to directly prescribe a
14   standard of review for parole hearings. As the standard is applicable under
15   Evid. Code § 115, preponderance of evidence, as in the disciplinary context.
16   Thus, for violation of parole, or for rescission or delay, the principle of
17   due process, equal protection & fundamental fairness dictate the same standard
18   apply in parole hearings, pursuant to the direct language of Evid. Code § 115.
19   As the action extends incarceration of a prisoner in the same class as petit-
20   ioner. Where, a denial or even a reversal extends incarceration for an inde-
21   finite period, or delays release for the rest of inmates life. i.e. 3041. As
22   such, traditional 'substantial evidence" review should be utilized. However,
23   the review under Dannenberg violates these principles, being contrary to clear
24   ly established 60 Ops. Att. Genr 143, and U.S. Supreme Court Law.

25      B.  The Dannenberg decision Is Contrary To Clearly Established Supreme
            Court Law As It Relies On Vague Language.
26

27   The standard used in Dannenebrg fails to pass muster. A statute or regul-
28   ation is void for vagueness "if it fails to give fair notice to people of com-

22

1 mon intelligence Ex. "G" being made to guess at the meaning of Ex. "F", if it
2 invites arbitrary & discriminatory enforcement." United States v. Doremas, In
3 re, 888 F.2d 630, 634 (9th Cir. 1989). As here, the vice of vagueness challe
4 enge, is whether to scrutinize Ex. "F" statute 190 for intolerable vagueness
5 on its face or whether to do so only as the statute is applied. As here, 209(b
6 kidnap is vague when only 3041 is applied. Schwartzmiller v. Gardner, In re
7 752 F.2d 1341, 1346 (9th Cir. 1989). As herein, the factors set forth in Cal.
8 Code Reg., tit. 15, SSS 2281 & 2402(c) the Board determines whether the crime
9 was commited in an "especially heinous, atrocious or cruel manner", as applied
10 to petitioner kidnap, are purely subjective & unconstitutionally vague. As
11 such, in cases involving death penalty or life without possibility of parole,
12 the Board has manifest petitioner kidnap into an exceptional depravity, thats
13 unconstitutionally vague & violates due process. Superior Court of Santa Clara
14 v. Engert 31 C.3d 797, 805 (1982).

15     Thus, these factors are not understood or explained, and do not give adqu-
16 ate notice they would apply. Thus, as in Rosenkrantz V, decision employed con-
17 ditional language as if the crime would be considered more aggravated or vio-
18 lent to sustain a conviction. Where in, Dannenberg this standard is completely
19 unreviewable. As the languae itself is unconstitutionally vague, and that dec-
20 ision, did state clear directive that sole reliance on the commitment offense
21 will violate due process rights pursuant to 3041(a), where, the offense could
22 not be considered more aggravated or violent to sustain the offense.

23     However, the Dannenberg decision confused the issue by changing the stand-
24 ard set forth in Rosenkrantz V, allowing the Board denial based on the crime,
25 as "more than minimally necessary to convict of the offense for which confin-
26 ed." In re, Dannenberg, supra, 34 C. 4th at 1095. As the result is a defini-
27 tion, or standard, that constantly changes shapes, is never consistent & is in
28 capable of being defined or pinned down. As now, every kidnap & second degree,

1 fits a murder category of first, the facts are so arbitray and depends on per-

2 sonal opinion of the Board, A.G's., D.A. and Governor.

3     As explained, there is nothing in the language or description alone to im-

4 ply any inherent restrain on arbitrary & capricious infliction of denial of

5 parole suitability. <u>Godfrey v. State of Georgia, In re 446 U.S. 420 (1980)</u>;ex-

6 plained "person of sensibility could fairly characterize almost every <u>Kidnap &</u>

7 <u>Murder</u> as 'execeptionally heinous, artocious, cruel or callous'." <u>Id.</u> at 429.

8     However, this creates a loop-hole in which if not corrected, the Board and

9 courts are allowed to apply unconstitutionally vague terms to **Ex. "F"** sentence

10 that effectively turns petitioners <u>Kidnap,</u> any or all second degree murder sen

11 tences into Life With Out Possibility of Parole by repeatedly using the crime

12 to deny release, as in this case. <u>Shell v. Mississippi 486 U.S. 1, 3 (1990);</u>

13 <u>Godfrey v. Georgia 446 U.S. 420 (1980).</u> Thus, <u>Dannenberg</u>, confusses the situ-

14 ation, as the crime only needs minimum for conviction. This, has the Board ul-

15 itizing any <u>Kidnap & murder</u> (i.e even as here, kidnap with no bodily injury)

16 to be used as a basis for denial of release to parole, rendering the standard

17 as unconstitutionally vague.

18     Thus, the constitutional right to due process, and the right to a jury

19 trial, requires each & every fact used to increase a penalty, must be alleged

20 and found true by tier of facts, be it by jury or inmates own admission of

21 facts. Thus, as here, in <u>Apprendi v. New Jersey 530 U.S. 466 (2000); Blakely v</u>

22 <u>Washington 542 U.S. 296.</u> These findings bar the Boards findings that take in-

23 mates outside the normal kidnap sentencing scheme of the matrix, as the Boards

24 findings that support denial acts as both a literal & effective change in the

25 crime originally charged or convicted of. As such, a change is a constructive

26 amendment and is pre-judicial per se. <u>Jones v. Smith 231 F.3d 1227, 1232-33</u>

27 <u>(9th Cir. 20001).</u> Where the Supreme Court in <u>Stirone v. United States 361 U.S.</u>

28 <u>212, 218 (1960),</u> a defendant is convicted of a crime and the grand jury never

1  charged petitioner with the essential element of the crime, a constructive

2  amendment has occurred & reversal is warranted. Since this ruling in Apprendi,

3  supra, the Court has made clear that any fact that increases the penalty be-

4  yond the prescribed statutory maximum or its matrix must be submitted to a

5  jury & proved beyond a reasonable doubt. As such, Apprendi expands the range

6  of discrepancies that will amount to constructive amendments. Id. at 490.

7      Accordingly, some courts & prosecutors believed simply meant that the sen-

8  tence could not exceed the maximum possible penalty under the statute violated

9  , rather than a sentence that merely exceeds the presumptive sentencing range.

10  While in Blakely, supra, 542 U.S. 296, Justice Scalia, explained the trial

11  Court's imposition of the greater than "standard" term was impremissibly ex-

12  cessive:

   "In this case, 'the defendant' was sentenced to more than 3 years above
   the 53-month statutory maximum of the standard range because be acted
13  with deliberate cruelty." The facts of the finding were not admitted to,
   nor found by the jury. The state nevertheless contend there was no App-
14  rendi violation because the 'statutory maximum' is not 53-months, but 10
   years maximum for a B felonies..Thus, the exceptional sentence may no
15  exceed that limit. (Citation). However, that "the statutory maximum" for
   Appendi purposes is the maximum sentence a judge may impose solely on
16  the basis of the fact reflected in the jury verdict or admitted by." In
   re, Blakely v. Washington, supra, 542 U.S. 296.
17

18      To ensure no misunderstanding the High Court was saying, Justice Scalia

19  reiterated:

   "In other words, the relevant 'statutory maximum' is not the maximum
20  sentence a judge may impose after a finding of additional facts, but
   the maximum he may impose without any additional findings.  When a
21  judge inflicts punishment that a jury's verdict does not allow,  the
   jury has not found all the facts 'which the law makes essential  to
22  the punishment,' the judge exceeds his proper authority." ...  \

23      Accordingly, it is clear that a punishment greater than justified by a

24  jury's findings, or judge's findings, with no further expansion of those fin-

25  dings, they cannot be imposed.  Thus, if a sentencing scheme provides a tri-

26  paritiate structure, as the matrix § 2282(c) does pursuant to the DSL's intent

27  of 3041(a)(b) incorporated by cross reference scheme of pari materia harmon-

28  ized statutes structures. That the Board must set release to parole dates con-

1 sistent with the statutory terms of three prescribed terms, absent a finding

2 made at the time of conviction. As the Board has gone outside the matrix.

3     The Board, however, consistently refuses to set release to parole dates

4 consistent with the matrix, and justifies their action by unilaterally making

5 'findings' about the commitment offense thats out of the matrix. As these un-

6 ilateral findings, <u>are not</u> made by jury or judge as to petitioners 209 kidnap,

7 violating the due process premise set forth in <u>Apprendi & Blakely</u>.

8     Thus, petitioner is aware of recent decision of <u>People v. Black</u> 35 C. 4th

9 1238 (2005). Just as here, petitioner had a jury trial on the aggravating fac-

10 tors that justified the upper term. Here, petitioner <u>is not</u> contending that

11 <u>Apprendi & Blakely</u> rule applies to 3 term selection, as petitioner has already

12 pasted said maximum. Instead, it is contended the Board <u>cannot</u> fix or make a

13 finding regarding the crime altogether as it is now <u>outside</u> the prescribed

14 matrix § 2282(c), which, applies based on facts already determined by jury or

15 judge at sentencing.

16     Thus, as already noted <u>Jeanice D., supra, In re</u> (1980) 28 C.3d 210 at pp.

17 216-220, the <u>Sass, Dannenberg & Rosenkrantz</u> line of cases, <u>were not</u> drafted as

18 part of the DSL's uniformity/porporationality of punishment scheme In re, Ex.

19 "G" & "F". Thus, the above line of cases, the violation occurs every time the

20 Board or A.G. & Governor makes findings about the crime being "exceptionally

21 callous", or "especially heinous, atrocious and cruel", or "dispassionate and

22 calculated", or as having a "trivial or insignificant" motive, since these

23 facts underlying the claimed circumstances <u>were not</u> tied to the jury at the

24 time of conviction or admitted to. Such findings result in the Board acting as

25 jury, with  findings of various alleged circumstance or additional crimes, as

26 here, thats completely outside the matrix. Thus, the ruling in <u>Dannenberg</u> al-

27 lows the Board and A.G., even the Governor to violate clearly established

28 United States Supreme Court precedent.

1    Thus, the decision in Sass has relied on the premise of interpretation of

2   Dannenberg that it can be applied. As explained supra, the United States Sup-

3   reme Court has prescribed principles of due process that plainly govern 209(b)

4   kidnap of petitioner claims. Greenholtz, supra, 442 U.S. at 7; Allen, supra,

5   482 U.S. 369; also McQuillion I, supra, 306 F.3d at 901.

6    That even the recent U.S. Supreme Court case of Kansas v. Crane, No. 00957

7   2002 DJDAR, held, in cases of sex offenders being confined civilly beyond

8   their original criminal sentence, the state must prove both mental disorder

9   and a serios difficulty in controlling their behavior before they can be im-

10  prisoned beyond their time. The key message here is that the Board has to show

11  proof of something more than just a psychiatric report that may not be 'total-

12  ly suportive of release' in order for the report to constitute a denial of re-

13  lease to parole.

14   As noted, California parole scheme creates a liberty interest in parole by

15  its mandatory language. Moody v. Daggett, In re 429 U.S. 78, 50 L.Ed.2d 326,

16  97 S.Ct. 274 (1976). A parole liberty interest involves protection by the due

17  process clauses of the Fifth and Fourteenth Amendments. Perveler v. Estelle

18  (9th Cir. 1992) 974 F.2d 1132, 1134; Bergen v. Spaulding (9th Cir. 1989) 881

19  F.2d 719, 721 (Citing, Greenholtz & Allen). In re, Powell v. Gomez 33 F.3d 39,

20  40 (9th Cir. 1994), under the "clearly established" framework of Greenholtz &

21  Allen, California parole scheme gives rise to cognizable liberty interest in

22  release to parole. The scheme creates a presumption. Allen 484 U.S. at 378.

23   As the Ninth Circuit in McQuillion & Biggs recognized California parole

24  scheme creates a liberty interest. The Boards authority is limited in that it

25  must grant parole, must do so at the initial hearing, and only has the author-

26  ity to deny in "particular egregious" cases, or the gravest of murders, not in

27  kidnaps with no bodily injury. Ramirez, In re, 94 C.A. 4th 549, 560 (2002);

28  Rosenkrantz V, supra, 29 Cal. 4th 616, "parole applicants in this state have

27

1  an expectation they will be granted parole unless the Board finds, in their
2  excerise of discreation, petitioners are unsuitable in light of the circum-
3  stances specified by statute and regulations. " **Id. at 654.** It is these prin-
4  ciples that are violated by the Board in this case. Thus, based on the fore-
5  going, it is clear that the Sass decision does not dispose of the due process
6  right of parole. As set forth in this petition, Petitioner is both eligible &
7  suitable for release, and the continuous denial of parole on the same factors
8  amount to a deprivation of Elkin Gomez, constitutional and statutory rights.
9  It is respectfully requested that this court issue a writ of habeas corpus,
10  and order immediate release with deportation as the Board does not have juris-
11  diction as petitioner has served beyond the matrix maximum in violation of the
12  federal constitution of the 6th Amendment of the maximum created by regulation

13                              CONCLUSION

14      The above  yields a conclusion, by the incorporated by cross reference,
15  the asset of any one interpretive framework has addressed the libilities of
16  incorporation by cross reference of harmonized statutes in pari materia with
17  other statutes the Board has failed with a disturbing inter-connection of in-
18  terpretation. That the contradiction is unimaginable that any 'patch-work' re-
19  sulting to borrow a little from "this" and take a little from "that" could
20  produce a defensible and coherent theory for the Board to follow of Penal Code
21  Statutory and Constitutional interpretation of law.

22      Under pages 1-29 of this petition Petitioner contends that: The Board is
23  required to support its conclusions with correct standards of evidence; there
24  must be factual underpinning to suport its determination. The Board has create
25  arbitrary & capricious absue in its discreation. The Board has failed to fix
26  uniform/porporationate punishment pursuant to the DSL's scheme of incorporayed
27  by cross reference harmonized pari materia statutes. The Board violates the
28  equal protection clause under Both California and Federal Constitution of the

1  5th, 8th and 14th Amendments.

2     Thus, the Board has no authority to fix petitioner term as petitioner has

3  now served beyond the regulations statutory maximum established by the matrix

4  in violation of the federal constitution of the 6th amendment.

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19                      **DECLARATION**

20

21     I declare under penalty of perjury that the foregoing is true and correct.

22  Excuted this 18 , day of 13 FEB. , 2006, at CTF—Central, Soledad, Cal.

23

24

25

26                   ELKIN GOMEZ, In Pro Se.

27

28

                            29

PRAYER FOR RELIEF

1.  Issue an Order to Show Cause on an expedited basis directing a filing pursuant to California Rules of Court;

2.  Issue a Writ of Habeas Corpus;

3.  Order that will provide Petitioner with reasonable discovery;

4.  Conduct an evidentiary hearing declaring the rights of parties;

5.  Take jurisdiction by this Court, set actual release date and to be deported at the earliest possible time;

6.  Take notice of matrix statutory scheme being violated pursuant the (6) sixth Amendment of the Federal Constitution as terms exceeds the maximum;

7.  Take notice of the violations of equal protection and due process as established within this Habeas Corpus;

8.  Grant any or all relief necessary to promote justice.

Dated: 2|18|06

Elkin Gomez

PROOF OF SERVICE BY MAIL
(C.C.P. 1013(a), 2015.5)

1
2

3      I, Elkin Gomez, declare that I am 18 years of age and that I am the pro
4  per Petitioner to the herein attached cause of action.

5      My complete mailing address is: Elkin Gomez, E-44776, P.O. Box 689, F-205L
6  CTF Central, Soledad, CA. 93960-0689.

7      I further declare that I have deposited true and complete copy's of the
8  attached; PETITION FOR WRIT OF HABEAS CORPUS, addressed to the following list
9  below, in sealed envelope(s) with postage fully pre-paid, and disposited said
10 documents in the U.S. Mail Box (Prison Mail Box) at CTF Central, California
11 State Prison, Soledad, CA. 93960-0689.

12     1-copy  L.A. Superior Court
               210 W. Temple Street
13             Los Angeles, CA. 90012

14     1-copy  Attorney General
               110 West A Street, Suite 1100
15             P.O. Box 85266
               San Diego, CA.  92186-5266
16

17

18     I declare under penalty of perjury that the foregoing is true and correct,
19 excuted this 18 , day of FEB, , 2006 at California State Prison,
20 Soledad, California.

21

22

23                     _____
                            Elkin Gomez
24                          Declardant

25

26

27

28

31

# Exhibit A

SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES

| Date | JANUARY 1 90 | | DEPT. 102 |
|---|---|---|---|
| HONORABLE: JACQUELINE CONNOR | | JUDGE | D. DEVENUTO Deputy Clerk |
| 302 | J TKACH | Deputy Sheriff | O. BENNETT Reporter |

CASE NO. A961451-03     (Parties and counsel checked if present)

PEOPLE OF THE STATE OF CALIFORNIA ✓
VS
03 GOMEZ ELKIN

CHARGE
209 A   01CTS
211487.1 01CTS
(BOX CHECKED IF ORDER APPLICABLE) X

Counsel for People:
DEPUTY DISTRICT ATTY: R. Wallace ✓

Counsel for Defendant G NOTKOFF ✓

NATURE OF PROCEEDINGS:

71 ☒ Alba McBan X286352 PRESENT AS THE ENGLISH/ Spanish INTERPRETER 10-25-88
☐ PUBLIC DEFENDER APPOINTED, D.P.D. ☒ OATH FILED PER SECTION 68560 GOVERNMENT CODE.
☐ DUE TO CONFLICT OF INTERESTS, PUBLIC DEFENDER RELIEVED. PURSUANT TO PENAL CODE SECTION 987.2/GOVERNMENT CODE SECTION 31000 ALTERNATE DEFENSE COUNSEL, _____ IS APPOINTED.
72 ☐ CRIMINAL PROCEEDINGS ADJOURNED/RESUMED.
73 ☐ DEFENDANT ORDERED DELIVERED TO DEPARTMENT OF CORRECTIONS PER SECTION 1203.03 PENAL CODE.
74 ☐ ON _____ MOTION, PROBATION AND SENTENCE HEARING/FURTHER PROCEEDINGS CONTINUED TO _____ AT _____ A.M. IN DEPT _____ ☐ SUPPLEMENTAL PROBATION REPORT/PROGRESS REPORT ORDERED
75 ☐ DEFENDANT PERSONALLY AND ALL COUNSEL WAIVE TIME FOR SENTENCING. ☐ DEFENDANT ORDERED TO RETURN.
76 ☒ PROBATION DENIED / PROCEEDINGS SUSPENDED / SENTENCE IMPOSED AS FOLLOWS:
   ☒ IMPRISONED IN STATE PRISON FOR ☐ TERM PRESCRIBED BY LAW ☒ TOTAL OF LIFE plus 2 years MONTHS
   ☒ COURT SELECTS THE _____ TERM OF LIFE YEARS FOR THE BASE TERM AS TO COUNT 1
   ☒ PLUS _____ 2 YEAR(S) PURSUANT TO PENAL CODE SECTION 120.1 _____
   ☐ PLUS _____ AS INDICATED IN BOX 88 BELOW + with possibility of parole.
   ☐ COMMITTED TO CALIFORNIA YOUTH AUTHORITY, THE TERM OF IMPRISONMENT TO WHICH THE DEFENDANT WOULD HAVE BEEN SENTENCED PURSUANT TO SECTION 1170 PENAL CODE IS _____ YEARS
   ☐ IMPRISONED IN LOS ANGELES COUNTY JAIL FOR TERM OF _____ DAYS
   ☐ FINED IN SUM OF $ _____ PLUS ADDITIONAL FINE OF $ _____ (11372.5 HEALTH & SAFETY CODE) FOR A TOTAL FINE OF $ _____ PLUS $ _____ ASSESSMENT AND SURCHARGE (1464 PC & 76000GC), TO BE PAID TO COUNTY CLERK. ☐ PAY RESTITUTION FINE IN SUM OF $ _____ PURSUANT TO SECTION 13967(a) GOVERNMENT CODE PAYABLE TO RESTITUTION FUND
77 ☐ SENTENCE IS SUSPENDED.
78 ☐ PROBATION GRANTED FOR A PERIOD OF _____ YEARS _____ PROBATION TO BE WITHOUT FORMAL SUPERVISION.
   1 ☐ SPEND FIRST _____ DAYS IN COUNTY JAIL. ☐ ROAD CAMP OR HONOR FARM RECOMMENDED.
     ☐ WORK FURLOUGH PROGRAM RECOMMENDED. ☐ NOT TO BE ELIGIBLE FOR COUNTY PAROLE
   2 ☐ FINED IN SUM OF $ _____ PLUS ADDITIONAL FINE OF $ _____ (11372.5 HEALTH & SAFETY CODE) FOR A TOTAL FINE OF $ _____ PLUS $ _____ ASSESSMENT AND SURCHARGE (1464 PC & 76000GC), TO BE PAID TO PROBATION OFFICER IN SUCH MANNER AS HE SHALL PRESCRIBE.
   3 ☐ MAKE RESTITUTION IN SUCH MANNER AS _____ TO THE VICTIM/RESTITUTION FUND PURSUANT TO SECTION 1203.04 PENAL CODE IN SUCH MANNER AS THE PROBATION OFFICER SHALL PRESCRIBE. ☐ TOTAL AMOUNT OF RESTITUTION TO INCLUDE _____ % SERVICE CHARGE AS AUTHORIZED BY SECTION 1203.1 P.C.
     ☐ PAY RESTITUTION FINE IN SUM OF $ _____ PURSUANT TO SECTION 13967(a) GOVERNMENT CODE PAYBLE TO PROBATION DEPARTMENT IN SUCH MANNER AS THEY PRESCRIBE. ☐ SAID FINE TO BE STAYED WHILE DEFENDANT PAYS RESTITUTION AND IF RESTITUTION IS PAID IN FULL, STAY SHALL BE PERMANENT.
   4 ☐ MINIMUM PAYMENT OF FINE/RESTITUTION TO BE $ _____
   5 ☐ NOT DRINK ANY ALCOHOLIC BEVERAGE AND STAY OUT OF PLACES WHERE THEY ARE THE CHIEF ITEM OF SALE.
   6 ☐ NOT USE OR POSSESS ANY NARCOTICS, DANGEROUS OR RESTRICTED DRUGS OR ASSOCIATED PARAPHERNALIA, EXCEPT WITH VALID PRESCRIPTION, AND STAY AWAY FROM PLACES WHERE USERS CONGREGATE.
   7 ☐ NOT ASSOCIATE WITH PERSONS KNOWN BY YOU TO BE NARCOTIC OR DRUG USERS OR SELLERS.
   8 ☐ SUBMIT TO PERIODIC ANTI-NARCOTIC TESTS AS DIRECTED BY THE PROBATION OFFICER. SUCH TESTING TO BE SUSPENDED WHILE THE DEFENDANT IS IN CUSTODY, IS HOSPITALIZED, OR IS IN A RESIDENTIAL DRUG TREATMENT PROGRAM APPROVED BY PROBATION OFFICER.
   9 ☐ HAVE NO BLANK CHECKS IN POSSESSION. NOT WRITE ANY PORTION OF ANY CHECKS. NOT HAVE BANK ACCOUNT UPON WHICH YOU MAY DRAW CHECKS.
   10 ☐ NOT GAMBLE OR ENGAGE IN BOOKMAKING ACTIVITIES OR HAVE PARAPHERNALIA THEREOF IN POSSESSION, AND NOT BE PRESENT IN PLACES WHERE GAMBLING OR BOOKMAKING IS CONDUCTED.
   11 ☐ NOT ASSOCIATE WITH _____
   12 ☐ COOPERATE WITH PROBATION OFFICER IN A PLAN FOR _____
   13 ☐ SUPPORT DEPENDENTS AS DIRECTED BY PROBATION OFFICER.
   14 ☐ SEEK AND MAINTAIN TRAINING, SCHOOLING OR EMPLOYMENT AS APPROVED BY PROBATION OFFICER.
   15 ☐ MAINTAIN RESIDENCE AS APPROVED BY PROBATION OFFICER.
   16 ☐ SURRENDER DRIVER'S LICENSE TO CLERK OF COURT TO BE RETURNED TO DEPARTMENT OF MOTOR VEHICLES.
   17 ☐ NOT DRIVE A MOTOR VEHICLE UNLESS LAWFULLY LICENSED AND INSURED.
   18 ☐ NOT OWN, USE OR POSSESS ANY DANGEROUS OR DEADLY WEAPONS.
   19 ☐ SUBMIT PERSON AND PROPERTY TO SEARCH OR SEIZURE AT ANY TIME OF THE DAY OR NIGHT BY ANY LAW ENFORCEMENT OFFICER, WITH OR WITHOUT A WARRANT.
   20 ☐ OBEY ALL LAWS, ORDERS, RULES AND REGULATIONS OF THE PROBATION DEPARTMENT AND OF THE COURT.
79 ☒ DEFENDANT GIVEN TOTAL CREDIT FOR 1151 DAYS IN CUSTODY. ( 767 DAYS ACTUAL CUSTODY AND 384 DAYS GOOD TIME/WORK TIME)
80 ☐ SENTENCE/COUNTS TO RUN CONSECUTIVELY TO/CONCURRENTLY WITH _____
81 ☐ STAY OF EXECUTION OF _____ GRANTED TO _____
82 ☐ ON MOTION OF PEOPLE, COUNTS _____ DISMISSED IN FURTHERANCE OF JUSTICE.
83 ☒ COURT ADVISES DEFENDANT OF HIS APPEAL/PAROLE RIGHTS.
84 ☐ "NOTICE RE CERTIFICATE OF REHABILITATION AND PARDON" GIVEN TO DEFENDANT.
85 ☐ DEFENDANT TO PAY COSTS OF PROBATION SERVICES IN AMOUNT OF $ _____
86 ☐ COURT FINDS THAT DEFENDANT DOES NOT HAVE THE PRESENT ABILITY TO PAY COSTS OF INCARCERATION/LEGAL SERVICES RENDERED/PROBATION SERVICES RENDERED.
87 ☐ DEFENDANT IS REFERRED TO TREASURER/TAX COLLECTOR FOR FINANCIAL EVALUATION.
88 ☐ FURTHER ORDER AS FOLLOWS/ADDITIONAL CONDITIONS OF PROBATION: Motion for continuance is denied. Motion for new trial denied. Motion to reduce kidnapping charge to false imprisonment is denied. On Count 2, the court imposes and presently stays a 6 months in County Jail.

89 ☐ SHERIFF IS ORDERED TO ALLOW DEFENDANT _____ PHONE CALLS AT DEFENDANT'S OWN EXPENSE
90 ☐ DEFENDANT FAILS TO APPEAR WITH/WITHOUT SUFFICIENT EXCUSE.
91 ☐ BAIL, IF POSTED, FORFEITED/O.R. REVOKED. BENCH WARRANT ORDERED ISSUED/REISSUED/AND HELD UNTIL _____
   ☐ NO BAIL/BAIL FIXED AT $ _____
92 ☐ DEFENDANT APPEARING BENCH WARRANT ORDERED RECALLED/QUASHED ☐ RECALL NO. _____ ☐ WRITTEN ☐ ABSTRACT FILED

| ☐ REMANDED | ☐ BAIL | ☐ BAIL EXON. | ☐ BOND NO. _____ | MINUTES ENTERED |
| ☐ RELEASED | ☐ O.R. | ☐ O.R. DISCHARGED | ☐ ON PROBATION | COUNTY CLERK |
| | ☐ BENCH WARRANT | | ☐ IN CUSTODY OTHER MATTER | |

76CT778 (REV.8-87) 7-89
MINUTE ORDER
3 P&S

**DEPT. 102**

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES

| Date: | January 16, 1990 | | D DEVENUTO | , Deputy |
|---|---|---|---|---|
| HONORABLE: | JACQUELINE CONNOR | JUDGE | D BENNETT | , Report |
| | J TKACH | Deputy Sheriff | (Parties and counsel checked if p |

| A961451 | PEOPLE OF THE STATE OF CALIFORNIA | Counsel for Plaintiff | IRA REINER , DISTRICT ATTY. B X R WALLACE DEPUTY |
|---|---|---|---|
| X | VS GOMEZ, ELKIN X286352 | Counsel for Defendant | ~~PUBLIC DEFENDER~~ X G NOTKOFF ~~DEPUTY~~ |

NATURE OF PROCEEDINGS PROBATION AND SENTENCE       (Boxes checked if order applic

Court advises defendant of his appeal/parole rights. Motion for continua
is denied. Motion for New Trial is denied. Motion to reduce Kidnapping
charge to false imprisonment is denied.

PROBATION DENIED. SENTENCE AS INDICATED BELOW.
Whereas the said defendant having......been...............duly..........found.......
guilty in this court of the crime of KIDNAPPING FOR EXTORTION (Sec 209(a) PC), as charged
in Count 1 of the information and further find that the defendant used
a deadly and dangerous weapon, within the meaning of Penal Code Section
12022.5, at the time of the commission of the offense; the Court finds
used allegation pursuant to Section 12022.5 Penal Code true; Count 2 havi
been stayed

It is Therefore Ordered, Adjudged and Decreed that the said defendant be punished by imprisonment in the
State Prison. for Life with possibility of parole, plus 2 years for the
used allegation.

☑ Defendant is given credit for....1152.................days in custody (includes...384...days good time/work time).
It is further Ordered that the defendant be remanded into the custody of the Sheriff of the County of Los Angeles
and delivered by him into the custody of the Director of Corrections at the California State Institution
☑ for Men at Chino, California
☐ for Women at Frontera, California
☐ .................................

ENTERED
1-16-90

☐ Remaining count(s) dismissed in interests of justice.
☐ Bail exonerated.

FRANK S. ZOL
COUNTY CLERK
AND CLERK OF THE
SUPERIOR COURT

2     7CJ605A (REV. 7-82) 7-82
C-109

**JUDGMENT**

PINK ORIGINAL TO FILE          YELLOW COPY TO STATEWIDE DISTRIBU
WHITE COPY TO MICROFILM        GREEN COPY TO PROBATION EXPEDITE