# EXHIBIT C
# Part 1 of 4

ORIGINAL

JAN 11 2007

ELKINS GOMEZ, E-44776
P.O. BOX 689, F-205L
CTF CENTRAL
SOLEDAD STATE PRISON
SOLEDAD, CA. 93960-0689
Petitioner In pro se.

COURT OF APPEAL - SECOND DIST.

F I L E D

JAN 11 2007

JOSEPH A. LANE          Clerk
J. CHLANDA
Deputy Clerk

CALIFORNIA COURT OF APPEALS

SECOND DISTRICT OF LOS ANGELES

ELIKINS GOMFZ,              )    Case No. _____
                           )    PETITION FOR REVIEW FROM SUPERIOR
ON HABEAS CORPUS,          )    COURT OF LOS ANGELES DENYING HIS
                           )    HABEAS CORPOUS (CASE NO. BH003906
X-Ref                      )    AGAINST THE BOARD'S DECISION DEN-
                           )    YING RELEASE TO A PERIOD OF PAROLE
                           )
B047840(1) A1D              BH003906
B08841(1) W1D               A961451
B183292(1) W1D

PETITION FOR REVIEW

To The Honorable Associate justices of the Court Of Appeals Second Dist-

rict of California.

petitioner Elkins Gomez, respectfully Petitions for a **Review** pursuant to

Cal. Rules Of Court 4.51, from a Denial by the Superior Court Of Los Angeles.

INTRODUCTION

Petitioner, a state prisoner proceeding in pro se, seeks an Appeal Of His

Petition Of Habeas Corpus, Any Or All Fxhibits Of Docket # 1.

Petitioner, herein sets forth the facts & cause for Issuance of Writ Of

Appeals for Petition Of Habeas Corpus.

STATEMENT OF FACTS

On 10/25/1988, the D.A. of Los Angeles County, Case no. A961451, alleged

Count (1) violation of P.C. 209(a), kidnap of William McKus; Count (2) being

armed P.C. 12022(b), for extortion of money from encurring drug debts.

Petitioner was found guilty Docket 1, Ex. 'A',Dec. 1989, and sentenced on

1/16/1990, to a term prescribed by 2099b), 1168(b), 'Straight Life Sentence'

pursuant to P.C. § 3046 (7) years minimum under the DSL's uniform/porporation-

ality of punishment scheme.

Assigned to DIVISION ONE

1

I
Arguement

The (BPH) Violates Equal Protection & Due Process Of
Both California & Federal Constitution 5Th. & 14Th.:
California Parole Scheme Creates A 'Liberty' Inter-
est: Statutory language Is Unambigious In meaning:
(BPH) Fails To Adhere To Legislatures Intent Of In-
corporated Harmonized Pari Materia Statutes: And The
Implementation Of Title 15, Regulations; Creating A
'Class Of One'.

The board Ex. 'C'[1/] violates petitioners equal protection under the due
process clauses.

First petitioner contends, the Superior Court Clerk denied PETITION, with-
out Judge David S. Wesley signature; thus, this is not a denial on the merits,
of any of petitioner claims;· The clerk relied only upon the crime of 19 years
ago. And even this does not justify a 10 month review delay in Superior Court
of any of the arguements presented; Thus, the Petition any or all arguments
that was not responded to, must be Deemed true and Correct upon their Merits
as presented. Thus, the Board has no jurisdiction over Petitioner; And Petit-
ioner is entitled to imediate relief and to be deported.

As here, the only inrquiry made, was 19 years ago petitioner committed
this crime; There is no inquiry made regarding conflict. See, In re Darr (1983
143 C.A.3d 500, 191 C.R. 882.

Petitioner alleges, the judicial branch, pursuant to the DSL, has the only
authority to fix minimum & maximum terms, Id. P.C.'s 12, 13 & 1170 et seq.,,
and CDC only authority is to apply the awarded credits 2930-2932 (Note; Petit-
ioner has not included 2933 credits because of enactment date & they are not
applicable here, or even to Prop. 7's 190, as they are legislature intent just
as 3001, 'Life Parole' being added by legislature in 1982 without voters ap-
proval); As here, petitioner was sentenced to a 'Straight life Sentence' of
209(b), and a Parole Scheme that creates a liberty interest, Perverler v. Fs-
telle, In re (9th Cir. 1992) 974 F.2d 1132, 1134; Moody v. Dagget 429 U.S. 78,

Fn. 1: All exhibits are from Docket # 1, Superior Court Writ attached.

1  L. Ed.2d 236, 97 S.Ct. 274 (1976); with some new 'information' as the factual

2  basis regarding guideline regulations of a mandatory parole scheme. being cre-

3  ated by incorporated by cross reference of harmonized pari materia statutes

4  with other statutes. Phifer v. Clark 115 F.3d 496 (7th Cir. 1997); Misasi v.

5  U.S. Parole Commission 835 F.2d 754 (10th Cir. 1989).

6      Thus, In re, Oxborrow v. Eikenberry 877 F.3d 1395, 1399 (9th Cir. 1989);

7  states, the difference to the ]state] court is suspended only upon finding the

8  Court's interpretation [of state law] is untenable or has amounted to a subter

9  fuge to avoid federal review of 3041(a) six parts and the 6 distinctly diff-

10  ernt sentences where (4) fall within the comported DSL's release to a period

11  of parole.

12      Petitioner alleges, in Oct. 1979, the Att. Gen., 60 Ops. Att. gen. 143, ex

13  pounded on the 'theory' of (MERPD) & (MEPD) minimum & maximum time of parole

14  as id. 3000(a), 3002. see, now 3000.1. As here, Courts has allowed the Board

15  a plausible & logical way around statutes by General Guideline Rules enacted

16  in (1982) tit. 15 §§ 2400-2411, id. (Monigold (1983) 139 C.A.3d 485, 188 C.R.

17  689 Fn. 1; violating the designers intent of the APA Act of 1976, In re, Stone

18  ham v. Rushen 137 C.A.3d 729, 735-37, 188 C.R.130 91982); As the Board does

19  violate the Complexity of statute intent, by an 'internal' contradiction of

20  General Guideline Rules (id. supra, Monigold, of Dannenberg line of cases) by

21  Judge Made Law. Where, noted in (1986), Att. Gen. Ops. #86-1102, that these

22  P.C. 2930-2932, were established for Determinate Sentences enacted under the

23  1976 DSL Law. Thus, the regulation (Schengrarth, line of ISL cases) are appro-

24  ved in Stanworth) §§ 2281-2291, being implied intent by the legislature for

25  the statutes application of 'Life prisoners' & the 'Straight life Sentences'

26  of the DSL, 3046 minimum of 7 years 'For Life' scheme.

27      Thus, after (5) hearings, the record is a systematic denial without 'new

28  information', using only minimal evidence to convict, establishing nothing but

1  pre-determined decisions of denials; In re, O'Bremski v. Mass. 915 F.2d. 418,

2  422 (9th Cir. 1990); that plainly disregards the 'substantial & substantive'

3  law; Which, has created, define & regulates rights of, obligation of proced-

4  ural law [law of pleading, of evidence, of jurisdiction] denying equal pro-

5  tection, establishing 'in jeapordy of punishment', In re Fain v. Duff C.A. Fla

6  488 F.2d 218, 255; by increasing punishment over regulations violating the 6th

7  Amendment and voiding the 5th, 8th and 14th Amendments, by a No Parole Policy.

8  As here, the range for kidnap is established at 8 to 17 years maximum & mini-

9  mun under the DSL's and its regulations.

10    Thus, the Board by the pre-established criteria of Division II, tit. 15,

11  regulations §§ 2282(c) and 2283(c) are the legislates mandatory intent for

12  kidnap pursuant to the DSL; As in re, Register 81 no. 37, filed 9/8/1981, Sec-

13  tions 2402(c) and 2403(c) are only 'general guidelines' enacted pursuant to

14  Prop. 7, murder scheme without being ratified by the voters, establishing the

15  Board with 'NO' authority for murder.

16    Thus, Section 2280 et seq., has established a protected liberty interest

17  pursuant to incorporated harmonized pari materia statutes and regulations by

18  legislates intent of the DSL and of the APA of 1976.

19    Where, Greenholtz v. Inmates of Neb. Penal & Corr. Complex In re, (1979)

20  442 U.S. 1 at p. 7; where, state prisoners shall have a constitutionally pro-

21  tected equal protection and due process protection at parole hearing when; A

22  state parole statute, or regulation contain a specific intent. Citing , Mea-

23  chum v. Fano 427 U.S. 458, 466-67, 101 S. Ct. 2460. As there, is mandatory

24  language comprised of 'shall' and 'unless' to trigger and create a protected

25  liberty interest within a statute or regualtion . Cf. Board of Allen (1987)

26  482 U.S. 369, 373, 107 S.Ct. 2415, 96 L.Ed.2d 303. Thus, the state Supreme

27  Court, used the word IS as mandatory when considering the DSL's Matrix, of the

28  DSL's guidelines as the intent of statutes.

B. The Board Violated Petitioner's Equal protection Rights Under California Constitution, Art. I, Sec. 7(a), And The Fourteenth Amendment Of The U.S. Constitution; When They Failed To Consider Setting His Term, Failing To Recognize A Primary Term, (Separate And Distinct Treatment Of A 'Class Of One').

For an equal protection claim to proceed petitioner must allege specific facts in support of his claim. A habeas petitioner has the burden of alleging specific facts that show a federal claim is presented, or the petition is subject to dismissal. Jones v. Gomez 66 F.3d 199, 204-05 (9th Cir. 1995). Conclusionary allegations do not warrant habeas relief. Id. at 204.

Petitioner's allegations are not conclusonary, they state a prima facie equal protection claim under both California and Federal Constitutions.

The Fourteenth Amendment Equal protection Clause provides that no state shall deny to any person the 'equal protection of the law.' (See also, California Constitution Art. I § 7(a). The Equal Protection Clause ensures that 'all persons similarly situated should be treated alike.' City of Cleburne v. Celcurne living Center 473 U.S. 432, 439 (1985). To prevail on an equal protection claim, petitioner must initially show that he was treated differently from other similarly situated persons. City of Cleburne, supra, 473 U.S. at p. 439; Fraley v. United States Bureau Of Prisons, 1 F.3d 924, 926 (9th Cir. 1967) (per curiam).

The mere fact that some inmates convicted of second degree murder may have been parole sooner than petitioner does not establish the basis for federal equal protection claim. See, Strum v. California Adult Authority, 395 F.2d 466 448-49 (9th Cir. 1967) (holding that 'the fact that other prisoners have had their sentence reduced, or been granted parole, affords no grounds for complaint by petitioner.')

However, Petitioner's equal protection claims lies elsewhere, other than a mere comparison between an inmate released earlier or paroled sooner than himself, as set forth herein.

1    <u>Equal Protection Under 'Class Of One'</u>

2    In the case of In re, <u>Mikael Schiold,</u> Court Of Appeals, First Appellate

3    District, Division Five, Case No. A103107. (i.e. this is referenced by cases

4    paragraphs). Ex. 'N'

5    Schiold was transferred to the country of Sweden, under the 'Settlement

·6   Agreement And Full Release Of All Claims', on habeas corpus. Schiold & Respon-

7    dent entered into an 'agreement' transferring Schiold to Sweden (Paragraph #4)

8    Case No. A103107 was agreed to as 'stayed' pending Schiold transfer. (par-

9    agraph # 5, 6, 7).

10   Fxplicitely at paragraph # 8: 'Relessor (Schiold) agrees that he will be

11   held in custody by the government of Sweden until January 1, 2007.

12   Page, paragraph 16, establishes that: the agreement & settlement, in order

13   to stay the case, was signed by the Supervising Deputy Attorney general, Anya

14   Binsacca, dated 10/22/2003.

15   Petitioner asserts that the State of California in collusion with the Att-

16   orney general's Office & Board did in fact violate the equal protection clause

17   of the 14th Amendment of the U.S. Constitution, and california Constitution

18   Article I Sec. 7(a), by setting an immutable release date' for Schiold, when

19   his term was set without being found suitable under § 3041(b) and going dir-

20   ectly to 3041(a) infra, pages.

21   The language in paragraph # 8 of page 3, of the settlement expressly state

22   that 'he will be held in custody by the government of Sweden <u>untill</u> January 1,

23   2007'. petitioner asserts that this date, january 1, 2007, establishes a 'term

24   setting' under P.C. 3041(a). (emphasis added.).

25   One foreign national (over other foreign national) (for that matter 'all

26   U.S. Citizen are being treated distinctly different than Schiold because they

27   cannot be transferred) and all similarly situated foreign nationals, thus cre-

28   ating separate & distinct 'classes' of inmates for release criteria.

1   The fact that Schiold was first found to be suitable by the Board is ir-

2   relevant to the claim herein, the Governor then found Schiold to be unsuitable

3   which nullified the Boards findings of suitability. See, Paragraph # 2, 3, 6.

4       The most basic requirement for a claim of violation of equal protection

5   under the 14th Amendment of the U.S. Const. lies on the issue of non-equal

6   treatment of a 'Class', or, a showing of separate and/or distinct difference

7   in treatment, both criminally & civilly, among groups or 'Classes' of persons.

8       The United States Supreme Court has established a 'class of one' in the

9   case of Village v. Willowbrook v. Olech, 528 U.S. 562, 145 L.Ed.2d 1060, 120

10  S.Ct. 1073 (2000) at pp. 1074-75; 'We granted certiorari to determine whether

11  the equal protection clause gives rise to a cause of action on behalf of a

12  'class of one' where the plaintiff did not allege membership in a class or

13  group.' (527 U.S. 1067, 120 S.Ct. 10, 144 L.Ed.2d 841 (1999):

14      'Whether the complaint alleges a class of one or a class of five is of
15      no consequence because we concluded that the number of individuals   in
        a class is immaterial for equal protection analysis.'
16

17  Our cases have recognized successful equal protection claims brought by a

18  'class of one', where the plaintiff alleges that he/she has been intentionally

19  treated differently from others similarly situated & that there is no rational

20  basis for the difference in treatment. See, Sioux City Bridge Co. v. Dakota

21  County 260 U.S. 441, 43 S.Ct. 190, 67 L.Ed. 340 (1923); Allegheny Pitsburgh

22  Coal Co. v. Commission of Webster City 488 U.S. 336, 109 S.Ct. 633, 102 L.Ed2d

23  688 (1989). 'In so doing, we have explained that 'the purpose of the equal

24  protection clause of the 14th Amendment is to secure every person within the

25  State's jurisdiction against intentional & arbitrary discrimination, whether

26  occasioned by express terms of a statute or by its proper excution through

27  duly constituted agents.' See, Sioux City Bridge Co., Supra, at p. 445, 43 S.

28  Ct. 190 (quoting Sunday Lake Iron Co. v. Township of Wakefield, 247 U.S. 350,

1  352, 38 S.Ct. 495 (1918). 'it is clearly established that a state violates the

2  equal protection clause when it treats one set of persons differently from

3  others who are similarly situated.' Wheeler v. Miller 168 F.3d 241, 252 (5th

4  Cir. 1999).

5      Petitioner has established separate treatment, discrimination & the Boards

6  failure to follow United State Supreme Court precedents, thus their failure

7  to se petitioner's term, as was done to Schiold, violates Both California and

8  the United States Equal Protection Clauses.

9                    Failure To Consider Term Setting

10     At no time durning the hearing, nor at any time durning Petitioner's in-

11 carceration (i.e. 19 years) of his (6) hearing, has the Board considered the

12 determinate term that petitioner would serve (As to Prop. 7, 190 murders, this

13 would be an unconstitutional matrix without voters approval) or the time cre-

14 dits he actually served as factors in the suitability equation. The Court of

15 Appeals in In re, Ramirez (12/12/01) 94 Cal. App. 4th 549 at 569 held:

16     'The Board cannot ignore the determinate term prescribed for a commit-
       ment offense when it considers the gravity of the crime as a factor in
17     weighing against a finding of suitability for parole. The Board must
       make its determination 'in a manner that will provide uniform term for
18     offenses of similar gravity & magnitude in respect to their threat  to
       the public.' (P.C. 3041(a). Determining what would be a 'unfform' term
19     for an inmate serving a determinate life term for offenses that include
       concurrent determinate term is not an exact science. However, the Board
20     should strive to achieve at least a rough balance between the gravity
       of the offense, the time the inmate has served, and the sentences pre-
21     scribed by law for the commitment offense.'

22     At page 570, the Court said:
       'the Board must also consider the lenght of time the inmate has served
23     in relationship to the term prescribed by the legislature for the of-
       fenses under consideration, in order to arrive at a 'uniform' term  as
24     comtemplated by P.C. 3041(a).' (Infra, 3041, six distinct part

25     The gravity of petitioner's offense must be measured not in terms of the

26 life maximum potential, but in  relationship to the determinate term prescribe

27 for such offenses in 15 CCR § 2283(c). The Board must consider the appropriate

28 determinate term that would be set & the time served already. The Board has

1  failed to follow the criteria of 2283(c). (Note*: Although Petitioner asserts

2  that §§ 2400-2411 cannot be applied to him the Board is still in violation by

3  not complying with rules & regulations that they are applying.)

### Failure To Follow Fixed Primary Term

5  Thus, at petitioners 6th hearing the Board has failed to follow statutes

6  and to fix Petitioner's 'primary term' on his 'Straight Life Sentence'. A 'pri

7  mary term' is not in conjuction with or dependent upon a parole hearing. See,

8  In re, Rodriguez (1975) 14 C.3d 639; People v. Scott, (1984) 150 C.A.3d 910,

9  918-919. Petitioner has a right to have his term fixed proportionately to his

10  offense & his calpubility. As Petitioner has now served 19 years, 2 years be-

11  yond matrix maximum for Kidnap-Robbery without any gain time, work time credit

12  pursuant to the specific statutes 2930-2932 and regulations 2283(c).

13  The Los Angeles County Superior Court, on June 26, 2006, In Robert Rose-

14  nkrantz, Case No. BH003529, specifically at page 3, lines 14-15 established

15  that the Board set Rosenkrantz term, (i.e. as in this case their been no term

16  set) 'On 11/9/1999, petitioner was found unsuitable for parole, but the panel

17  set his term. As the date 6/30/01 was set for his release. (emphasis added).

18  Evaluating proportionality does not hinge on the life maximum, but is mea-

19  sured by the time actually served with the sentence deemed appropriate by the

20  Board's sentencing regulations. The Board cannot abdicate this responsibility

21  either by saying it has no authority to fix terms (See, Schiold & Rosekrantz)

22  or by subsuming term-fixed under the parole function. Petitioner is entitled

23  to the fixing of his primary term as an ultimate, immutable release date, un-

24  der equal protection (Class Of One) of the 14th Amendment. See also, In re,

25  Rodriguez (1977) 19 C.3d 221, 230; Rosenkrantz, supra. Ex. 'N', 'M'

26  In McGinnis v. Royster 93 S.Ct. 1055 (1973) the court held: at p. 1057

27  that; 'each inmate has both a 'minimum' parole date, which is the earlier date

28  (i.e. 3046) on which he 'may' be paroled at the discreation of the Board, and

1   a 'statutory release' date which is the earliest date he 'must' be paroled by

2   the Board, (Fn. 3), 'he also has a maximum expiration date which is the date

3   of the maximum sentence to which an inmate can be held if he recieves no good

4   time credits at all.' Ex. 'O'.

5      The case refers to an 'indeterminate sentence' & establishes that there

6   are actually (3) date to such a sentence; (1) the minimum parole date; (2) the

7   statutory release date, (3) the maximum expiration date (i.e., death).

8      The Court noted that the DSL repealed the criteria, provisions & mandates

9   of the ISL to govern 'indeterminate sentences'. The court gave guidance (i.e.

10  Rosenkrantz & Dannenberg, line of cases) at footnote 7 (28 C.3d 210) which the

11  BPH still fails to take notice of (i.e., P.C. 3000).

12     Thus, Petitioner re-alleges, Docket # 1, PETITION at pp. 1-4, Claim # 2,

13  at pp. 4-8, the unanswered issues as follows:

14     1)  has petitioner kidnap-extortion sentence passed the Boards jurisdic-
           tion, after (6) hearings in (19) years with no gain time credits be-
15         ing applied, passing CCR tit. 15 matrix maximum of 17 years by 2 yrs?

16     2)  has the Board voided understanding & termonology of statute and regul
           ations, by an abuse of power (i.e. 1990-2003) of a No Parole Policy,
17         by an intent to subterfuge to evade equal protection & due process?

18     3)  has the Board avoided the fact petitioner was found guilty by jury of
           of all facts in aggravation & mitigation  involved in the crime, to
19         which, after 19 years and (6) hearing the Board  has not found any
           new evidence other than the crime itself?
20
21     4)  has the Board avoided statutes in pari materia thats harmonized to
           make a complete release to parole scheme of the DSL's 'straight Life
22         Sentences'?

23     5)  has the Board failed to follow Legislatures intent of tri-paritiate
           matrix term setting of primary terms?
24
       6) has the Board & Attorney general used general guideline rules of CCR
25        tit. 15, §§ 2400-2411, of Judge Made Law, (i.e. Dannenberg line of
          cases) to provide an intent not found within statutes for petitioner
26        'straight life sentence'?

27     Petitioner re-alleges, Docket # 1, PETITION at pp. 4-8, Claim # 2, the

28  unanswered issues as follows:

1)  has the Board failed to provide (MfRPD) release pursuant to mandatory
    language (MFPD) of P.C. 3000(b)(1);

2)  has the Board failed to comply with, or act within the 'preponderance
    of evidence standard, or the 'new information' standard;

3)  the Board has failed to follow statutory intent of 'some evidence';

4)  the Board has violated the 'equal protection' 'class of one' and the
    'substantive' due process, overstepping jurisdiction;

5)  has the Board used the misdemeanor intent reclassifying them as fe-
    loney's?

6)  has the Board used the exception (3041(b), rather than the norm 3041
    (a), with a 'low level review' of 'some evidence' standard that for
    reviewing courts?

7)  has the Board violated the 14th Amendment, by attaching involuntary
    psychiatric's, establishing a behavior modification without proced-
    ural due process?

8)  has the Board created a new statute for petitioner to make a guaran-
    tee, being an illegal that will keep him from returning to the United
    States?

9)  has the Board & District Attorney created false information in re-
    characterizing petitioner with new facts not found by the jury or the
    trial court; And  as petitioner did not contest his guilt, and has
    contended the virson of trial transcrips to be correct how has this
    become new or some evidence showing lack of remorse or understanding
    of the offense, has this not violated P.C. 5011(b)?

10) has the Board violated its own Title 15 § 3375.2(7)(A)?


    Petitioner re-alleges, Docket # 1, at pp. 4-8: The Borad violates the un-
iformity of punishment, triggers 3041(b) pursuant to provisions of 1170(b)(2),
the mandates of 1170.2(b)(2), to invoke 3041(c) that implements 3041(b), by
continuing to reclassify petitioner crime, with a low level 'some evidence
standard, voiding  legislatures intent of statutes being in pari materia, and
creating a 'class of one', by using Judge Made Law, to subterfuge and evades
in jeapordy of punishment issues.

    Petitioner RE-ALLEGES, PETITION DOCKET # 1, Claim # 3; Violation of feder-
ally protected liberty interest pursuant to a 'class of one', and the Board
now lacks jurisdiction, as petitioner is beyond matrix's maximum punishment.

11

Petitioners claim # 3 Docket # 1, must be found true and correct, as their is no argument or decision against it. As the Board has created a subterfuge to evade the (6) parts of 3041(a) the legislature intent for harmonized pari materia statutes by cross reference doctrine & theory, with 'rote' mechanical phrases to invoke 3041(b) as follows:

1) can the Board continue after (6) hearing to void the Matrix's tri-paritiate terms?

2) can the Board void statutes by failure to follow incorportated by cross reference statutes ?

3) has the Board used 3041(b), without following 3041(a) entire intent?

4) has the Board voided the penological plan of discreationary retention established by tri-paritiate matrix's terms?

5) has the Board recharacterized kidnap to that of murder, by denying on (5) issues found in P.C. 190.2 and Rules of Court 421 aggravating circumstances not found by jury or trial court?

6) can the Board continue to void the contemporeous case law, statutes, regulations and the Attorney general's 60 Ops. Att. Gen. 143, with complete disregard of good time, gain time, credits 2930-2932?

7) can the Board continued violation of procedural due process, as one of 'equity' be balanced by the Board's decisions running contrary to statutes intent be rehabilitative?

8) has the Board created sham resons, by using special circumstances to deny release after 19 years?

9) has the Board lost jurisdiction by focusing only on status and on the crime without any change?

10) has the Board the expertise to forecast potential acts of future vio-lance on recidivism?

11) has the Board ignored statutes concern for transition between impri-sonment & discharge, to assist in, supervision & survailance for pub-lic safety concerns established in P.C. 3000(a)?

12) has the Board ignored 3000, as rehabilitation commisse upon the re-turn of an inmate to public life from imprisonment, or is it the con-tinued agenda of incarceration voiding statutes?

13) has the Board, or state created a 'class of one?

14) has the Legislature not created a determinate sentence pursuant to release by regulations, P.C. 3000(a), 3002, 3000.1?

1    Thus, while P.C. 1170 et seq., applies to determine sentences, the current

2   provisions of 3041(a), (6) parts govern parole for inmates serving ISL (i.e.

3   Life Prisoners, 3046), and the DSL's (i.e., as here, Straight Life Sentence)

4   that continued & was added as part of the DSL's intended intent to serve the

5   same purpose as determinate; (Stats. 1976, Ch. 1139 S s 281; 1977, Ch. 165;

6   1979, Ch. 255), is made determinate by the matrix. See, In re Stanworth (1982)

7   33 C.3d 176, 182, 184. The state Supreme Court made clear the 'uniform terms'

8   called for by 3041(a) are analytically equivalent to determinate sentences im-

9   posed under 1170 et seq., People v. Jefferson 21 C. 4th 86, 96.

10   Thus, Petitioner  submits 3041(a) (6) parts, as applied to (4) of the (6)

11   'Life Prisoner's' found within the DSL's scheme as follows:

12   1)   3041(a): The **[1] Board of Prison Terms** shall meet with each such
            inmate **durning third year** of incarceration for the purpose of re-
13            viewing the inmates file, making recommendations, and **documenting**
            **activities and conduct pertient to granting or withholding post-**
14            **conviction credits;** Bold Id's. as Ch. 255, 1979 amendment **[1].**

15   2)   3041(a): One year prior to the inmate's minimum eligible parole re-
            lease date **[1] a panel consisting of at least two commissioners of**
16            **the Board of Prison Terms** shall again meet with the inmate and shall
            normally set a parole release date as provided in Sec. 3041.5;
17

18   3)   3041(a): The release date shall be set in a manner that will pro-
            vide uniform terms for offenses of similar gravity & magnitude in
19            respect to their threat to the public;

20   4)   3041(a): That will comply with the sentencing rules the Judicial
            Counsel may issue & any sentencing information  relevant  to the
21            setting of a Parole Release Date;

22   5)   3041(a): The Board shall establish criteria for the setting of a
            Parole Release Date & in doing so shall consider the  number  of
23            victims of the crime for which the prisoner  was sentenced  and
            other factors in mitigation or aggravation of the crime;

24
     6)   3041(a): At least one commissioner of the panel shall have been
25            present at the last proceeding meeting, **[2] unless it is not fea-**
            able to do so where the last proceeding meeting was the initial
26            meeting. Bold Id's. as Ch. 1432 (1982) **[2]**.

27   Thus, the Board has ignored Legislatures intent (i.e. Ex. 'I'); by follow-

28   ing a No Parole Policy from 1990-2003, violating statutes, as declared in §§

1  1170(a)(1)(3)(b)(d)(f), 1168(a)(b), 1170.2(b)(2)(d)(g)(h), statutes in pari

2  materia, dealing with the same subject of 3041(a), but in greater details pur-

3  suant to subsection (c) invoking 1170 (b)(2), 1170.2(b)(2), 3041(b) serious

4  offenders scheme. Thus, 3041(a) break down, the legislatures intent was & is

5  to provide uniformity in comparative context, established by Judicial Councils

6  Sentencing Rules, for the act between granting of parole, and the fixing of

7  terms, Clutchette 39 C.A.3d 561, 563, 144 C.R. 509 (1974); for the analysis of

8  release, In re to, 60 Cal. L. Rev. 1518, and the distinction between probation

9  & parole, In re to, 25 Hasting L. J. 602; To the offense to provide 'some evi-

10 dence' to deny setting an actual (a) date of release to a period of parole In

11 re to, 14 Pacific L. J. 585.

12     Thus, Petitioner alleges the Board has violated supra, statutes, that the

13 Legislature has determined are to control (i.e., as here, petitioners straight

14 life sentence') (4) of the (6) different and distinct 'Life' sentences pursu-

15 ant to the DSL's regulatory & statutory scheme, as follows:

16  1)  The ISL 'to Life' repealed & converted all to 'determinate' pursuant
        to retroactive provisions of the DSL's amended statutes that has cre-
17      ated (3) tri-paritiate possible terms by statutes.

18  2)  The ISL 1168 'Life Prisoners' of P.C. 190, (1970-1978) Chapters's
        719, P.C. 209(b), 218, 219 (Ex. 'J.').
19

20  3)  The DSL's 'Straight Life Sentences', Ch. 316 (1978) Fx. 'K', and
        the amended 3046 fx. 'I', with the other 'Life Sentences' of 209(b)
21      218, 219, Kidnap & Trainwreaking.

22  4)  The DSL's Indeterminate Life Sentence', i.e. Three Strike Law,
        enacted in 1994, pursuant to 1170.12, 667.5 & 1192.7; With it's
23      sentences pursuant to Rules of Court & CALJIC Instructions in
        pari materia with other statutes of the DSL's sentencing pro-
24      cedures; with release to parole pursuant to 1170 et seq., 3040 et.
        seq., and 3000 et seq., pursuant to legislatures 1170.1 enacted by
25      an initiative measure. see, 60 Ops. Att. Gen. 143.

26  5)  Prop. 7's 'Theory Sentence' 'To Life' 15/25 years Cal. Const. Art.
        II § 8; As noted the State SUPRFMF COURT (1980) in re to, 28 C.3d
27      210 at p. 220, found these terms were not drafted as part of the
        ISL nor the DSL, or that these sentences would be moderated under
28      the DSL, to the contrary voters were told otherwise. Id. at 220 Fn.7.

6)  Prop. 222 'Indeterminate Sentence' of 15/25 years 'to life' estab-
    lishing minimum and potential maximum terms. making what was Prop.
    7's terms, of the minimum only the maximum, creating determinate
    of Prop. 7's terms, between 1978-1998. As the ex post facto law
    looks to the sentence imposed id. Ex. 'L'.

Petitioner alleges, the action (supra, infra) has extended his incarcer-
ation, as a prisoner of a 'class of one', by denial under a no parole policy.

The Board, uses 'rote' mechanical phrases to trigger 3041(b), to deny Max-
imum Eligiblity Release Date under comparative porportionality && uniformity
of harmonized pari materia statutes & regulations. As 3041(a) is not vague, n
and 3041(b), would constitute vague, as the Board does not follow supra, pro-
visions and mandates of, term setting. The vice of vagueness is the treachery
concealed, voiding the Doctrine Of Prison And Campus Contexts. Citing, 26Stanf
L. Rev. 855; In re to, Blany (1947) 30 C.2d 643, Id. 656, 184 P.2d 892; Saad
(1951) 105 C.A.2d Supp. 851, 234 P.2d 785; Thus, the above, law Journals of
Law and infra, of incorporated by cross reference statutes IS the legislatures
doctrine & theory, as to, the penological (i.e. supra, # 3; Straight Life Sen-
tence P.C. 209.) (4) out of (6) sentence plan for discreationary retention, In
re to, 13 Stanf. L. Rev. 341; 50 Cal. L. Rev. 651.

As here, the Board and Courts using the Dannenberg, supra # 5, line of
cases, has subverted 3041(a), porportionate & uniform terms guided by the pro-
visions of legislature intent of 1170(a), In re to, Martin (1986) 42 C.3d 437,
442-443, 299 C.R. 131, 722 P.2d 785,. As 1170 applies the tri-paritiate terms,
that 3041(a) is intended to serve by the matrix's. In re to, Stats. (1976) Ch.
1139 § 281 p. 5151; Being affirmed, cf, Stanworth(1983) 33 C.3d 180 at p. 184,
cf. People v. Jefferson 21 Cal. 4th 86, 95.

Petitioner re-alleges, as of Oct. 1979, 60 Ops. Att. Gen. 143, has full
knowledge of Section 6, Discharge & parole, as to petitioner sentence, the
Boards duty is under DSL's 1170(b), to review sentences of imates committed to
prison to determine IF a substantial difference exists between subject sentence

1   and a sentence imposed on other offenders committing the same offense under

2   similar circumstances, as 3041(a) does comply with 1170.3 Rules of Judicial

3   Council.

4        Where, In People v. Rizo (2000) 22 C. 4th 681, 688, 94 C.R. 2d 375, 996 P.

5   2d 931; Noted the historical circumstances of the DSL's enactment to consider

6   every statute with reference to all other statutes covering similar subjects

7   so that each part of the law operates as a whole & is given effect by harmon-

8   ized pari materia statutes. Also see, Franchise Tax Bd. v. Superior Court (19-

9   98) 63 C.A. 4th 794, 73 C.R. 2d 889.

10       Thus, as here, petitioner 209(b) kidnap has P.C. credits, to apply to re-

11  duce his term. Just as in Weaver v. Graham (1981) 450 U.S. 24, 29, 67 L.Ed.2d

12  17, 23, 101 S.Ct. 960, the court held a statute which, changes the computation

13  of 'gain time credits' violates the ex post facto clause.

14       As noted in Weaver, supra, when applied to Prop. 222, the Title & Summary,

15  its text nor its analysis establish SB 1231 § 1, nor AB 446 § 1, the Legisla-

16  tures P.C. § 190, (1996) Ch. 598 §§ 1, 4; has made Prop. 7's, P.C. 190's, 'The

17  -ory Sentence' 'to life' between 1978-1998, minimums of 10/16.8 latter minimum

18  only the minimum, leaving 15/25 minimum now only the maximum sentence.

19       This is because Prop. 222, repealed P.C. credits §§ 2930-2932, of Prop. 7,

20  to reduce the 'theory Sentence' 'to life' minimum. As here, the law needs not

21  impair vested rights to violate ex post facto prohibitions; As 'critical to re

22  -lief under ex post facto is not the individual's right to less punishment,

23  but the lack of fair notice & the governmental restraint when the crime was

24  consummated. Id. Weaver v. Graham, supra.

25       just as Prop. 222, and state Supreme Court precendent line of cases Dannen

26  berg, the United States Supreme Court noted in a similar line of cases, In re

27  to, Lindsey v. Washington (1937) 301 U.S. 397, 81 L.Ed. 1182, 57 S.Ct. 797;

28  considered a law, where, the legislature amended a discreationary term that

1  could have been set at any period of time up to 15 years, the amendment pro-

2  voded for an indeterminate 15 years 'to life' term, and it could not be app-

3  lied retroactively. 'The effect here, are just the same, in that Prop. 222,

4  has made the new statute that was before only the maximum sentence. see, Lind-

5  sey, supra, id. at p. 400. Thus, the ex post facto clause looks to the stan-

6  dard of punishment, rather than the sentence actually imposed.  id. 81 LEd.

7  1185-1186.

8      Petitioner alleges, the objective factor, is entirely the opinion & analy-

9  sis of criteria. Where, as here, the Board has deprived petitioner of his lib-

10  erty. U.S. v. Dexter 143 F.3d 577 (10th Cir. 1998); Schweilker v. McClure 456

11  U.S. 188, 195, 102 S.Ct. 1665 (1982). As in this case, there is nothing in the

12  record to establish, or even hint, that the Board members at petitioners hea-

13  ring have the same professional credential as a California Board Certified Psy

14  chologist/Psychiatrist. In fact, per the Department of Corrections Operational

15  Manual § 62090.14.1, staff, icluding Parole Board Members, cannot evaluate an

16  inmate unless they have at least (2) years of graduate training in psychiat-

17  rity. As in this case, the above shows how after (6) hearing, the record Is a

18  systematic denial, of cryptic 'word' 'reasons' of the same factors without any

19  'new information', estblishing a NO PAROLE POLICY, by the pre-determined den-

20  ials, O'Bremski v. mass, 915 F.2d 418, 422 (9th Cir. 1990); by plainly disre-

21  garding the 'substantial law', [law of pleading, of evidence, of jurisdiction]

22  denying equal protection as to a 'class of one', to establish 'in jeapordy of

23  punishment', see, Fain v. Duff C.A. Fla. 488 F.2d 218, 255; by avoiding gain

24  time credits to set MFRPD and MFPD, increasing punishment over regulations,

25  violating the 6th Amendment of the Federal Constitution.

26      Thus, as petitioner has a liberty interest, being in a 'class of one', the

27  Board and the Judicial are not immune from review. As state Court's (i.e. Dan-

28  nenberg, line of cases) Judge Made Law, has construed away the meaning in P.C.

17

1  3041(a), by subterfuging to evade, by finding meaning in 3041(b) that the Leg-

2  islature never intended, creating a constructive amendment of statutes and of

3  regulations, putting petitioner outside 209(b) kidnap, to a life without the

4  possibility of parole, leaving petitioner outside the (4) distinct release to

5  a period of parole scheme of the DSL.

6  Thus, petitioner's 209(b) kidnap, pursuant to the DSL, has the right to

7  due process, stemming from his liberty interest thats attached to release with

8  -in the 6th Amendment of federal constitution, as petitioner has served beyond

9  the matrix's maximum of 17 years, with any or all parole period being served.

10  Petitioner re-alleges, Docket # 1, Claims 1-3, in Toto, as the Board fail-

11  ed to distinguish or acknowledge petitioners term setting date, or his equally

12  culpability, to the current level of threat to public is his own. Thus, the

13  Boards determination to focus upon public safety risk, does not flow from 'new

14  information' of 'pertinent criteria', being supported by 'some evidence' in

15  the record [not an opinion] before the Board, to indicate a continuing danger

16  to the public.

17  As here, the evidence must show an unreasonable risk to the public. The

18  Board fails to show or indicate such risk, and therefore the writ should be

19  granted in full.

20  Petitioner re-alleges Docket # 1, Claim # 4, in Toto, as the Superior Cour

21  made no comments to Claim # 4, by reference or denialissues. Thus, Claim # 4,

22  must be deemed true and correct.id at pp. 13-15.

23  As the Board violates 3041 objective, evades established federal due pro-

24  cess, by the subterfuge to evade statutes using Judge Made Law of the Dannen-

25  berg line of cases, finding meaning thats not within statutes, creating a vagu

26  3041(b) as follows:

27  1)  Has the Board violated California's parole scheme, by the use of Jud-
    ge made Law, violating regulations maximum matrix's, placing petition
28  er in jeapordy, or twice the jeapordy of finality of the maximum?

2) has state Courts interpretation been contrary to federal due process rights, as statutes create a liberty interest?

3) has the interpretation of Sass, Dannenberg, line of cases, effectively changed 25 years of reliance on plain language, disposing of proporationality, to ignore jury verdicts, facts admitted to, creating a standard of 'some evidence' not found within the statutes?

4) has the judicial decisions of case law, violated Judicial Councils sentencing rules and statutory intent of cross reference of 60 Ops. Att. gen. 143, by Prop.7's, Dannenberg, line of cases?

5) Has Dannenberg line of cases, hidden and evaded sentence schemes of (4) of the (6) that was drafted as part of the DSL?

6) has the Dannenberg line of cases, been used to evade provisions and mandates found pursuant to 3041, violating a cognizable liberty interest, where 3041 language is virtually idential to Allen?

Petitioner re-alleges Docket # 1, Claim # 5, at pp. 15-29; in Toto; that pursuant to Judge made Law, the Sass & Dannenberg, decisions is clearly contrary to each other; Being violative of protected liberty interest of release to a period of parole pursuant to gain time credits by the Voters, and by the Legislature's, incorporated by cross reference statutroy scheme of the Determinate Sentencing law, to which, Sass & Dannenberg, as a line of cases, were not drafted as part of the ISL, nor a continuing DSL' scheme as follows:

1) has the state court provided a low level review standard for the Board by adopting a displinary standard of review call the 'Some evidence", in which, the Supreme Court found for a state prison system which, had no standard of review?

2) has the 'some evidence' standard provided a new tier of facts to be enuniciated in statutory language of incorporation by cross reference statutes?

3) has the Board eliminated the comparative terms, by recharacterizing the term without a preponderance of evidence, by the Dannenberg line of cases?

4) has the Board decisions been contrary to contemporenous case law, and of 60 Ops. Att. Gen. 143; and that of the regulations maximum matrix's?

5) has the Dannenberg & Rosenkrantz, line of cases, been used by the Board as a bar to release, irrespective of risk or danger, in the act of avoiding legislative intent of statutes §§ 1170.1, 3041, 3000.

19

6) has the <u>Rosenkrantz & Dannenberg</u> line of cases, violated the leg-islatures intended intent of due process and equal protection in permitting the Board to create a 'class of one', and by voiding the presumptive range of the matrix's?

7) has the <u>Dannenberg & Rosenkrantz</u> line of decisions, allowed the Board to violate incorporation by incorporated cross reference statutes to combine (4) of the (6) different types of sentences into one by borrowing a little from this & to take a little from that, in an attempt to make a coherent release scheme, but violating statutes in doing so?

8) has state courts evaded federal issues of rights by an obvious subterfuge to evade statutes interpretation?

9) has the Board violated their discreationary powers?

10) has the Board evaded the presumption of Evidence Code § 605, that implements public policy, and has the Board eliminated uniformity of punishment by voiding 3041(a) procedures at hearings?

11) has the Board violated the limited procedures they posses at hearing pursuant to P.C. §§ 3041.5, 3041(a) provisions, 1170.1 & 2931, 2932 in fixing the maximum pursuant to regulations of supra, penal codes?

12) was the 'some evidence' by the Supreme Courts Ruling ever ment to control Board Hearings for release to parole? see, Hill...

13) has the Board evaded the preponderance of evidence standard and that of Evidence Code Section 115 of California Statutes?

The <u>Dannenberg</u> decision is contrary to clearly established Supreme Court Law, as it relies on a subterfuge to evade the vague language of 3041(b) as follows:

1) has the Dannenberg decision allowed vague meanings, where men of com-mon intelligence has guessed at the interpretation, and has invited an arbitrary & discriminatory (i.e. 'class of one') enforcement?

2) has the Board recharacterized every crime to a greater crime by using rote wording to create 'some evidence' after (6) hearings with the same reason for denial?

3) has Dannenberg line of cases created a constructive amendment to the intent of statutes, voiding legislatures designed intent, by finding meaning thats not in 3041(b)?

4) has not the Board, and the findings by state Courts taken the statu-tory scheme of the maxtrix by Legislatures designed intent to be void, by subterfuging the controling statutes of incorporation of incorporated by cross reference harmonized pari materia statutes, and by voiding jury or judges findings violating due process?

5)   has not state Supreme Court concluded that the Dannenberg line of case, were not drafted as part of the DSL?

6)   has it not been decided by the Legislature that P.C. 209(b) was drafted as part of the DSL, and its matrix scheme?

7)   does not California statutory scheme create a release to a period of parole under the supervision and survailance of Parole officers for the protection of public security?

8)   dose the DSL not create tri-paritiate terms for a signal term by the matrix's?

Thus, as courts have held that [o]ne who is legally convicted has no vested rights to determination of his sentence at less (i.e. ISL's Life prisoners id. Ex. 'J') than the maximum.' (In re, Schoengrath (1967) 66 C.2d 295, 302).

Petitioner was sentenced to a 'straight life sentence' pursuant to the DSL's 209(b), see, Ex. 'J', pursuant to the credit scheme being incarcerated now 19 years, 2 years pass the DSL's Matrix by his (6) hearing.

Petitioner re-alleges his Docket # 1 PETITION FOR WRIT OF HABEAS CORPUS, ANY or ALL EXHIBITS, and any or all claims to which were not addressed by the Clerk of the Superior Courts minute order denying Petition. Petitioner re-alleges his Appeal To Second District Court Of Appeals, for said petition of habeas corpus.

## DECLARATION

I declare under penalty of prejury that the foregoing is true and correct Excuted this ___5th___ day of __January__ , 2007, at CTF Central Soledad State Prison, Soledad, CA. 93960-0689.

_____
FIKINS GOMEZ
In pro se

PROOF OF SERVICE BY MAIL
(C.C.P. 1013(a), 2015.5)

I, Elikins Gomez, declare that I am over 18 years of age and that i am the pro per Petitioner to the herein attached cause of action.

My complete mailing address is : Elikins Gomez E-44776, P.O. Box 689, F-wing 205L, CTF Central, Soledad State prison, Soledad, CA. 93960-0689.

I further declare that I have deposited true and complete copy's of the attached; PETITION FOR REVIEW FROM A DENIAL OF HABEAS CORPUS PETION CASE NO. BH003906, from the los Angeles Superior Court Clerk, addressed to the following list below, in a sealed envelope(s) with postage fully pre-paid, and deposited said documents in the U.S. Mail Box (prison Mail Box) at CTF Central Soledad State Prison, Soledad, CA. 93960-0689. With Appendix A, B and C being attached.

1-copy    Second Appellate District
          300 Spring Street
          Fl. 2, N. Tower (Clerk)
          Los Angeles, Ca. 90013

1-copy    Attorney general
          110 West A Street, Suite 1100
          P.O. Box 85266
          San Diego, CA. 92186-5266

I declare under penalty of perjury that the foregoing is true and correct, excuted this ___5th___ day of ___January___ , 2007 at CTF Central Soledad State prison, Soledad, CA. 93960-0689.

ELKINS GOMEZ
In pro se.

22

EXHIBIT M

Appendix 'A'

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES

DEPT 100

| Date: | NOVEMBER 30 , 2006 | | Judge | J. PULIDO | Deputy Clerk |
|---|---|---|---|---|---|
| Honorable: | DAVID S. WESLEY | | Bailiff | NONE | Reporter |
| | NONE | | | | |

(Parties and Counsel checked if present)

| BH 003906 | |
|---|---|
| In re, | |
| ELKIN GOMEZ, | Counsel for Petitioner: |
| Petitioner, | |
| On Habeas Corpus | Counsel for Respondent: |

Nature of Proceedings: ORDER RE: WRIT OF HABEAS CORPUS

The Court has read and considered petitioner's Writ of Habeas Corpus filed on March 2, 2006. Having independently reviewed the record, giving deference to the broad discretion of the Board of Prison Hearings (" Board") in parole matters, the Court concludes that the record contains "some evidence" to support the Board's finding that petitioner is unsuitable for parole. (see Cal. Code Regs., tit. 15, § 2402; *In re Rosenkrantz* (2002) 29 Cal. 4th 616, 667 (hereafter *Rosenkrantz*).)

On February 5, 1990, petitioner was received into custody for a conviction of seven years to life, plus two years, for kidnapping for extortion with a firearm, in violation of Penal Code sections 209(a) and 12022.5. Petitioner's minimum eligible parole date was November 22, 1995. The record reflects that petitioner, along with at least two crime partners and acting at the direction of an identified cocaine trafficker, kidnapped the victim in order to collect an eighty-two thousand dollar drug debt the victim owed. The victim was working as an FBI informant and at the time, was wired with a listening device that transmitted the conversation between the victim and the kidnappers to law enforcement. Law enforcement followed the kidnappers. The transcript of the conversation revealed that petitioner acted as an interpreter for the group. At some point, the victim escaped from the vehicle. The kidnappers then threw a machine gun, shotgun and .357 magnum out of the vehicle and petitioner and one of his crime partners escaped. Petitioner was arrested one week later.

The record reflects that the Board found petitioner unsuitable for parole after a parole consideration hearing held on February 2, 2005. The Board concluded that petitioner was unsuitable for parole and would pose an unreasonable risk of danger to society and a threat to public safety if released from prison. The Board based its decision on several factors, including his commitment offense. Although the Board commended petitioner for the positive aspects of his behavior in prison, they found that his positive behavior did not outweigh the factors of unsuitability.

The record supports the Board's finding that the offense was carried out in a dispassionate and calculated manner and that the motive was very trivial in relation to the offense. (See Cal. Code Regs., tit. 15, § 2402, subds. (c)(1)(B) & (E).) The record further reflects that the Board also relied on several additional factors in denying petitioner parole at this time, and there is some evidence to support that decision. The Board was particularly concerned with petitioner's truthfulness about his involvement in the commitment offense. An inmate may be more suitable for parole if he understands the nature and magnitude of the commitment offense. (See Cal. Code Regs., tit. 15, § 2402, subd. (d)(3).) Petitioner testified that he acted merely as an interpreter

1

| Minutes Entered |
|---|
| 11-30-06 |
| County Clerk |

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES

DEPT 100

Date:        NOVEMBER 30 , 2006
Honorable:   DAVID S. WESLEY            Judge | J. PULIDO                    Deputy Clerk
             NONE                       Bailiff | NONE                        Reporter

(Parties and Counsel checked if present)

BH 003906
In re,
ELKIN GOMEZ,                             Counsel for Petitioner:
        Petitioner,
     On Habeas Corpus                    Counsel for Respondent: ·

during the kidnapping.  However, the probation report indicates that petitioner made statements that showed "initiative and freedom of action" and that he had been heavily involved in the drug trade since his first illegal entry into the United States.  Petitioner even admitted to transporting drugs in the early 1980's.  Where guilt is uncontested, an inmate's version of the events may be "some evidence" that he lacks remorse and understanding of the nature and magnitude of the offense.  (In re McClendon (2004) 113 Cal. App. 4th 315, 322.)  The Board was acting within its authority when it considered petitioner's postconviction gains, yet concluded that he would pose an unreasonable threat to public safety.  (See Penal code § 3041, subd. (b).)

Therefore, the petition is denied.

The court order is signed and filed this date.

A true copy of this minute order is sent to the petitioner via U.S. Mail as follows:

Elkin Gomez
E-44776
Correctional Training Facility-Central
P.O. Box 689
Soledad, CA 93960-0689

THE DOCUMENT TO WHICH THIS CERTIFICATE IS
ATTACHED IS A FULL, TRUE, AND CORRECT COPY
OF THE ORIGINAL ON FILE AND OF RECORD IN
MY OFFICE.

ATTEST  12-15-06

                 JOHN A. CLARKE,
Clerk/Executive Officer of the Superior
Court of California, County of Los Angeles.

BY _____ , DEPUTY

                    JOSEPH M. PULIDO, S.C.C.
                              233219

2

Minutes Entered
11-30-06
County Clerk

Appendix 'B'

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES

**DEPT 100**

| | | | |
|---|---|---|---|
| Date: | SEPTEMBER 18, 2006 | | |
| Honorable: | DAVID S. WESLEY | Judge | J. PULIDO | Deputy Clerk |
| | NONE | Bailiff | NONE | Reporter |

(Parties and Counsel checked if present)

BH003906
In re,
ELKIN GOMEZ,
     Petitioner,
    On Habeas Corpus

Counsel for Respondent:

Nature of Proceedings: ORDER RE: WRIT OF HABEAS CORPUS

The Court acknowledges the receipt of the Writ of Habeas Corpus on March 2, 2006.

Due to the enormous number of Writ petitions now on file with this Court, the Court requires additional time to process each petition. Accordingly, the Court, on its own motion, is extending time to rule on the Writ of Habeas Corpus pursuant to Cal. Rules of Court, rule 4.551(h).

The Court hereby orders the time for ruling on petitioner's Writ of Habeas Corpus extended to January 30, 2007.

The Court order is signed and filed this date.

A true copy of this minute order is sent to the petitioner via U.S. Mail as follows:

Elkin Gomez
E-44776
Correctional Training Facility
P.O. Box 689
Soledad, CA 93960-0689

1

Minutes Entered
09-18-06
County Clerk

<table>
<tr><td colspan="2">

**SUPERIOR COURT OF CALIFORNIA**
**COUNTY OF LOS ANGELES**

COURTHOUSE ADDRESS:
Clara Shortridge Foltz Criminal Justice Center
210 West Temple Street
Los Angeles, CA 90012

PLAINTIFF/PETITIONER:

ELKIN GOMEZ
</td><td>

Reserved for Clerk's File Stamp

CONFORMED COPY
OF ORIGINAL FILED
Los Angeles Superior Court

SEP 29 2006

John A. Clarke, Executive Officer/Clerk
By _____, Deputy
</td></tr>
</table>

| CLERK'S CERTIFICATE OF MAILING | CASE NUMBER: |
|---|---|
| CCP, § 1013(a)<br>Cal. Rules of Court, rule 2(a)(1) | BH003906 |

I, the below-named Executive Officer/Clerk of the above-entitled court, do hereby certify that I am not a party to the cause herein, and that this date I served:

- [x] Order Extending Time
- [ ] Order to Show Cause
- [ ] Order for Informal Response
- [ ] Order for Supplemental Pleading

- [ ] Order re: Request for Extension of Time
- [ ] Order        Petition
- [ ] Order re: Writ of Habeas Corpus
- [ ] Copy of Minute Order re

I certify that the following is true and correct: I am the clerk of the above-named court and not a party to the cause. I served this document by placing true copies in envelopes addressed as shown below and then by sealing and placing them for collection; stamping or metering with first-class, prepaid postage; and mailing on the date stated below, in the United States mail at Los Angeles County, California, following standard court practices.

September 29, 2006
DATED AND DEPOSITED

JOHN A. CLARKE, Executive Officer/Clerk

By: _____, Clerk
         JOSEPH M. PULIDO, S.C.C
                                    233219

Elkin Gomez
E-44776
Correctional Training Facility
P.O. Box 689
Soledad, CA 93960-0689

<table>
<tr><td>

**SUPERIOR COURT OF CALIFORNIA**
**COUNTY OF LOS ANGELES**

COURTHOUSE ADDRESS:
Clara Shortridge Foltz Criminal Justice Center
210 West Temple Street
Los Angeles, CA 90012

PLAINTIFF/PETITIONER:

ELKIN GOMEZ

</td><td>

Reserved for Clerk's File Stamp

CONFORMED COPY
OF ORIGINAL FILED
Los Angeles Superior Court

DEC 15 2006

John A. Clarke, Executive Officer/Clerk

By _____, Deputy

</td></tr>
<tr><td>

**CLERK'S CERTIFICATE OF MAILING**
CCP, § 1013(a)
Cal. Rules of Court, rule 2(a)(1)

</td><td>

CASE NUMBER:
BH003906

</td></tr>
</table>

I, the below-named Executive Officer/Clerk of the above-entitled court, do hereby certify that I am not a party to the cause herein, and that this date I served:

- ☐ Order Extending Time
- ☐ Order to Show Cause
- ☐ Order for Informal Response
- ☐ Order for Supplemental Pleading

- ☐ Order re: Request for Extension of Time
- ☐ Order        Petition
- ☒ Order re: Writ of Habeas Corpus
- ☐ Copy of

I certify that the following is true and correct: I am the clerk of the above-named court and not a party to the cause. I served this document by placing true copies in envelopes addressed as shown below and then by sealing and placing them for collection; stamping or metering with first-class, prepaid postage; and mailing on the date stated below, in the United States mail at Los Angeles County, California, following standard court practices.

December 15, 2006
DATED AND DEPOSITED

JOHN A. CLARKE, Executive Officer/Clerk

By: _Joseph M. Pulido_____, Clerk
            Joseph M. Pulido

Elkin Gomez
E-44776
Correctional Training Facility-Central
P.O. Box 689
Soledad, CA 93960-0689

Name  Elkin Gomez

Address P.O. Box 689    F-205L

CTF Central

Soledad, CA.  93960-0689

CDC or ID Number  E-44776

Copy of
ORIGINAL

SUPERIOR COURT

COUNTY OF LOS ANGELES

*(Court)*

| | |
|---|---|
| Elkin Gomez | PETITION FOR WRIT OF HABEAS CORPUS |
| Petitioner | |
| vs. | No. ___ BH003906 |
| Board of Prison Terms | *(To be supplied by the Clerk of the Court)* |
| Respondent | |

## INSTRUCTIONS — READ CAREFULLY

- If you are challenging an order of commitment or a criminal conviction and are filing this petition in the Superior Court, you should file it in the county that made the order.

- If you are challenging the conditions of your confinement and are filing this petition in the Superior Court, you should file it in the county in which you are confined.

- Read the entire form *before* answering any questions.

- This petition must be clearly handwritten in ink or typed. You should exercise care to make sure all answers are true and correct. Because the petition includes a verification, the making of a statement that you know is false may result in a conviction for perjury.

- Answer all applicable questions in the proper spaces. If you need additional space, add an extra page and indicate that your answer is "continued on additional page."

- If you are filing this petition in the Superior Court, you need file only the original unless local rules require additional copies. Many courts require more copies.

- If you are filing this petition in the Court of Appeal, file the original and four copies.

- If you are filing this petition in the California Supreme Court, file the original and thirteen copies.

- Notify the Clerk of the Court in writing if you change your address after filing your petition.

- In most cases, the law requires service of a copy of the petition on the district attorney, city attorney, or city prosecutor. See Penal Code section 1475 and Government Code section 72193. You may serve the copy by mail.

Approved by the Judicial Council of California for use under Rules 56.5 and 201(h)(1) of the California Rules of Court [as amended effective January 1, 1999]. Subsequent amendments to Rule 44(b) may change the number of copies to be furnished the Supreme Court and Court of Appeal.

Page one of six

Form Approved by the
Judicial Council of California
MC-275 [Rev. January 1, 1999]    PETITION FOR WRIT OF HABEAS CORPUS    Penal Code, § 1473 et seq.;
Cal. Rules of Court, rules 56.5, 201(h)

6.  GROUNDS FOR RELIEF
    Ground 1:  State briefly the ground on which you base your claim for relief. For example, "the trial court imposed an illegal
    enhancement." *(If you have additional grounds for relief, use a separate page for each ground. State ground 2 on page four. For
    additional grounds, make copies of page four and number the additional grounds in order.)*

    See Attached pp. i-vi

    a.  Supporting facts:
        Tell your story briefly without citing cases or law. If you are challenging the legality of your conviction, describe the facts upon
        which your conviction is based. *If necessary, attach additional pages.* CAUTION: You must state facts, not conclusions. For
        example, if you are claiming incompetence of counsel you must state facts specifically setting forth what your attorney did or
        failed to do and how that affected your trial. Failure to allege sufficient facts will result in the denial of your petition. (See *In re
        Swain* (1949) 34 Cal.2d 300, 304.) A rule of thumb to follow is: *who* did exactly *what* to violate your rights at what time *(when)* or
        place *(where)*. *(If available, attach declarations, relevant records, transcripts, or other documents supporting your claim.)*

        See Attached  pp. i-vi

    b.  Supporting cases, rules, or other authority (optional):
        *(Briefly discuss, or list by name and citation, the cases or other authorities that you think are relevant to your claim. If necessary,
        attach an extra page.)*

        See Attached pp vii-viii

8. Did you appeal from the conviction, sentence, or commitment? ☐ Yes. ☒ No. If yes, give the following information:
   a. Name of court ("Court of Appeal" or "Appellate Dept. of Superior Court"):
   _____

   b. Result: _____    c. Date of decision: _____

   d. Case number or citation of opinion, if known: _____

   e. Issues raised:  (1) _____

             (2) _____

             (3) _____

   f. Were you represented by counsel on appeal? ☐ Yes. ☐ No. If yes, state the attorney's name and address, if known:
   _____


9. Did you seek review in the California Supreme Court? ☐ Yes. ☒ No.   If yes, give the following information:

   a. Result: _____    b. Date of decision: _____

   c. Case number or citation of opinion, if known: _____

   d. Issues raised:  (1) _____

             (2) _____

             (3) _____

10. If your petition makes a claim regarding your conviction, sentence, or commitment that you or your attorney did not make on appeal, explain why the claim was not made on appeal:
_____
_____

11. Administrative Review:
   a. If your petition concerns conditions of confinement or other claims for which there are administrative remedies, failure to exhaust administrative remedies may result in the denial of your petition, even if it is otherwise meritorious. (See *In re Muszalski* (1975) 52 Cal.App.3d 500 [125 Cal.Rptr. 286].) Explain what administrative review you sought or explain why you did not seek such review:
                                               NA
_____
_____
_____
_____
_____
_____
_____
_____

   b. Did you seek the highest level of administrative review available? ☐ Yes. ☒ No.
   *Attach documents that show you have exhausted your administrative remedies.*

I
ARGUMENT

The board violates equal protection guarantees pursuant to
the due process clauses of both California and Federal Constitu-
tion as pretaining to petitioner as follows:

  1.)  California parole scheme creates a liberty interest;

  2)  Board fails to adhere to legislates intent of incorpor-
     ated by cross reference statutes;

  3)  Board fails to adhere to mandatory language of regulation
     Sections 2280-2291, tri-paritiate matrix maximum terms
     establishing violation of federal constitution 6th amend

  4)  Register 81 No. 37, filed 9/8/81, is not a mandatory sec
     tion of general guidelines as this curtails a combina-
     tion of three different intents by the (BPT) regulation
     management division to offer guidelines for murder of
     an initiative without voters ratification pursuant to
     Cal. Const. Art. 10(c).

II
ARGUMENT

The board uses 3041 exception to recharacterize petitioners
crime: The decisions are arbitray and capricious, violating equal
protection and due process rights: The board  violates statutory
intent and regulation of incorporation by incorporated by cross
reference statutes:

  1)  The board fails to provide release pursuant to mandatory
     language of P.C. 3000(b)(1);

  2)  The board fails to comply with the "new information" or
     the "preponderance of evidence" standard;

  3)  The board mis-applies the "some evidence" standard;

  4)  The board fails to follow the legislates intent of man-
     datory uniformity/porporationality of punishment pursu-
     ant to the determinate Sentencing Laws scheme;

  5)  The board violates equal protection and "substantive"

due process by overstepping their jurisdiction;

6) The board violates Federal Constitution 6th Amendment by exceeding regulation that establishes a maximum.

7) The board vandalises statutory schemes of the misdemeanors intent by recharacterizing them and classifying them as felony's, overstepping jurisdiction;

8) The board uses the exception to parole rather than the norm, with a <u>low level review</u> of "some evidence" standard thats for a court to review;

9) The board violates Federal Constitution 14th Amendment, by attaching involuntary subjection to psychiatric's, to establish a behavior modification;

10) The board violates equal protection of P.C. 5011(b) by requiring self incrimination of a showing of remores;

11) The board creates a new statute thats provides a guarantee illegals from returning to the United States;

12) The board and or D.A. fabricates reports of Probation Officer in recharacterizing the case, creating false information not found by tier of fact by jury or trial court.

III<br>ARGUMENT

The board violates intent of legislates Tri-pariatiate matrix to trigger the exception P.C. 3041(b) to deny (MERPD) actual "A" dates of release to parole, pursuant to suprevision of probation officers 3000(a), of uniformity/porporationality of punishment pursuant to the Determinate Sentencing Laws scheme as follows:

1) The board abused term of regulations pursuant to the meaning of statutes of incorparated by cross reference doctrine and theory;

2) The board violates the Doctrine Of Prison And Campus Context, as 3041(a)(b), vice of vaguness is concealed;

3) The board violates the penological plan of discreationary retention that establish tri-pariatiate matrix terms;

4) The board has recharacterized the crime from kidnap with

ii

no bodily injury to murder, denying on 5 grounds of P.C.
190.2 and Rules of Court 421 aggravating circumstances
thats not found by jury or Trial judge;

5)   The board violates a protected liberty interest in re-
     lease to parole established by case law of the Supreme
     Court, where language of a statute or regulation make
     or uses mandatory commands in statutes or regulations;

6)   The board fails to follow contemporaneous opinions of
     case law and of the A.G. 60 Ops. Att. Gen. 143, where,
     regulations of section 2000 et seq.,., 2200 et seq.,.,
     2300 et seq.,. with 2281-2291 were not established by
     (APA) or (OAL) as administrative guidelines but rather
     as the legislates intent of the Determinate Sentencing
     laws term setting scheme for all "to life" and "life pri
     soner/straight life sentences of Both ISL and DSL inmate

7)   The board violates procedural due process, as one of
     "equity" requiring a balancing and assessment of facts
     that does not run contrary to uniformity and porportion-
     ality of the rehabilitative DSL's goals.

                              IV
                          ARGUMENT

     The board violates penal code 3041 objective, evades difficult
and unpleasuant situation of established Federal Due Process as
to rights of parole by the Dannenberg court application and its
interpretation of 3041 vague meaning as follows:

1)   The board violates California parole scheme, violating
     regualtion  that establish maximum terms, that establish
     a federal equal protection due process right not to be
     placed twice in jeapordy of finality of maximum term;

2)   The state courts interpretation is contray to federal
     due process rights, as statute create a liberty interest
     for certain crimes as committed under the DSL scheme;

3)   The interpretation of Sass & Dannenberg effectively has
     destroyed 25 years reliance on plain language, to erase

                             iii

due process rights, disposing of porporationality for
murder <u>only</u>, to ignore jury verdicts, facts admitted to,
violating case law intent of "some evidence" standard;

4) The Dannenberg decision renders suitability factors as
vague, violating Judicial Council sentencing rules and
statutory intent of cross reference as established by
60 Ops. Att. Gen 143.

5) The Dannenberg line of cases, are used to hide and evade
that these sentences were not drafted as part of the DSL
nor ISL scheme and that no provisions or mandates exist
in which to govern or moderate said terms under prior
law or the exception 3041, violating a cognizable liber-
ty interest pursuant to the federal constitution, where
3041 language is virtually identical to Greenholtz & Allen

V

ARGUMENT

The Sass & Dannenberg decision is clearly contrary to estab-
lished United States Supreme Court law; violating a protected lib
erty interest to release to parole pursuant to legislates incor-
porated by cross reference statutory scheme of the Determinate
Sentencing Law as follows:

1) The some evidence standard is contray to established
Supreme Court Law as adopted in state court fundamental
low level evidentiary review;

2) The some evidence has no standard of tier of facts as en-
unciated in statutory language of incorporated statutes;

3) The Dannenberg decision is contrary to contemporaneous
case law and 60 Ops. Att. Gen. 143, established by regu-
lations matrix;

4) The Dannenberg eliminates the standard of comparative term
by recharacterizing the terms without a preponderance
of evidence;

5) The Dannenberg & Rosenkrantz decisions allow the crime to
be used to be treated as a bar to release, irrespective

iv

of risk or danger, violating legislative intent of penal code statutes. i.e. 1170.1, 3041 & 3000 et seq.,.

6) The Rosenkrantz and Dannenberg violates equal protect and due process in permitting recharacterizing the crime to a greater degree beyond presumptive ranges;

7) The Dannenberg, Rosenkrantz decisions has allowed the board to violate incorporation of incorporated by cross reference statutes and to combine the six different type of sentences and their scheme into one by borrowing a little from this and to take a little from that, in an attempt to make a coherent parole release scheme, violate mandatory statutory scheme;

8) The state court evade consideration of federal issues of rights by an obvious subterfuge to evade interpretation of statutes;

9) The boards discreation violates the presumption of Evid. Code § 605, that implements public policy, in eliminating uniformity and porportionality of uniformity of punishment in adopting certain procedures for hearings;

10) The legislates intent of statutory enactments limit the board to what procedure they use in the fixing of maximum release date pursuant mandatory language

11) The "some evidence" standard was never meant to be used for review by the Board as a denial source of parole as established by United States Supreme Court case law, as the preponderance evidence standard and Evid. Code § 115

B.  The Dannenberg decision is contrary to clearly established Supreme Court Law as it relies on vague language as follows:

1) The Dannenberg decision has allowed vague meanings, where men of common intelligence guess at the meaning, and invite arbitray & discriminatory enforcement;

2) The board recharacterizes every crime to a greater degree and uses rote wording using the crime continues as the reason of denial;

3) The above case line Dannenberg, creates a constructive change, as such, a change is a constructive amendment to

crime charged to establish a greater degree of the crime;

4) The decisions have taken statutory terms of three possi-
ble terms outside the matrix; As these finding are not
made by jury or judges violating the due process of Ap-
pendi & Blakely, as petitioner had a jury trial on aggra-
vating circumstances;

5) As noted before Sass, Dannenberg & Rosenkrantz line of
cases were not drafted as part of the ISL nor the DSL and
this line of cases would not be moderated or governed pur
suant to the DSL's statutory scheme, making kidnap outside
the Dannenberg and Sass line of cases, violating equal
protection and due process of federal constitution;

6) The Dannenberg decisions has allowed violation to occur
every time the Board, D.A., A.G. or Governor makes find-
ing about the crime being "exceptionally callous", or "ex
ceptionally heinous, atrocious and cruel", or "dispassion
ate and calculated", or "trivial or insignificant" as
these circumstances are found by jury or sentencing judge
at sentence, in violation of jurisdiction

7) California statutory scheme for release to parole creates
a presumption of release and establishes a liberty inter-
est by mandatory language of penal codes and regulations
that establish tri-paritiate terms within the matrix.

vi

TABLE OF AUTHORTIES

| CASES | PAGES |
|---|---|
| Perveler v. Estelle (9th Cir. 1992) 974 F.2d 1132, 1134 | 2,12,27 |
| Moody v. Dagget (1976) 429 U.S. 78, 50 L.Ed. 326, 97 S.Ct. 274 | 2,27 |
| U.S. v. Dexter (10th Cir. 1998) 143 F.3d 577 | 3 |
| Schweiker v. McClure 456 U.S. 188, 195, 102 S.Ct. 1665 (1982) | 3 |
| O'Bremski v. Maas (9th Cir. 1990) 915 F.2d 418, 422 | 3 |
| Greenholtz v. inmates of Neb. penal & Corr. Comp. (1979) 442 U.S1 | passima |
| Meachum v. Fano 427 U.S. 458, 101 S.Ct. 2460 | 3 |
| Board of Allen (1987) 482 U.S. 369, 107 S.Ct. 2415 | passima |
| Stanworth 33 C.3d 182 | passima |
| Stoneham v. Rushen (1982) 137 C.A. 3d 729, 188 C.R. 130 | 3,11 |
| Norman G. Morrall (2002) 102 C.A. 4th 280 | 4 |
| United States v. Booker (2004) U.S. App. Lexis 14223 (7th Cir. 7/9/04). | 5 |
| Powell 45 C.3d 895 (1985) | 5,20 |
| Biggs v. Terhune (2003, 9th Cir.) 334 F.3d 910 | 5,7,12,27 |
| Canterino v. Wilson 546 F. Supp. 174, 208-09 (W.D.Ky. 1982) | 6 |
| Gain 10 Cal. 4th 1, 892 P.2d 1224, 40 C.R.2d 481 (1985) | 6 |
| Blany (1947) 30 C.2d 643, 184 P.2d 892 | 9 |
| Saad (1951) 105 C.A.2d Supp. 851, 234 P.2d 785 | 9 |
| Martin (1986) 42 C.3d 437, 299 C.R. 131, 722 P.2d 785 | 9 |
| People v. Jefferson 21 Cal. 4th 86 | 9 |
| Montoya v. United States Parole Commission (10th Cir 1990) 908 F.2d 635 | 9 |
| Monore v. Tripon (11th Cir. 1991) 932 F.2d 1437, 1439-41 | 10 |
| McQuillion I, 306 F.3d 902 | passima |
| American Friends Service Committee v. Procunier (1973) 33 C.A.3d 252, 109 C.R. 22 | 11 |
| Sass v. California Bd. of Prison Terms 376 F. Supp.2d 975 (2005) | 12-28 |
| Ramirez (2001) 94 C.A.4th 549 | 12-28 |
| Rosencrantz (2002) 29 C.4th 616 | 12-28 |
| Dannenberg (2005) 34 C.4th 1061 | 12-28 |
| Jeanice D. (1980) 28 C.3d 210 | 12-28 |
| Schengrath (1967) 66 C.2d 295, 57 C.R. 600, 425 P.2d 200 | 13 |
| People v. Rodriguez (1975) 14 C.3d 639, 122 C.R. 552 | 14 |

TABLE OF AUTHORITIES CONTINUED

| CASES | PAGES |
|---|---|
| People v. Lynch (1972) 8 C.3d 410 | 14 |
| People v. Duarte 143 C. A. 3d 943 | 14 |
| People v. Seabock 140 C.A. 3d 29 | 14 |
| Consolidated Edison Co. of New York v. NLRB 305 U.S. 197 (1939) | 14 |
| Chrysler Corp. v. U.S. Environmental Protection Agency C.A. 631 F.2d 865, 890 | 14 |
| Mullaney v. Wilbur 421 U.S. 684, 691 (19750 | 14 |
| Wisconsin v. Mitchell 508 U.S. 476, 484 | 15,18 |
| Apprendi v. New Jersey (2000) 530 U.S. 466 | 17,24,25 |
| Blakely v. Washington (2004) 542 U.S. 296 | 17,24,25 |
| Peltier v. Wright 15 F.3d 860 | 18 |
| Evitts v. Lucy (1985) 469 U.S. 387, 393 | 19 |
| Griffin v. Illinois (1956) 351 U.S. 12, 20 | 19 |
| In re Demond (1985) 165 C.A.3d 932, 211 C.R. 680 | 19 |
| People v. McDowell (1988) 46 C.3d 551 | 20 |
| People v. Fudge (1994) 7 Cal. 4th 1117 | 20 |
| People v. Bean (1988) 46 C.3d 919 | 20 |
| United States v. Doremas (9th Cir. 1989) 888 F.2d 630, 634 | 23 |
| Schwartzmiller v. Gardner (9th Cir. 1989) 752 F.2d 1341, 1346 | 23 |
| Supreior Court of Santa Clara v. Engert (1982) 31 C.3d 797,805 | 23 |
| Godfrey v. State of Georgia (1980) 446 U.S. 420 | 24 |
| Shell v. Mississippi (1990) 486 U.S. 1, 3 | 24 |
| Jones v. Smith (9th Cir. 2001) 231 F.3d 1227, 1232-33 | 24 |
| Stirone v. United States 361 U.S. 212, 218 (1960) | 24 |
| People v. Black 35 C. 4th 1238 (2005) | 26 |
| Kansas v. Crane No. 00957, 2002 DJDAR | 27 |
| Bergen v. Spaulding (9th Cir. 1989) 881 F.2d 719, 721 | 27 |
| Powell v. Gomez (9th Cir. 1994) 33 F.3d 39, 40 | 27 |

OTHER AUTHORITIES

| | |
|---|---|
| 13 Stanf. L. Rev. 341 | 9 |
| 50 Cal. L. Rev. 651 | 9 |
| 26 Stanf. L. Rev. 855 | 9 |
| 60 Ops. Att. Gen. 143 | 11,13,16,17,19 |
| Prop. 7, 1978 | passima |

TABLE OF AUTHORITIES CONTINUED

| PENAL CODES | PAGES |
|---|---|
| 17(b)(3) | 5 |
| Prop. 7, 190 | passima |
| Prop. 7, 190.2 | 9 |
| 209(a)(b) | passima |
| 1168(a)(b) | 1 |
| 1170(a)(1)(b)(2) | 14,16,17,18 |
| 1170.1 | 14,16,17,18 |
| 1170.2(a)(b) | 14,16,18 |
| 2931 | 5 |
| 2932 | 5 |
| 3000(a)(b)(1) | 4,7,10 |
| 3041(a)(b) | passima |
| 3041.5 | 7,18,19 |
| 3041.7 | 19 |
| 3046 | 1 |
| 3050-3065 | 22 |
| 5011(b) | 6 |
| 12022(b) | 1 |

| DIVISON II, TITLE 15 | PAGES |
|---|---|
| 2280 | 4 |
| 2281(a) | 4,20,23 |
| 2282(c) | 3,13,25,26 |
| 2283(c) | 3,20,23 |
| 2402(c) | 3,20,23 |
| 2403(c) | 3 |
| 2450 | 21 |
| 3000 | 22 |
| 3290 | 21 |
| 3320 | 21 |
| 3375.2(7)(a) | 6 |

| | |
|---|---|
| UNITED STATES CONSTITUTION 5th, 6th, 8th and 14th AMENDMENTS. | passima |
| CAL. CONST. ART. 2 § 10(c) | 16 |
| EVIDENCE CODE § 115 & 605 | 19, 21, 22 |

INTRODUCTION

1.    Petitioner is in legal custody of, Warden A.P. Kane, Soledad State Prison,

2.    P.O. Box 689, CTF Central, Soledad, California. 93960-0689.

3.    On Febuary 2, 2005, Elkin Gomez, petitioner attended his sixth BPT (here-

4.    after Board) hearing. Petitioner contends said hearing was furtile, due to a

5.    "No" parole policy. The Board violates equal protection of the "substantial"

6.    due process of Both California and the Federal Constitution. As the Board has

7.    recharacteried petitioners 209 kidnap, "straight life sentence" as a "life

8.    without" sentence. Thus, the Board violates the federal constitution of the

9.    sixth amendment, as petitioner sentence has exceeded the regulations maximum

10.    tri-paritate matrixs.

FACTS/BACKGROUND

11.    On 10/25/1988, the D.A. of Los Angeles County, Case No. A961451, Ex. A1-7

12.    alleged Count one (1) violation of P.C. 209(a), kidnap of William McKus; Count

13.    two (2) being armed within the meaning of P.C. 12022(b), for the purpose of

14.    extortion of money for encurring drug debts.

15.    Petitioner was found guilty Ex. A, in December of 1989, and was sentenced

16.    on 1/16/1990, to a term prescribed by P.C. 209(a), 1168(b), 'straight life sen-

17.    tence" with possibility of parole pursuant to P.C. 3046 seven (7) year min-

18.    imum under the DSL's, uniform/porporationality of punishment scheme.

PRELIMINARY STATEMENT

19.    Petitioner was found guilty of kidnap P.C. 209, with a weapon charge 12022

20.    i.e. stayed. The Board violates, the term prescribed by law. In recharacter-

21.    ized the offense, exceeds bounds of jurisdiction, using the deportation act as

22.    an inexcusable i.e. unforgivable/unpardonable act of entry into the U.S. il-

23.    legally, exceeding matrix maximum of porporationality/punishment of uniform

24.    sentences. The Board violates the "new information" standard and the "prepon-

25.    derance  of evidence' standard established by the legislates. The Board vio-

1

1 lates the "some evidence" standard as found in (1985) contemporaneous case of

2 law. Where the Board supposedly acts in "good faith", as facts establish "good

3 cause" for the Boards action. As here, the Board exceeds the matrix's tri-par-

4 itiate terms of legislates intent for regulation of statutes of incorporation

5 incorporated by cross reference harmonized and in pari materia with other sta-

6 tutes. Thus, the Board violates protected liberty interest within the bounds

7 of the due process clauses of the federal constitution 5th & 14th, and the me-

8 aning of the 6th amendment as regulation establish a maximum without gain time

9 /work time credits. Petitioner is entitled to be deported without being penal-

10 ized for it.

11                                     I
                                 AGRUMENT
12      THE (BPT) VIOLATES PETITIONER'S EQUAL PROTECTION GUARANTEES UNDER
        THE DUE PROCESS CLAUSES OF BOTH CALIFORNIA AND THE FEDERAL CONST-
13      ITUTION OF THE 5TH AND 14TH: CALIFORNIA PAROLE SCHEME CREATES  A
        "LIBERTY" INTEREST: PAROLE STATUTORY LANGUAGE IS "UNAMBIGIOUS" IN
14      MEANING: (BPT) FAILURE TO ADHERE TO LEGISLATURE INTENT OF INCORP-
        ORATED-BY-CROSS-REFERENCE OF PAROLE STATUTES THATS HARMONIZED AND
15      IN PARI MATERIA WITH OTHER STATUTES: WITH THE IMPLEMENTATION   OF
        DIVISION II, TITLE 15 REGULATIONS.
16

17      The Board Ex. "C" violates petitioners equal protection under the due pro-

18 cess clause.

19      As petitioner was sentenced to a "straight life sentence" with possibility

20 of parole pursuant to P.C. 209(b). The parole scheme creates a liberty inter-

21 est. Perveler v. Estelle, In re (9th Cir. 1992) 974 F.2d 1132, 1134; Moody v.

22 429 U.S. 78, 50 L.Ed.2d 236, 97 S.Ct. 274 (1976); with some new "information"

23 as the factual basis regarding guidelines regulations of a mandatory parole

24 scheme created by incorporated by cross reference harmonized statutes in pari

25 materia with other statutes of incorporation. Phifer v. Clark, In re, 115 F.3d

26 496 (7th Cir. 1997); Misasi v. U.S. Parole Commission 835 F.2d 754 (10th Cir.

27 1989).

28      The Boards action has deprived Petitioner of his liberty, U.S. v. Deter,

In re, 143 F.3d 577 (10th Cir. 1998); denying equal protection under the procedural due process clause of the 5th and 14 th amendment. Schweiker v. McClure In re, 456 U.S. 188, 195, 102 S.Ct. 1665 (1982). As the Boards record is a systematic denial Ex. "C" decision compared to Ex. "D" as a 'word' for 'word' and 'reason' for 'reason' factor without new "information" establishing a presumptive denial policy. As the recited reason are almost verbatim, implying a pre-determined decision of denial. O'Bremski v. Maas, In re 915 F.2d 418, 422 (9th Cir. 1990). Where, Greenholtz v. Inmates of Neb. Penal & Corr. Comp. In re (1979) 442 U.S. 1 at p. 7; established precedents, whereby state prisoners shall have a constitutionally protected equal protection and due process protection at a parole hearing when: a state parole statute, or regulation contain a specific intent. Citing, Meachum v. Fano, 427 U.S. 458, 466-67, 101 S. Ct. 2460.

Thus, the Supreme Court, held no difference in mandatory language comprised of "shall" and "unless" to "trigger" and create a protected liberty interest within a statute or regulation. Board of Allen, In re, (1987) 482 U.S. 369 373, 107 S.Ct. 2415, 96 L.Ed.2d 303. Thus, the state Supreme Court, used the word "IS" as mandatory when considering the DSL's enacted matrix's. Stanworth , In re 33 C.3d 182 at p. 184 (1983). Where, the DSL's "guidelines" "were Not" internal discreation..."But"...rather reflicts the Legislates intent of statutes "IS" provided in regulations. Stoneham v. Rushen, In re (1982) 137 C.A. 3d 729, 735-737, 188 C.R. 130; holding the new regulations had to be enacted under the APA. As the term range for Kidnap under the system "IS" 8 to 17 years. Stanworth, In re 33 C.3d at p. 184 (1983). Thus, the Board by the pre-established criteria of Division II, tit. 15, regulations §§ 2282(c) and 2283 (c) are legislates mandatory intent for kidnap pursuant to the DSL; As In re, Register 81 No. 37, filed 9/8/1981, sections 2402(c) and 2403(c) are only " general guidelines" enacted pursuant to Prop. 7, murder scheme without being

1  ratified by the voters, establishing the Board with "NO" authority for murder.

2  Thus, section 2280 et seq., has established a protected liberty interest pur-

3  suant to incorporated harmonized pari materia statutes and regulations by leg-

4  islates intent of the DSL and the APA of 1976.

II

ARGUMENT

THE BOARD USED 3041(B) THE EXCEPTION TO RECHARACTERIZE THE
CRIME: THE DECISION  WAS ARBITARY AND CAPRICIOUS, INDIRECT
VIOLATION  OF  FEDERAL  EQUAL  PROTECTION AND  DUE PROCESS
RIGHTS: THE BOARD VIOLATES STATUTE STATUTORY INTENT OF IN-
CORPORATION OF INCORPORATED BY CROSS REFERENCE HARMONIZED
IN PARI MATERIA WITH OTHER STATUTES AND REGULATIONS.

10  Petitioner's minimum eligible release date was 11/21/95; On 2/2/2005,

11  Elkin Gomez Ex. "C" was provided his sixth subsequent parole consideration

12  hearing. Where parole is the rule rather than the exception. As all crimes de-

13  monstrate the potential risk to society safety, yet parole is mandatory for

14  felons. In re, P.C. 3000(b)(1).

15  The Boards hearing was erroneous finding, as petitioner Ex."E" presents no

16  current risk of danger to the public. Where the Boards regulations, § 2281(a)

17  establishes a release date be set unless there is a risk P.C. 3041(b) to the

18  public. As here, the D.A. nor the Board provided any "New Information" nor a

19  "preponderance" of evidence petitioner is a risk or danger to the public. Thus

20  the Board speaks in meaningless generalities of petitioners traits, evading

21  the intent of 3041.5. As there is No "preponderance" of evidence the crime was

22  "particularly egregious, callous, cruel, or disregard for human suffering" to

23  justify the exception. Norman G Morrall, In re (2002) 102 C.A. 4th 280; As pet

24  itioner crime falls squarely within the proporationality matrix, as the maxi-

25  mum "IS" 17 years and the mitigating circumstances of no bodily injury. Thus,

26  petitioner has served 16 years, plus 2 years and 8 months post-conviction time

27  In which, petitioner now exceeds the matrix maximum of regualtions violating

28  the federal constitution of the 6th amendment. United States v. Booker, 2004

4

1  U.S. App. Lexis 14223 (7th Cir. 7/9/04). Thus, there is no **"New Information"**

2  pursuant to **Ex. "B & E"**, that petitioner is a current risk to society, or be-

3  ing supported by a **"preponderance"** of evidence in the record. Powell, In re,

4  45 C.3d 895 (1985). As the Board shall normally set release dates. Stanworth,

5  In re 33 C.3d pp. 184, 186, 187; In re, 3041(a), 1170(b)(2), 1170.2(b). Since

6  the Board continues to recharacterize the crime in denying release to parole,

7  uses a low level **"some evidence standard"**, which, could apply if P.C. 2931 &

8  2932 with tit. 15 regulations were to provide no standard of review for peti-

9  tioner two 115's. Thus, the Board not only violates Federal Case Law, but the

10  inherent equal protection of the due process of the federal constitution. As

11  here, there is no occurrance of violance in prison.

12      The Board fails to measure petitioner offense with offenses of the same

13  gravity. Which, is the exception rather than the norm, violating petitioners

14  liberty interest by solely relying on the commitment offense, prior history,

15  and recharacterizing his false imprisonment conviction as kidnap, and asking

16  petitioner to guarantee **"how"** he will not return to the United States, because

17  of easy money to justify findings of unsuitability. Biggs v. Terhune, In re

18  (2003, 9th Cir.) 334 F.3d 910.

19      The Board stated **Ex. "C"** HT 65: the offense was carried out in an extreme

20  callous & calculated manner, where others were targeted for drug collection,

21  with full knowledge, and an extremely trivial motive for the offense. That pet

22  itioner has an escaluting criminal conduct, failed from society's previous at-

23  tempts to correct criminal conduct, and a prior term of 44 months.

24      Thus, the Board has vandalisied the once declared P.C. 17(b)(3), misdemea-

25  nors as felonies, violating the equal protection & the substantial due process

26  of the federal constitution, by assumming judicial role not a quasi-role of

27  jurisdiction. Thus, the above does not comply with the "new information" stan-

28  dard or comply with the issues of the "preponderance" of evidence, as the

1  Board has not acted in "good faith", when they recharacterize the crime to es-

2  tablish 'good cause" for denial of release.  Thus, the Board has violated the

3  federal constitution of the 14th amendment, by abused of their authority, that

4  is not within the Boards jurisdiction.

5      The Board, Ex. "C" HT 67:21-27;  notes the psychiatric/psychological re-

6  port synopsis Ex. "E" at pp. 10-11, as positive. Thus, the Board violates the

7  federal constitution 14th amendment, as the stigm attaches an involuntary sub-

8  jection to psychiatric's that constitutes a deprivation of liberty requiring

9  due process. As this has subjected petitioner to a behavior modification with-

10  out a showing of individual need. Canterino v. Wilson, In re 546 F. Supp. 174,

11  208-209 (W.D. Ky. 1982).  Just as here, remorse, the Board violates the due

12  process of the 14th amendment, as the D.A. & Board is not premitted to argue

13  that petitioner fails to confess guilt to, or show a lack of remores to cope

14  with stress, gain an understanding of the crime. As here, the Board & D.A. has

15  full knowledge of being directly in violation of P.C. 5011(b). Where, Gain, In

16  re 10 Cal. 4th 1, 892 P.2d 1224, 40 C.R.2d 481 (1985), emphasized "mere fail-

17  ure failure to confess guilt or to express remorse at a later date or time is

18  not a circumstance of the crime, and does not fit in any statutory sentence

19  factor and is not an aggravating circumstance to be held against a prisoners

20  release". Additionally, the Board ignores the fact California Department of

21  Correction has deemed petitioner a Model prisoner, with A-1-A Status, and not

22  a threat to society, and the crime is not "particularly egregious" by placing

23  petitioner in a level II prison setting. As here, CCR tit. 15, § 3375.2(7)(A);

24      "An inmate serving any life term shall not be housed in a level II
        facility if any of the following case factors are present: unusual
25      violence, callous, egregious etc, etc... Scott, supra, In re p.892
        Fn. 11. See, Ex. "E".

26

27      The Board violates equal protection within the meaning of the federal con-

28  stitution 14th amendment. Where as here, the Board Ex. "C" HT 68; wants parole

6

1  plans to be specific job offers because petitioner entered the U.S. to make

2  money. As petitioner had been deported before, when he had these same jobs

3  available before leaving his country. Thus, the Board and D.A. violates the

4  equal protection, as they create a statute that does not exist, providing bias

5  decision, that establishes the low level review of "some evidence" for courts

6  to rubber stamp with denied, as this violates federal case law of the "some

7  evidence" standard.

8      The D.A. Ex. "C" HT 56, stated opposition: petitioner & his crime partners

9  are in the role of enforcers for drug cartel, who collect money from drug sel-

10 ler and dealers, who don't pay their debts & whether petitioner was contacted

11 in Columbia to come and do this type of drug dealing of collecting and he is

12 not an interpreter picked off the street. Thus, the D.A. violates petitioner

13 equal protection and his "substantive & substantial" due process rights. As

14 the trial transcripts and Probation report establishes petitioner as only an

15 interpreter with a weapon who showed incentive to act on his own, in which the

16 jury found true. Thus, D.A. has fabricated the Probation Report, recharacter-

17 ized the crime from what he was prosecuted on, creating false information to

18 which establishes "some evidence" for denial of release to parole. As here,

19 this is contrary to preponderance of evidence, and fails to provided new infor

20 mation. The Board has continued using the crime & prior history to justify its

21 denial of release with deportation, by the reliance of an unchanging circum-

22 stances of the crime. That runs contrary to rehabilitative goals of the DSL's

23 P.C. 3000(a), resulting in violation of state and federal equal protection &

24 due process. Biggs, supra, In re 334 F.3d at 917. As above is the same "some

25 evidence" used through out petitioners six (6) Board hearing, there is been no

26 "new information or preponderance" of evidence that the public requires a len-

27 gthier period of incarceration, in relation to other instances of the same

28 offense. In re, 3041(b), 3041.5.

1  Thus, petitioner is within the matrix's, that has exceeded the maximum. As

2  here, the Board has not substantiated the offense as exceptionally heinous or

3  cruel. When, as here, No bodily injury occurred for the Board to apply a com-

4  parative analysis of the offense to other offenses of the same gravity. Thus,

5  the Board continues to use conclusions of facts that are devoid of evident-

6  iary basis, and void of new "information" or of a "preponderance" of evidence

7  As the Board applies a low level so called "some evidence" standard, and the

8  state Courts approve, by recharacterizing all offenses, denying actual parole

9  release violating petitioner liberty interest of the federal constitution.

10  Thus, the Board & A.G. continued use of "some evidence" as an answer to,

11  set up all defense sufficent on its face that presents no real issues implored

12  in "good faith", but on the other hand sets up "No" defense, as the Board re-

13  characterizies the offense, there will always be "some evidence". Just as pri-

14  or conviction of false imprisonment, where, petitioner admits knowledge after

15  the facts its was a drug related kidnap by other. As said victims were held in

16  a resident that petitioner had "sub-leased" to other, even though petitioner

17  had been with said victims in San Francisco, the victim owen statements proved

18  petitioner was not present during or after the said kidnap & that the victims

19  did not have drug dealings with petitioner.

20  As in this case, the Board conclusion is not supported by "new information

21  or the preponderance" of evidence found by the jury. Thus, petitioner has de-

22  monstrated bias, as here, the Board cannot shield there action by the "some

23  evidence" standard of Superindent v. Hill, In re 472 U.S. 455, 86 L.Ed2d 365.

24  III
ARGUMENT
25  THE BOARD VIOLATES INTENT OF TRI-PARITIATE MATRIX
USING MECHANICAL PHRASES, TO TRIGGER P.C. 3041(B)
26  TO DENY (MERPD) "A" DATES OF RELEASE TO PAROLE UN
DER PROPORATIONALITY/UNIFORMITY.
27

28  The Board abused the terms & meaning of Legislates intent of incorporated

8

1   statutes by cross reference doctrine and theory. The Board, uses "rote" mech-
2   anical phrases to trigger 3041(b), to deny Maximum Eligible Release Parole
3   Date under porporationality & uniformity of harmonized pari materia statutes
4   and regulations.  As P.C. 3041(a)(b), is vague, fails to state criteria of,
5   provisions of, and mandates of, term setting. The vice of vagueness is the tre-
6   achery concealed pursuant to the Doctrine Of Prison And Campus Contexts. Ci-
7   ting, 26 Stanf. L. Rev. 855; Blany, In re, (1947) 30 C.2d 643, Id. 656, 184
8   P.2d 892; Saad, In re, (1951) 105 C.A.2d Supp. 851, 234 P.2d 785. Thus, the
9   Board violates the penological plan as discreationary retention In re, 13
10  Stanf. L. Rev. 341; 50 Cal. L. Rev. 651. As the Board subverted the fundamen-
11  tal purpose of 3041, porportionate terms guided by the provisions of uniform-
12  ity 1170(a). Martin, In re (1986) 42 C.3d 437, 442-443, 299 C.R. 131, 722 P.2d
13  785.  As 1170 applies tri-paritiate determinate terms, P.C. 3041were intended
14  to serve the same purpose with tri-paritiate matrix terms, established by reg-
15  ulations within legislates intent of statutes. In re, Stats. (1976) Ch. 1139,
16  § 281 p. 5151; Re-affirmed in Stanworth, supra, the uniform terms called for
17  by 3041(a) as analytically equivalent to determinate sentences of 1170 et seq.
18  ,. Citing, In People v. Jefferson 21 Cal. 4th 86, 95-96.
19      The Board has recharacterized petitioners offense pursuant to criteria of,
20  pursuant to, murder special circumstance 190.2. As the Board has 'messaged'
21  the wording & vallanized the offense, from kidnap to murder to deny release on
22  the grounds of (1) "cruel & callous", (2) "especially egregious" (3) dispass-
23  ionate or calculated", (4) victim valurable" (5) "inexplicable or very trival"
24  Thus, the Board has a two dimension of reliance: (1) the nature of the decison
25  is based on erroneous information. (2) The information is not technical in
26  nature, or a reasonable factor in Boards decision. Thus, the Board has relied
27  on "the factually incorrect" record, and due process has been denied and the
28  decision is invalid. Montoya v. United States Parole Commission (10th Cir.

1  1990) 908 F.2d 635, 639; Monore v. Tripon (11th Cir. 1991) 932 F.2d 1437, 1439

2  -1441; decision denying parole deprives prisoner of due process as it is "par-

3  tially" based on false information as grounds. Thus, the Board has continued

4  to rely on the offense and events of (10/25/1988,) after 18 years. Now the ques-

5  tion relates to why, release to parole hearings are being held? As petitioner

6  has exceeded the matrix's maximum and the Board violates its jurisdictional

7  authority.  As P.C. 3000(a)(1) establishes the intent for public safety is

8  "for the state to provide for suprevison & surveillance of parolees, including

9  the use of revocation, and to provide educational, vocational, family & per-

10  sonal counseling necessary to asist parolee in the transition between impri-

11  sonment and discharge." Thus, rehabilation commisses upon a person return to

12  public life from imprisonment.

13     Thus, petitioner has a federally protected liberty interest in release

14  with parole being served as established by the tri-paritiate determinate terms

15  of the DSL's matrix.

16     The U.S. Supreme Court in Greenholtz v. Inmates of Neb. penal & Corr. Com-

17  plex 442 U.S. 1, 7 (1979), found while there is " no constitutional or inhe-

18  rent right of an inmates to be released unless certain findings are made pur-

19  suant to incorporation of incorporated by cross reference statutes, as such

20  statutory language gives rise to a protected liberty interest in parole. Board

21  of Pardons v. Allen, In re 482 U.S. 369, 376-378 (1987); (Montana's parole

22  statute use the word 'shall' in the mandatory  sense for release of prisoners,

23  except for certain restriction, creates a due process liberty interest in re-

24  lease).  Thus, as certain language is used it gives rise of a liberty interest

25  as prisoner's gain a legitimate expectation in release & this liberty interest

26  cannot be denied without adquate procedural due process protection. Greenholtz

27  v. Allen.

28     The Ninth Circuit's decision in McQuillion I, 306 F.3d at p. 902, is of

1 course binding as 3041 S (b) is the 'substantive' standard which, uses manda-

2 tory language and is virtually identical to Allen and Greenholtz, thereby, cre

3 -ating a protected liberty interest in release. McQuillion I, 306 F.3d at 902.

4    As here, the A.G. at 60 Ops. Att. Gen. 143, has a contemporenuous know-

5 ledge of Section 6, Discharge & Parole, as the opinion of the A.G. recognized,

6 the duty of the Board under 1170.1(b), is to review the sentence of a person

7 committed to prison to determine if a substantial difference exist between the

8 subject sentence & the sentence imposed on other offenders committing the same

9 offense under similar circumstances, (i.e. 3041). To achieve this task the

10 Board sahil comply with 1170.3 Rules of the judicial Council, which, relates

11 to the criteria to be utilized to choose appropriate determine prison terms.

12 Id. 60 Ops. Att. Gen. 143.

13    Thus, following the A.G.'s opinion of 60 Ops. Att. Gen. 143, the state

14 Supreme Court stated; the DSL's guidelines were not internal discreation.."But

15 ".. rather "reflicts" legislates intent of statutes as established in the reg-

16 ulations (i.e. 1975-1978). In which, the Legislature over-ruled the state Su-

17 preme Court decision of American Friends Service Committee v. Procunier (1973)

18 33 C.A.3d 252, 109 C.R. 22; Stoneham v. Rushen, In re (1982) 137 C.A.3d 729,

19 735-37, 188 C.R. 130; holding the new regulations are enacted under the Admin-

20 istrative Procedure Act of 1975. Thus, Stanworth, In re 33 C.3d at p. 184, es-

21 tablished the matrix tri-paritiate periods of incarceration of inmates. Accor-

22 dingly, all 'sentences' pursuant to the DSL's enactment of statutes converted

23 all "to life" pursuant to tri-paritiate penal codes , that 3041 does so by the

24 regulations matrix to give rise of a cognizable liberty interest just as the

25 sentencing scheme of incorporation. As noted, In Biggs v. Terhune 334 F.3d 915

26 916, the liberty interest for Prop. 7's, Ex. "F" is created not upon grant of

27 release or parole date, but upon the incarceration of the inmate. The langu-

28 age of 3041 creates a presumption of release being granted, except, where, de-

1  fined determinations are made. Id. perveler v. Estelle, In re, 974 F.2d 1132,

2  1134 (th Cir. 1992) found state created liberty interest in release to parole.

3  Thus, petitioner kidnap P.C. 209 is squarely under the matrix's pursuant to

4  3041, establishing a federal constitutionally protected liberty interest in

5  release with parole being served, the Board cannot decline release as he has

6  served beyond the matrix maximum and thus, the Board would violate petitioners

7  procedurally due process protection.

8      Furthermore, as court must look to the Boards decision as one of "equity"

9  to require 'careful balancing & assessment of facts considered'. Sass v. Cal-

10  ifornia Bd. of prison terms, In re 376 F. Supp.2d 975 (E.Dist. Cal. 2005) line

11  of cases, and Biggs, supra, at 917, the court found reliance on the future as

12  unchanging factors attributed to the offense, "runs contrary to" (i.e. uniform

13  ity/porportionality of,) the DSL's rehabilitative goals espoused by the prison

14  system resulting in future due process violations. McQuillion I, supra, In re

15  306 F.3d at 902.

16      As here, P.C. 209 kidnap, petitioner has a liberty interest in release to

17  which, parole has been served, and the right to due process, triggers the duty

18  of court review, of the Boards action to recharacterize offense, and their dis

19  creation over suitability decisions is neither unlimited nor immune from jud-

20  icial review. Ramirez, In re (2001) 94 C.A. 4th 549 & Rosenkrantz, In re, 29

21  C.4th 616,658 (2002); The state Supreme Court Dannenberg, In re, 34 C. 4th

22  1061 (2005), disapproved only the portion of Ramirez decision requiring a com-

23  partive, porporationality analysis of the crime pursuant to 3041, with other

24  similar offenses. the Court in Ramirez followed the analysis of Ex. "F" pur-

25  suant to Jeanice D. In re, (1980) 28 C.3d 210 at p. 220; Thus, the question of

26  what the intent to mis-lead is? As the A.G. Ex. "G" has expounded on the

27  point of Sass & Dannenberg, line of cases, as clearly contrary to, the Legis-

28  lature... clearly contemplated intent of the DSL, and the excutive Branch with

1  its broard discreation, In re Schoengrath (1967) 66 C.2d 295, 300, 57 C.R. 600

2  425 P.2d 200 *italics added*;  over ISL's release to parole decision would con-

3  form with factors prescribed by law. In re, 60 Ops. Att. Gen. 143. This, is

4  underscored, as the voters Ex. "F" never considered the Initiative to cover

5  any of the above factors that courts have written into the Board discreation

6  by "some evidence". Thus, instead of a carefully crafted structure in which,

7  Sass & Dannenberg line of case of Prop. 7, being evaluated for release to par-

8  ole are to be denied, Ex. "G" before, even being considered DSL's specific fac-

9  tors, showing unsuitability, using especially dangerous to the public safety.

10      Thus, petitioner 209 kidnap pursuant to the DSL, has an established right

11  to due process of law stemming from his protected liberty interest that is at-

12  tached to release within the 6th Amendment of the federal constitution, as pet

13  itioner has served beyond the matrix's maximum of 17 years, with any and all

14  parole period being served.

15                                   IV
                                ARGUMENT
16  PENAL CODE 3041 OBJECTIVE EVADES A DIFFICULT AND UNPLEASUANT
    SITUATION OF ESTABLISHED FEDERAL DUE PROCESS RIGHTS TO PAR-
17  OLE BY DANNENBERG COURT'S APPLICATION & INTERPRETATION 3041.

18      The parole scheme creates a cognizable liberty interest in parole. Thus,

19  the Board fails to follow the parole scheme violating petitioners sentence of

20  209 kidnap, as he his a federally protected due process right to release. As

21  petitioner has served beyond the regulations matrix maximum § 2282(c).

22      The decision in Dannenberg, purports to interpret 3041, so that the A.G.

23  Ex. "G" "IS" relying on in Sass, that Dannenberg takes petitioner 209 kidnap

24  established right of federal due process protection to release. However, the

25  state Supreme Court made clear, Jeanice D. Supra, In re 28 C.3d at 220, that

26  Prop. 7, cases were not drafted as part of the DSL's P.C. 209 scheme. Thus,

27  the state court made clear "shall normally" is the rule and 3041(b) the excep-

28  tion must be just that, an exception. 29 C. 4th at 683; People v. Rodriquez

                                      13

1 | (1975) 14 C.3d 639, 122 C.R. 552; Lynch (1972) 8 C.3d 410; Stanworth, In re

2 | 33 C.3d 182; Duarte, In re, 143 C.A.3d 943; Seabock, In re 140 C.A.3d 29; As

3 | the Boards authority to make exception for setting release date **Ex. "F"** 'the-

4 | ory sentences', "to life" terms operate to swallow the DSL's 209 kidnap rule

5 | of release to parole as 'normally granted'. Therefore, **Ex. "G"** as interpret-

6 | ated by the A.G. & used by the Board, <u>Dannenberg</u> effectively destroys the in-

7 | tergrity of more than twenty-five (25) years of reliance on plain language, to

8 | effectively erase due process rights created by mandatory language of 3041; by

9 | disposing of porportionality & allowing the A.G. & Board to ignore jury ver-

10 | dicts, facts admitted to, recharacterize conviction to a greater offense. Thus

11 | allowing the A.G. & Board the right to subsequent review, violating the "some

12 | evidence" standard of <u>Hill In re</u>,472 U.S. 455 (1985); Violating the "substan-

13 | tial evidence" thats required for a reviewing court. <u>Consolidated Edison Co.</u>

14 | <u>of New York v. NLRB, In re</u>, 305 U.S. 197 (1939); <u>Chrysler Corp. v. U.S. Envir-</u>

15 | <u>onmental ½Protection Agency</u>, C.A. 631 F.2d 865, 890. Furthermore, the Board &

16 | A.G., applying <u>Dannenberg</u> decision, renders suitability factors to determine

17 | parole eligibility as unconstitutionally vague, it permits the Board to use

18 | facts outside the Judicial Councils 1170.3 sentencing rules and other rules

19 | pursuant to 1170.1, 1170(a)(1)(b)(2) to fit the crime into 3041 exception to,

20 | pursuant to legislates mandates of 1170.2(a)(b), that parole 3041(a) 'shall

21 | normally' be granted. The court holding, in <u>Dannenberg</u> acts as a plan, a act-

22 | ion or devise used to hide the true objective, to evade **Ex's. "F & G"** diffi-

23 | cult and unpleasuant situtation, that prevents any or all inmates from recie-

24 | ving consideration of the cognizable federally protected liberty interest in

25 | release to parole. <u>Mullaney v. Wilbur</u> 421 U.S. 684, 691 (1975). As here, state

26 | courts generally explain state law. However, federal courts are not bound by

27 | state interpretation when the courts decision effectively results a subterfuge

28 | to evade federal issues. Id. 691. Furthermore, the ambiguities of the meaning

1 | of the meaning of statutes does not prevent state or federal courts from for-

2 | ming their own determination for effect, thereby not binding federal to state

3 | court's interpretation. <u>Wisconsin v. Mitchell, In re 508 U.S. 484.</u>

4 | Thus, 3041 is virtually identical to <u>Nabraska</u> statute in <u>Greenholtz</u>, and

5 | the application of <u>Dannenberg</u> to 3041, the court precieved effects, acts to

6 | eliminate due process rights which, existed pursuant to <u>Greenholtz and Allen</u>.

7 |
V
ARGUMENT

8 | THE SASS & DANNENBERG DECISION IS CLEARLY CONTRARY TO
ESTABLISHED SUPREME COURT CASE LAW; VIOLATING A PRO-

9 | TECTED LIBERTY INTEREST TO RELEASE PURSUANT TO LEGIS-
LATES INCORPORATED STATUTE SCHEME OF THE DSL.

10 |

11 | As petitioner was sentenced pursuant to the DSl P.C. 209 Kidnap, with P.C.

12 | 3046 providing a minimum of seven (7) years. The decision of <u>Dannenberg</u> is not

13 | consistent with principles of federal law. However, the due process issue rai-

14 | sed in <u>Dannenberg</u> is actually contrary to federal principles. Thus, the A.G.

15 | Ex. "G" and the state Supreme Court decision <u>Jeanice D. In re 28 C.3d 210 at</u>

16 | <u>p. 220</u>; decision has full knowledge these sentences <u>were not</u> drafted as part

17 | of the ISL's nor DSL's release to parole scheme of 3041. Thus, for federal due

18 | process purpose, <u>Dannenberg</u> <u>cannot</u> be relied on as providing governing prin-

19 | ciples, to effect the statute it contemplates to interpret, as it does so in

20 | violation of state & federal constitutional law.Creating a change in the "sub-

21 | stantial & substantive" due process evading the equal protection  established

22 | by statutes of legislates intent.

23 | A. Some Evidence Standard Is Contrary To Established Supreme Court Law.

24 | As stated, supra, petitioner has an 209 Kidnap pursuant to 3046 has an ex-

25 | pectation of release being granted pursuant to <u>Cal. Code Reg., tit. 15 § 2282</u>

26 | <u>(c)</u>, criteria within the general subject 3041 incorporated statute, as he has

27 | meet all factors within regulations matrix and has exceed the matrix maximum

28 | terms, violating the  federal constitution of the 6th Amendment.

15

1    The Board & state Court has relied on the "some evidence" standard descri-

2  bed in Rosenkrantz, 29 C.4th at 658, and adopted in Dannenberg, supra, is the

3  wrong level of evidentiary review, based on a fundamental mis-understanding in

4  Hill, In re 472 U.S. 445 (1985). As no standard was dictated by regulations in

5  a disciplinary proceeding, due process required the reviewing court to find

6  "some evidence" in the record to support the decision. Thus, when evaluating

7  the judicial review of parole decision of the Board denial, should be, the

8  court adopted, without legal analysis the "some evidence" standard of Hill &

9  Sandin v. Conner.

10    The premise in Hill decision to apply a "some evidence" level of analysis,

11  has no standard of proof or tier of facts, and as such, does not apply in the

12  Board hearing process. Instead, as enunciated in the statutory language of

13  3041, it creates a presumption of suitability for release, which shifts the

14  burden of state to prove the evidence that places inmates within 3041(b) ex-

15  ception by silencing 1170.1 incorporation of 1170(a)(1)(b)(2)'s provisions pur

16  suant to 1170.2 mandates that cross reference to the general sentence statute

17  209; in case of Dannenberg, Ex. "F" 190, being done in violation of Cal. Const

18  Art. 2 § 10(c) without voters ratification.  Thus, as Hill being based on the

19  "some evidence" standard it is inappropriate & has resulted in the erosion

20  of due process rights to release as established by regulations matrix.

21    The Dannenberg decision, the state Supreme Court marred its integarity by

22  dropping the requirement the Board compare, 60 Ops. Att. gen. 143, 1170.1,

23  offense with similar offenses, despite the Board failure for comparative term-

24  inology as mandated in regulations, for comparison of crimes in the same cat-

25  egory against which to compare. Other than changing a few words in a sentence

26  & saying "some evidence" exists.

27    First of all, the "some evidence" rule, if properly applicable, is for a

28  reviewing court to apply, to petitioner kidnapping 209, not the Board. As any

16

1  evidence will support the preponderance conclusion by recharacterizing the sen
2  tence. Secondly, the Board over-rides psychologist Ex. "E", charged with mak-
3  ing determination of inmates past, current or future risk evaluation, as dan-
4  gerous to society if released. The Board is not an arbiter of what constitutes
5  evidence that is "more than minimally necessary to convict". Thus, Rosenkrantz
6  UU, (2000) 80 C.A. 4th 409, 427; and Dannenberg decision, the state court has
7  allowed any crime to be treated as a bar to release, irrespective of whether
8  the inmate currently presents a risk of danger at less than average citizen if
9  released. Thus, violating the Legislates intent of 1170.1 et seq.,, 3041 and
10 3000 et seq., parole scheme.

11     Thirdly, Rosenkrantz & Dannenberg standard permits recharacterizing any
12 offense & to create a greater degree than the conviction called for, by plea,
13 or jury or trial court, in violation of equal protection & due process. In add
14 ition, the Board is allowed to make findings beyond any findings made by tier
15 of facts, taking the case outside the presumptive sentencing range of the mat-
16 rix's uniformity/porportationality terms in violation of  Apprendi-Blakely
17 rule. In re, 530 U.S. 466 (2000); 542 U.S. 296 (2004). Yet the Dannenberg
18 court has ignored these basic concepts, so effectively no meaningful checks
19 exist on the exercise of the Executive branch's Parole Power, as state Courts
20 effectively do no more than "rubber stamp" the decisions under the "no more
21 minimally necessary to convict" test.. Since the standards of Dannenberg has
22 silenced the "substantial evidence" test, the claimed findings of the parole
23 authority would never actually be reviewed anyway. Thus, the Board re-tries
24 each inmate, making findings that are not new "information" and then uses the
25 same evidence as "some evidence". While state courts review blindly this stan-
26 dard with full knowledge of, supra, 60 ops. Att. Gen. 143, with Ex. "F & G",
27 and the decisions of supra, 28 C.3d 210 at p. 220, being violative of due pro-
28 cess Clauses of both California and federal Constitution.

1    As here, the analysis of 3041(a) subject statute, one year before the min-
2  imum eligible date, the Board 'shall" meet with the inmate & "shall normally"
3  set an (a) date of release..(emphases added). Thus, with amendment Ch. 1139
4  (1976), 3041(a) goes on to 3041(c), that pursuant to 1170.2 mandates the rele-
5  ase date 'shall" be set in a manner established by 1170.1 Judicial Councils
6  sentencing rules of uniform terms pursuant to 1170(a)(1)(b)(2) provisions for
7  offenses of similar gravity in respect to their threat to the public. "The
8  only exception 1170.2(b), directs the Board to 3041(b) "shall" set a date un-
9  less it determines that consideration of public safety requires a lengthier
10 period of incarceration for this individual, and therefore, cannot be fixed at
11 this meeting." As noted, the reference to "this meeting" is not a reference to
12 the initial hearing 3041.5. Its a reference to the crime or crimes of an incar
13 cerated inmate & his continued criminal agenda. Thus, 3041 does not create a
14 presumption of release unless inmate falls under the DSL's & ISL's "Life Pri-
15 soners/Straight Life Sentences" with a minimum pursuant to 3046, or the "Inde-
16 terminate Life Sentence" of 1994, "Three Strike Law's" incorporation statutes.
17    As here, the decision of Dannenberg & Rosenkrantz, has twisted the langu-
18 age & 3041 intent, in an attempt to avoid federal interpretation, as Ex. "F"
19 is not drafted as part of Ex. "G" 3041 scheme, violating due process under the
20 synopsis of Greenholtz & Allen. As 3041 being a single statute alone does not
21 by its self create a liberty interest as it is a combination of statutes in
22 pari materia with other statutes.
23    Thus, federal courts are not bound by state court's interpretation of sta-
24 tutes, when it is an obvious subterfuge to evade consideration of federal is-
25 sues of rights. Peltier v. Wright, In re, 15 F.3d 860'; Wisconsin v. Mitchell
26 508 U.S. 476. As the Boards decisions are completely contrary to the liberty
27 interest created by 3041 language & its 3046 sentences. Thus, it could not be
28 hoped, that the state Supreme Court's decision of Dannenberg & Sass line of