# EXHIBIT E

1  Elkins Gomez, F-44776
   P.O. Box 689, F-205L
2  CTF Central
   Soledad State Prison
3  Soledad, Ca. 93960-0689
   Petitioner In pro se.
4

5              CALIFORNIA STATE SUPREME COURT

6                FOR THE STATE OF CALIFORNIA

7  In re,            )   CASE NO. _____
                     )   PETITION FOR REVIEW FROM THE COURT OF APPEALS
8  ELINKS GOMEZ,     )SECOSECOND DISTRICT OF CALIFORNIA CASE NO. (B196037)
                     )   PETITION FOR REVIEW DENIED; (SUPERIOR COURT'S
9  ON HABFAS CORPUS, )   DENIED HABEAS CASE NO. BH003906) AGAINST    THE
                     )   BOARD's DECISION DENYING TO SET A RELEASE  DATE
10 _____  )   TO A PERIOD OF PAROLE
11

12                      PETITION FOR REVIEW

13    To the Honorable Justices Of The California Supreme Court Of California.

14    Petitioner Flkins Gomez, respectfully Petitions for a review pursuant to

15 Cal. Rules Of Court 4.51, from a Denial by  Superior Court, **Review** denied by

16 the Court of Appeals attached Appendix 'A, B, C, & D'.

17                        INTRODUCTION

18    Petitioner in pro se, seeks Appeal Of His PFTITION OF HABFAS CORPUS, ANY

19 OR ALL FXHIBITS  OF DOCKFT # 1, AND APPFNDIX. Petitioner herein set forth the

20 facts & cause for Issuance of Writ Of Appeals for petition Of Habeas Corpus.

21                      STATEMENT OF FACTS

22    On 10/25/1988, the D.A. of Los Angeles County, Case # A961451, alleged

23 Count (1) violation of 209(a) P.C., kidnap of William Mckus; Count (2) being

24 armed 12022(b) P.C., for extortion of money from encurring drug debts.

25    Petitioner was found guilty **Fx. 'A'**, dec. 1989, and sentenced on 1/16/1990

26 to a term prescribed by 209(b), 1168(b) P.C., 'Straight Life Sentence' pursu-

27 ant to 3046 P.C., 7 years minimum under the DSL's uniformity porporationality

28 of punishment scheme.

Elkins Gomez, F-44776
P.O. Box 689, E-205L
CTF Central
Soledad State Prison
Soledad, CA. 93960-0689


CALIFORNIA COURT OF APPEALS

SECOND DISTRICT OF LOS ANGELES

| | | |
|---|---|---|
| Elkins Gomez, | ) | Case No. B196037 |
| | ) | |
| Petitioner, | ) | (Super. Ct. No. BH003906) |
| | ) | (David S. Wesley, Judge) |
| On Habeas Corpus, | ) | |
| | ) | Notice Of Appeal |
| _____ | ) | |

 Notice is hereby given that Petitioner, list above, appeals to California

State Supreme Court, from an Order Denying Review Of Habeas Corpus, from the

Court Of Appeals Second Appellate District Division One,  Where the Superior

Court denied by minutes Order. The Court Of Appeals Denied  on 1/31/07 by an

un-signed Order.  Thus, Petitioner submits his Appeal to the California Sup-

reme Court. As denial Order recieved on 2/8/07, from Court Of Appeals.

 Petitioner is proceeding in Pro Per, Petitioner is representing himself

on this appeal.


Dated: __2/22/07__                                    Respectfully Submitted,

                                                     _____
                                                     Elkins Gomez, In pro se.

## PROOF OF SERVICE BY MAIL
### (C.C.P. 1013(a), 2015.5)

I, Elkins Gomez, declare that I am over 18 years of age and that I am the pro per petitioner to the herein attached cause of action.

My Complete mailing address is: Elkins Gomez E-44776, P.O. Box 689, F-205L CTF Central, Soledad State Prison, Soledad, CA. 93960-0689.

I further declare that I have deposited a true and complete copy(s) of the attached; PETITION FOR REVIEW FROM A DENIAL OF HABEAS CORPUS PETITION CASE NO. B196037 OF CALIFORNIA COURT OF APPEALS SECOND DISTRICT OF LOS ANGELES; SUPER. CT. NO. BH003906, David S. Wesley, Judge, addressed to the following list below, in sealed envelope(s) with postage fully pre-paid, and deposited said document in the U.S. Mail Box (Prison Mail Box) at CTF Central, Soledad State Prison, Soledad, CA. 93960-0689.

```
1-copy    Supreme Court of California
          Clerk  of the Court
          350 McAllister Street
          San Francisco, Ca. 94102-4797

1-copy    Second Appellate District
          300 Spring Street
          Fl. 2, N. Tower (Clerk)
          Los Angeles, Ca. 90013

1-copy    Attorney General
          110 West A Street, Suite 1100
          P.O. Box 85266
          San Diego, Ca. 92186-5266
```

I declare under penalty of perjury that the foregoing is true and correct, excuted this 22 day of Feburary, 2007 at CTF Central, Soledad State prison, Soledad, Ca. 93960-0689.

_____
ELKINS GOMEZ, in pro se

1  Elkins Gomez, F-44776
   P.O. Box 689, F-205L
2  CTF Central
   Soledad State Prison
3  Soledad, Ca. 93960-0689
   Petitioner In pro se.

4

5              CALIFORNIA STATE SUPREME COURT

6                FOR THE STATE OF CALIFORNIA

7  In re,                )    CASE NO. _____
                         )    PETITION FOR REVIEW FROM THE COURT OF APPEALS
8  ELINKS GOMFZ,         )SECOND DISTRICT OF CALIFORNIA CASE NO. (B196037)
                         )    PETITION FOR REVIEW DENIED; (SUPERIOR COURT'S
9  ON HABFAS CORPUS,     )    DENIED HABEAS CASE NO. BH003906) AGAINST   THE
                         )    BOARD's DECISION DENYING TO SET A RELEASE  DATE
10 _____)    TO A PERIOD OF PAROLE

11

12                    PETITION FOR REVIEW

13     To the Honorable Justices Of The California Supreme Court Of California.

14     Petitioner Flkins Gomez, respectfully Petitions for a review pursuant to

15  Cal. Rules Of Court 4.51, from a Denial by  Superior Court, **Review** denied by

16  the Court of Appeals attached Appendix 'A, B, C, & D'.

17                       INTRODUCTION

18     Petitioner in pro se, seeks Appeal Of His PFTITION OF HABFAS CORPUS, ANY

19  OR ALL FXHIBITS  OF DOCKFT # 1, AND APPFNDIX. Petitioner herein set forth the

20  facts & cause for Issuance of Writ Of Appeals for petition Of Habeas Corpus.

21                    STATEMENT OF FACTS

22     On 10/25/1988, the D.A. of Los Angeles County, Case # A961451, alleged

23  Count (1) violation of 209(a) P.C., kidnap of William Mckus; Count (2) being

24  armed 12022(b) P.C., for extortion of money from encurring drug debts.

25     Petitioner was found guilty **Fx. 'A'**, dec. 1989, and sentenced on 1/16/1990

26  to a term prescribed by 209(b), 1168(b) P.C., 'Straight Life Sentence' pursu-

27  ant to 3046 P.C., 7 years minimum under the DSL's uniformity porporationality

28  of punishment scheme.

I

Arguement

The (BPH) Violates Equal Protection & Due Process Of
Both California & Federal Constitution 5Th. & 14Th.:
California Parole Scheme Creates A 'Liberty' Inter-
est: Statutory language Is Unambigious In meaning:
(BPH) Fails To Adhere To Legislatures Intent Of  In-
corporated Harmonized Pari Materia Statutes: And The
Implementation Of Title 15, Regulations; Creating  A
'Class Of One'.

The board Ex. 'C'$\frac{1/}{}$ violates petitioners equal protection under the due

process clauses.

First petitioner contends, the Superior Court Clerk denied PFTITION, with-

out Judge David S. Wesley signature; thus, this is not a denial on the merits,

of any of petitioner claims; The clerk relied only upon the crime of 19 years

ago. And even this does not justify a 10 month review delay in Superior Court

of any of the arguements presented; Thus, the Petition any or all arguments

that was not responded to, must be Deemed true and Correct upon their Merits

as presented. Thus, the Board has no jurisdiction over Petitioner; And Petit-

ioner is entitled to imediate relief and to be deported.

As here, the only inrquiry made, was 19 years ago petitioner committed

this crime; There is no inquiry made regarding conflict. See, In re Darr (1983

143 C.A.3d 500, 191 C.R. 882.                                .

Petitioner alleges, the judicial branch, pursuant to the DSL, has the only

authority to fix minimum & maximum terms, Id. P.C.'s 12, 13 & 1170 et seq.,,

and CDC only authority is to apply the awarded credits 2930-2932 (Note; Petit-

ioner has not included 2933 credits because of enactment date & they are not

applicable here, or even to Prop. 7's 190, as they are legislature intent just

as 3001, 'Life Parole' being added by legislature in 1982 without voters ap-

proval); As here, petitioner was sentenced to a 'Straight life Sentence' of

209(b), and a Parole Scheme that creates a liberty interest, Perverler v. Fs-

telle, In re (9th Cir. 1992) 974 F.2d 1132, 1134; Moody v. Dagget 429 U.S. 78,

Fn. 1: All exhibits are from Docket # 1, Superior Court Writ attached.

2

1   L. Ed.2d 236, 97 S.Ct. 274 (1976); with some new 'information' as the factual

2   basis regarding guideline regulations of a mandatory parole scheme. being cre-

3   ated by incorporated by cross reference of harmonized pari materia statutes

4   with other statutes. Phifer v. Clark 115 F.3d 496 (7th Cir. 1997); Misasi v.

5   U.S. Parole Commission 835 F.2d 754 (10th Cir. 1989).

6       Thus, In re, Oxborrow v. Eikenberry 877 F.3d 1395, 1399 (9th Cir. 1989);

7   states, the difference to the ]state] court is suspended only upon finding the

8   Court's interpretation [of state law] is untenable or has amounted to a subter

9   fuge to avoid federal review of 3041(a) six parts and the 6 distinctly diff-

10  ernt sentences where (4) fall within the comported DSL's release to a period

11  of parole.

12      Petitioner alleges, in Oct. 1979, the Att. Gen., 60 Ops. Att. gen. 143, ex

13  pounded on the 'theory' of (MERPD) & (MEPD) minimum & maximum time of parole

14  as id. 3000(a), 3002. see, now 3000.1. As here, Courts has allowed the Board

15  a plausible & logical way around statutes by General Guideline Rules enacted

16  in (1982) tit. 15 §§ 2400-2411, id. (Monigold (1983) 139 C.A.3d 485, 188 C.R.

17  689 Fn. 1; violating the designers intent of the APA Act of 1976, In re, Stone

18  ham v. Rushen 137 C.A.3d 729, 735-37, 188 C.R.130 91982); As the Board does

19  violate the Complexity of statute intent, by an 'internal' contradiction of

20  General Guideline Rules (id. supra, Monigold, of Dannenberg line of cases) by

21  Judge Made Law. Where, noted in (1986), Att. Gen. Ops. #86-1102, that these

22  P.C. 2930-2932, were established for Determinate Sentences enacted under the

23  1976 DSL Law. Thus, the regulation (Schengrarth, line of ISL cases) are appro-

24  ved in Stanworth) §§ 2281-2291, being implied intent by the legislature for

25  the statutes application of 'Life prisoners' & the 'Straight life Sentences'

26  of the DSL, 3046 minimum of 7 years 'For Life' scheme.

27      Thus, after (5) hearings, the record is a systematic denial without 'new

28  information', using only minimal evidence to convict, establishing nothing but

1   pre-determined decisions of denials; In re, O'Bremski v. Mass. 915 F.2d. 418,

2   422 (9th Cir. 1990); that plainly disregards the 'substantial & substantive'

3   law; Which, has created, define & regulates rights of, obligation of proced-

4   ural law [law of pleading, of evidence, of jurisdiction] denying equal pro-

5   tection, establishing 'in jeapordy of punishment', In re Fain v. Duff C.A. Fla

6   488 F.2d 218, 255; by increasing punishment over regulations violating the 6th

7   Amendment and voiding the 5th, 8th and 14th Amendments, by a No Parole Policy.

8   As here, the range for kidnap is established at 8 to 17 years maximum & mini-

9   mun under the DSL's and its regulations.

10      Thus, the Board by the pre-established criteria of Division II, tit. 15,

11   regulations §§ 2282(c) and 2283(c) are the legislates mandatory intent for

12   kidnap pursuant to the DSL; As in re, Register 81 no. 37, filed 9/8/1981, Sec-

13   tions 2402(c) and 2403(c) are only 'general guidelines' enacted pursuant to

14   Prop. 7, murder scheme without being ratified by the voters, establishing the

15   Board with 'NO' authority for murder.

16      Thus, Section 2280 et seq., has established a protected liberty interest

17   pursuant to incorporated harmonized pari materia statutes and regulations by

18   legislates intent of the DSL and of the APA of 1976.

19      Where, Greenholtz v. Inmates of Neb. Penal & Corr. Complex In re, (1979)

20   442 U.S. 1 at p. 7; where, state prisoners shall have a constitutionally pro-

21   tected equal protection and due process protection at parole hearing when; A

22   state parole statute, or regulation contain a specific intent. Citing , Mea-

23   chum v. Fano 427 U.S. 458, 466-67, 101 S. Ct. 2460. As there, is mandatory

24   language comprised of 'shall' and 'unless' to trigger and create a protected

25   liberty interest within a statute or regualtion . Cf. Board of Allen (1987)

26   482 U.S. 369, 373, 107 S.Ct. 2415, 96 L.Ed.2d 303. Thus, the state Supreme

27   Court, used the word IS as mandatory when considering the DSL's Matrix, of the

28   DSL's guidelines as the intent of statutes.

B. The Board Violated Petitioner's Equal protection Rights Under California Constitution, Art. I, Sec. 7(a), And The Fourteenth Amendment Of The U.S. Constitution; When They Failed To Consider Setting His Term, Failing To Recognize A Primary Term, (Separate And Distinct Treatment Of A 'Class Of One').

For an equal protection claim to proceed petitioner must allege specific facts in support of his claim. A habeas petitioner has the burden of alleging specific facts that show a federal claim is presented, or the petition is subject to dismissal. Jones v. Gomez 66 F.3d 199, 204-05 (9th Cir. 1995). Conclusonary allegations do not warrant habeas relief. Id. at 204.

Petitioner's allegations are not conclusonary, they state a prima facie equal protection claim under both California and Federal Constitutions.

The Fourteenth Amendment Equal protection Clause provides that no state shall deny to any person the 'equal protection of the law.' (See also, California Constitution Art. I § 7(a). The Equal Protection Clause ensures that 'all persons similarly situated should be treated alike.' City of Cleburne v. Celcurne living Center 473 U.S. 432, 439 (1985). To prevail on an equal protection claim, petitioner must initially show that he was treated differently from other similarly situated persons. City of Cleburne, supra, 473 U.S. at p. 439; Fraley v. United States Bureau Of Prisons, 1 F.3d 924, 926 (9th Cir. 1967) (per curiam).

The mere fact that some inmates convicted of second degree murder may have been parole sooner than petitioner does not establish the basis for federal equal protection claim. See, Strum v. California Adult Authority, 395 F.2d 466 448-49 (9th Cir. 1967) (holding that 'the fact that other prisoners have had their sentence reduced, or been granted parole, affords no grounds for complaint by petitioner.')

However, Petitioner's equal protection claims lies elsewhere, other than a mere comparison between an inmate released earlier or paroled sooner than himself, as set forth herein.

### Equal Protection Under 'Class Of One'

1

2    In the case of In re, <u>Mikael Schiold,</u> Court Of Appeals, First Appellate

3    District, Division Five, Case No. A103107. (i.e. this is referenced by cases

4    paragraphs). **Ex. 'N'**

5    Schiold was transferred to the country of Sweden, under the 'Settlement

6    Agreement And Full Release Of All Claims', on habeas corpus. Schiold & Respon-

7    dent entered into an 'agreement' transferring Schiold to Sweden (Paragraph #4)

8    Case No. A103107 was agreed to as 'stayed' pending Schiold transfer. (par-

9    agraph # 5, 6, 7).

10    Explicitly at paragraph # 8: 'Relessor (Schiold) agrees that he will be

11    held in custody by the government of Sweden until January 1, 2007.

12    Page, paragraph 16, establishes that: the agreement & settlement, in order

13    to stay the case, was signed by the Supervising Deputy Attorney general, Anya

14    Binsacca, dated 10/22/2003.

15    Petitioner asserts that the State of California in collusion with the Att-

16    orney general's Office & Board did in fact violate the equal protection clause

17    of the 14th Amendment of the U.S. Constitution, and california Constitution

18    Article I Sec. 7(a), by setting an immutable release date' for Schiold, when

19    his term was set without being found suitable under § 3041(b) and going dir-

20    ectly to 3041(a) infra, pages.

21    The language in paragraph # 8 of page 3, of the settlement expressly state

22    that 'he will be held in custody by the government of Sweden <u>untill</u> January 1,

23    2007'. petitioner asserts that this date, january 1, 2007, establishes a 'term

24    setting' under P.C. 3041(a). (emphasis added.).

25    One foreign national (over other foreign national) (for that matter 'all

26    U.S. Citizen are being treated distinctly different than Schiold because they

27    cannot be transferred) and all similarly situated foreign nationals, thus cre-

28    ating separate & distinct 'classes' of inmates for release criteria.

1    The fact that Schiold was first found to be suitable by the Board is ir-

2    relevant to the claim herein, the Governor then found Schiold to be unsuitable

3    which nullified the Boards findings of suitability. See, Paragraph # 2, 3, 6.

4        The most basic requirement for a claim of violation of equal protection

5    under the 14th Amendment of the U.S. Const. lies on the issue of non-equal

6    treatment of a 'Class', or, a showing of separate and/or distinct difference

7    in treatment, both criminally & civilly, among groups or 'Classes' of persons.

8        The United States Supreme Court has established a 'class of one' in the

9    case of Village v. Willowbrook v. Olech, 528 U.S. 562, 145 L.Ed.2d 1060, 120

10   S.Ct. 1073 (2000) at pp. 1074-75; 'We granted certiorari to determine whether

11   the equal protection clause gives rise to a cause of action on behalf of a

12   'class of one' where the plaintiff did not allege membership in a class or

13   group.' (527 U.S. 1067, 120 S.Ct. 10, 144 L.Ed.2d 841 (1999):

14       'Whether the complaint alleges a class of one or a class of five is of
15       no consequence because we concluded that the number of individuals  in
         a class is immaterial for equal protection analysis.'
16

17       Our cases have recognized successful equal protection claims brought by a

18   'class of one', where the plaintiff alleges that he/she has been intentionally

19   treated differently from others similarly situated & that there is no rational

20   basis for the difference in treatment. See, Sioux City Bridge Co. v. Dakota

21   County 260 U.S. 441, 43 S.Ct. 190, 67 L.Ed. 340 (1923); Allegheny Pitsburgh

22   Coal Co. v. Commission of Webster City 488 U.S. 336, 109 S.Ct. 633; 102 L.Ed2d

23   688 (1989). 'In so doing, we have explained that 'the purpose of the equal

24   protection clause of the 14th Amendment is to secure every person within the

25   State's jurisdiction against intentional & arbitrary discrimination, whether

26   occasioned by express terms of a statute or by its proper excution through

27   duly constituted agents.' See, Sioux City Bridge Co., Supra, at p. 445, 43 S.

28   Ct. 190 (quoting Sunday Lake Iron Co. v. Township of Wakefield, 247 U.S. 350,

1   352, 38 S.Ct. 495 (1918). 'it is clearly established that a state violates the

2   equal protection clause when it treats one set of persons differently from

3   others who are similarly situated.' Wheeler v. Miller 168 F.3d 241, 252 (5th

4   Cir. 1999).

5        Petitioner has established separate treatment, discrimination & the Boards

6   failure to follow United State Supreme Court precedents, thus their failure

7   to se petitioner's term, as was done to Schiold, violates Both California and

8   the United States Equal Protection Clauses.

9                        Failure To Consider Term Setting

10       At no time durning the hearing, nor at any time durning Petitioner's in-

11   carceration (i.e. 19 years) of his (6) hearing, has the Board considered the

12   determinate term that petitioner would serve (As to Prop. 7, 190 murders, this

13   would be an unconstitutional matrix without voters approval) or the time cre-

14   dits he actually served as factors in the suitability equation. The Court of

15   Appeals in In re, Ramirez (12/12/01) 94 Cal. App. 4th 549 at 569 held:

16       'The Board cannot ignore the determinate term prescribed for a commit-
         ment offense when it considers the gravity of the crime as a factor in
17       weighing against a finding of suitability for parole. The Board must
         make its determination 'in a manner that will provide uniform term for
18       offenses of similar gravity & magnitude in respect to their threat  to
         the public.' (P.C. 3041(a). Determining what would be a 'unfform' term
19       for an inmate serving a determinate.life term for offenses that include
         concurrent determinate term is not an exact science. However, the Board
20       should strive to achieve at least a rough balance between the gravity
         of the offense, the time the inmate has served, and the sentences pre-
21       scribed by law for the commitment offense.'

22       At page 570, the Court said:
         'the Board must also consider the lenght of time the inmate has served
23       in relationship to the term prescribed by the legislature for the of-
         fenses under consideration, in order to arrive at a 'uniform' term  as
24       comtemplated by P.C. 3041(a).' (Infra, 3041, six distinct part

25       The gravity of petitioner's offense must be measured not in terms of the

26   life maximum potential, but in  relationship to the determinate term prescribe

27   for such offenses in 15 CCR § 2283(c). The Board must consider the appropriate

28   determinate term that would be set & the time served already. The Board has

1  failed to follow the criteria of 2283(c). (Note*: Although Petitioner asserts
2  that §§ 2400-2411 cannot be applied to him the Board is still in violation by
3  not complying with rules & regulations that they are applying.)

### Failure To Follow Fixed Primary Term

5      Thus, at petitioners 6th hearing the Board has failed to follow statutes
6  and to fix Petitioner's 'primary term' on his 'Straight Life Sentence'. A 'pri
7  mary term' is not in conjuction with or dependent upon a parole hearing. See,
8  In re, Rodriquez (1975) 14 C.3d 639; People v. Scott, (1984) 150 C.A.3d 910,
9  918-919. Petitioner has a right to have his term fixed proportionately to his
10 offense & his calpubility. As Petitioner has now served 19 years, 2 years be-
11 yond matrix maximum for Kidnap-Robbery without any gain time, work time credit
12 pursuant to the specific statutes 2930-2932 and regulations 2283(c).

13     The Los Angeles County Superior Court, on June 26, 2006, In Robert Rose-
14 nkrantz, Case No. BH003529, specifically at page 3, lines 14-15 established
15 that the Board set Rosenkrantz term, (i.e. as in this case their been no term
16 set) 'On 11/9/1999, petitioner was found unsuitable for parole, but the panel
17 set his term. As the date 6/30/01 was set for his release. (emphasis added).

18     Evaluating proportionality does not hinge on the life maximum, but is mea-
19 sured by the time actually served with the sentence deemed appropriate by the
20 Board's sentencing regulations. The Board cannot abdicate this responsibility
21 either by saying it has no authority to fix terms (See, Schiold & Rosekrantz)
22 or by subsuming term-fixed under the parole function. Petitioner is entitled
23 to the fixing of his primary term as an ultimate, immutable release date, un-
24 der equal protection (Class Of One) of the 14th Amendment. See also, In re,
25 Rodriquez (1977) 19 C.3d 221, 230; Rosenkrantz, supra. Ex. 'N', 'M'

26     In McGinnis v. Royster 93 S.Ct. 1055 (1973) the court held: at p. 1057
27 that; 'each inmate has both a 'minimum' parole date, which is the earlier date
28 (i.e. 3046) on which he 'may' be paroled at the discreation of the Board, and

9

1   a 'statutory release' date which is the earliest date he 'must' be paroled by

2   the Board, (Fn. 3), 'he also has a maximum expiration date which is the date

3   of the maximum sentence to which an inmate can be held if he recieves no good

4   time credits at all.' Ex. 'O'.

5       The case refers to an 'indeterminate sentence' & establishes that there

6   are actually (3) date to such a sentence; (1) the minimum parole date; (2) the

7   statutory release date, (3) the maximum expiration date (i.e., death).

8       The Court noted that the DSL repealed the criteria, provisions & mandates

9   of the ISL to govern 'indeterminate sentences'. The court gave guidance (i.e.

10  Rosenkrantz & Dannenberg, line of cases) at footnote 7 (28 C.3d 210) which the

11  BPH still fails to take notice of (i.e., P.C. 3000).

12      Thus, Petitioner re-alleges, Docket # 1, PETITION at pp. 1-4, Claim # 2,

13  at pp. 4-8, the unanswered issues as follows:

14      1)  has petitioner kidnap-extortion sentence passed the Boards jurisdic-
            tion, after (6) hearings in (19) years with no gain time credits be-
15          ing applied, passing CCR tit. 15 matrix maximum of 17 years by 2 yrs?

16      2)  has the Board voided understanding & termonology of statute and regul
            ations, by an abuse of power (i.e. 1990-2003) of a No Parole Policy,
17          by an intent to subterfuge to evade equal protection & due process?

18      3)  has the Board avoided the fact petitioner was found guilty by jury of
            of all facts in aggravation & mitigation  involved in the crime, to
19          which, after 19 years and (6) hearing the Board  has not found any
20          new evidence other than the crime itself?

21      4)  has the Board avoided statutes in pari materia thats harmonized to
            make a complete release to parole scheme of the DSL's 'straight Life
22          Sentences'?

23      5)  has the Board failed to follow Legislatures intent of tri-paritiate
            matrix term setting of primary terms?

24      6) has the Board & Attorney general used general guideline rules of CCR
           tit. 15, SS 2400-2411, of Judge Made Law, (i.e. Dannenberg line of
25          cases) to provide an intent not found within statutes for petitioner
26          'straight life sentence'?

27      Petitioner re-alleges, Docket # 1, PETITION at pp. 4-8, Claim # 2, the

28  unanswered issues as follows:

1)    has the Board failed to provide (MfRPD) release pursuant to mandatory language (MFPD) of P.C. 3000(b)(1);

2)    has the Board failed to comply with, or act within the 'preponderance of evidence standard, or the 'new information' standard;

3)    the Board has failed to follow statutory intent of 'some evidence';

4)    the Board has violated the 'equal protection' 'class of one' and the 'substantive' due process, overstepping jurisdiction;

5)    has the Board  used the misdemeanor intent reclassifying them as fe-loney's?

6)    has the Board used the exception (3041(b), rather than the norm 3041 (a), with a 'low level review' of 'some evidence' standard that for reviewing courts?

7)    has the Board violated the 14th Amendment, by attaching involuntary psychiatric's, establishing a behavior modification without proced-ural due process?

8)    has the Board created a new statute for petitioner to make a guaran-tee, being an illegal that will keep him from returning to the United States?

9)    has the Board & District Attorney created false information in re-characterizing petitioner with new facts not found by the jury or the trial court; And as petitioner did not contest his guilt, and has contended the virson of trial transcrips to be correct how has this become new or some evidence showing lack of remorse or understanding of the offense, has this not violated P.C. 5011(b)?

10)    has the Board violated its own Title 15 § 3375.2(7)(A)?

Petitioner re-alleges, Docket # 1, at pp. 4-8: The Borad violates the un-iformity of punishment, triggers 3041(b) pursuant to provisions of 1170(b)(2), the mandates of 1170.2(b)(2), to invoke 3041(c) that implements 3041(b), by continuing to reclassify petitioner crime, with a low level 'some evidence standard, voiding  legislatures intent of statutes being in pari materia, and creating a 'class of one', by using Judge Made Law, to subterfuge and evades in jeopardy of punishment issues.

Petitioner RE-ALLEGES, PETITION DOCKET # 1, Claim # 3; Violation of feder-ally protected liberty interest pursuant to a 'class of one', and the Board now lacks jurisdiction, as petitioner is beyond matrix's maximum punishment.

1    Petitioners claim # 3 Docket # 1, must be found true and correct, as their

2  is no  argument or decision against it. As the Board has created a subterfuge.

3  to evade the (6) parts of 3041(a) the legislature intent for harmonized pari

4  materia statutes by cross reference doctrine & theory, with 'rote' mechanical

5  phrases to invoke 3041(b) as follows:

6    1)    can the Board continue after (6) hearing to void the Matrix's tri-
         paritiate terms?

7

8    2)    can the Board void statutes by failure to follow incorportated by
         cross reference statutes ?

9    3)    has the Board used 3041(b), without following 3041(a) entire intent?

10   4)    has the Board voided the penological plan of discreationary retention
         established by tri-paritiate matrix's terms?

11

12   5)    has the Board recharacterized kidnap to that of murder, by denying on
         (5) issues found in P.C. 190.2 and Rules of Court 421 aggravating
         circumstances not found by jury or trial court?

13

14   6)    can the Board continue to void the contemporeous case law, statutes,
         regulations and the Attorney general's 60 Ops. Att. Gen. 143, with
         complete disregard of good time, gain time, credits 2930-2932?

15

16   7)    can the Board continued violation of procedural due process, as one
         of 'equity'  be balanced by the Board's decisions running contrary to
         statutes intent be rehabilitative?

17

18   8)    has the Board created sham resons, by using special circumstances to
         deny release after 19 years?

19   9)    has the Board lost jurisdiction by focusing only on status and on the
         crime without any change?

20

21   10)   has the Board the expertise to forecast potential acts of future vio-
         lance on recidivism?

22

23   11)   has the Board ignored statutes concern for transition between impri-
         sonment & discharge, to assist in, supervision & survailance for pub-
         lic safety concerns established in P.C. 3000(a)?

24

25   12)   has the Board ignored 3000, as rehabilitation commisse upon the re-
         turn of an inmate to public life from imprisonment, or is it the con-
         tinued agenda of incarceration voiding statutes?

26

27   13)   has the Board, or state created a 'class of one?

28   14)   has the Legislature not created a determinate sentence pursuant to
         release by regulations, P.C. 3000(a), 3002, 3000.1?

1    Thus, while P.C. 1170 et seq., applies to determine sentences, the current

2  provisions of 3041(a), (6) parts govern parole for inmates serving ISL (i.e.

3  Life Prisoners, 3046), and the DSL's (i.e., as here, Straight Life Sentence)

4  that continued & was added as part of the DSL's intended intent to serve the

5  same purpose as determinate; (Stats. 1976, Ch. 1139 S s 281; 1977, Ch. 165;

6  1979, Ch. 255), is made determinate by the matrix. See, <u>In re Stanworth (1982)</u>

7  <u>33 C.3d 176, 182, 184</u>. The state Supreme Court made clear the 'uniform terms'

8  called for by 3041(a) are analytically equivalent to determinate sentences im-

9  posed under 1170 et seq., <u>People v. Jefferson 21 C. 4th 86, 96</u>.

10    Thus, Petitioner submits 3041(a) (6) parts, as applied to (4) of the (6)

11  'Life Prisoner's' found within the DSL's scheme as follows:

12    1)   3041(a): The **[1] Board of Prison Terms** <u>shall meet</u> with each such

13        inmate **during third year** of incarceration for the purpose of re-
          viewing the inmates file, making recommendations, and **documenting**

14        **activities and conduct pertient to granting or withholding post-**
          **conviction credits;** Bold Id's. as Ch. 255, 1979 amendment **[1]**.

15    2)   3041(a): One year prior to the inmate's minimum eligible parole re-
          lease date **[1] a panel consisting of at least two commissioners of**

16        **the Board of Prison Terms shall again** meet with the inmate and <u>shall</u>
          <u>normally</u> set a parole release date as provided in Sec. 3041.5;

17

18    3)   3041(a): The release date <u>shall</u> be set in a manner that will pro-
          vide uniform terms for offenses of similar gravity & magnitude in

19        respect to their threat to the public;

20    4)   3041(a): That will comply with the sentencing rules the Judicial
          Counsel may issue & any sentencing information relevant to the

21        setting of a <u>Parole Release Date;</u>

22    5)   3041(a): The Board <u>shall</u> establish criteria for the setting of a
          <u>Parole Release Date</u> & in doing so <u>shall</u> consider the number of

23        victims of the crime for which the prisoner was sentenced and
          other factors in mitigation or aggravation of the crime;

24    6)   3041(a): At least one commissioner of the panel <u>shall</u> have been

25        present at the last proceeding meeting, [2] unless it is not fea-
          able to do so where the last proceeding meeting was the initial

26        meeting. Bold Id's. as Ch. 1432 (1982) [2].

27    Thus, the Board has ignored Legislatures intent (i.e. Ex. 'I'); by follow-

28  ing a No Parole Policy from 1990-2003, violating statutes, as declared in §§

1 | 1170(a)(1)(3)(b)(d)(f), 1168(a)(b), 1170.2(b)(2)(d)(g)(h), statutes in pari

2 | materia, dealing with the same subject of 3041(a), but in greater details pur-

3 | suant to subsection (c) invoking 1170 (b)(2), 1170.2(b)(2), 3041(b) serious

4 | offenders scheme. Thus, 3041(a) break down, the legislatures intent was & is

5 | to provide uniformity in comparative context, established by Judicial Councils

6 | Sentencing Rules, for the act between granting of parole, and the fixing of

7 | terms, <u>Clutchette 39 C.A.3d 561, 563, 144 C.R. 509 (1974)</u>; for the analysis of

8 | release, In re to, <u>60 Cal. L. Rev. 1518</u>, and the distinction between probation

9 | & parole, In re to, <u>25 Hasting L. J. 602</u>; To the offense to provide 'some evi-

10 | dence' to deny setting an actual (a) date of release to a period of parole In

11 | re to, <u>14 Pacific L. J. 585</u>.

12 | Thus, Petitioner alleges the Board has violated <u>supra</u>, statutes, that the

13 | Legislature <u>has</u> determined are to control (i.e., as here, petitioners straight

14 | life sentence') (4) of the (6) different and distinct 'Life' sentences pursu-

15 | ant to the DSL's regulatory & statutory scheme, as follows:

16-17 | 1)  The ISL 'to Life' <u>repealed & converted</u> all to 'determinate' pursuant to retroactive provisions of the DSL's amended statutes that has cre-ated (3) <u>tri-paritiate</u> possible terms by statutes.

18-19 | 2)  The ISL 1168 'Life Prisoners' of P.C. 190, (1970-1978) Chapters's 719, P.C. 209(b), 218, 219 (Ex. 'J.').

20-21 | 3)  The DSL's 'Straight Life Sentences', Ch. 316 (1978) Fx. 'K', and the amended 3046 Ex. 'I', with the other 'Life Sentences' of 209(b) 218, 219, Kidnap & Trainwreaking.

22-25 | 4)  The DSL's Indeterminate Life Sentence', i.e. Three Strike Law, enacted in 1994, pursuant to 1170.12, 667.5 & 1192.7; With it's sentences pursuant to Rules of Court & CALJIC Instructions in pari materia with other statutes of the DSL's sentencing pro-cedures; with release to parole pursuant to 1170 et seq., 3040 et. seq., and 3000 et seq., pursuant to legislatures 1170.1 enacted by an initiative measure. see, <u>60 Ops. Att. Gen. 143</u>.

26-28 | 5)  Prop. 7's 'Theory Sentence' 'To Life' 15/25 years Cal. Const. Art. II § 8; As noted the State SUPRFMF COURT (1980) in re to, 28 C.3d 210 at p. 220, found these terms <u>were not</u> drafted as part of the ISL nor the DSL, or that these sentences <u>would be moderated</u> under the DSL, to the contrary voters were told otherwise. Id. at 220 Fn.7.

6) Prop. 222 'Indeterminate Sentence' of 15/25 years 'to life' establishing minimum and potential maximum terms. making what was Prop. 7's terms, of the minimum only the maximum, creating determinate of Prop. 7's terms, between 1978-1998. As the ex post facto law looks to the sentence imposed id. Ex. 'L'.

Petitioner alleges, the action (supra, infra) has extended his incarceration, as a prisoner of a 'class of one', by denial under a no parole policy.

The Board, uses 'rote' mechanical phrases to trigger 3041(b), to deny Maximum Eligiblity Release Date under comparative porportionality && uniformity of harmonized pari materia statutes & regulations. As 3041(a) is not vague, n and 3041(b), would constitute vague, as the Board does not follow supra, provisions and mandates of, term setting. The vice of vagueness is the treachery concealed, voiding the Doctrine Of Prison And Campus Contexts. Citing, 26Stanf L. Rev. 855; In re to, Blany (1947) 30 C.2d 643, Id. 656, 184 P.2d 892; Saad (1951) 105 C.A.2d Supp. 851, 234 P.2d 785; Thus, the above, law Journals of Law and infra, of incorporated by cross reference statutes IS the legislatures doctrine & theory, as to, the penological (i.e. supra, # 3, Straight Life Sentence P.C. 209.) (4) out of (6) sentence plan for discreationary retention, In re to, 13 Stanf. L. Rev. 341; 50 Cal. L. Rev. 651.

As here, the Board and Courts using the Dannenberg, supra # 5, line of cases, has subverted 3041(a), porportionate & uniform terms guided by the provisions of legislature intent of 1170(a), In re to, Martin (1986) 42 C.3d 437, 442-443, 299 C.R. 131, 722 P.2d 785,. As 1170 applies the tri-paritiate terms, that 3041(a) is intended to serve by the matrix's. In re to, Stats. (1976) Ch. 1139 § 281 p. 5151; Being affirmed, cf, Stanworth(1983) 33 C.3d 180 at p. 184, cf. People v. Jefferson 21 Cal. 4th 86, 95.

Petitioner re-alleges, as of Oct. 1979, 60 Ops. Att. Gen. 143, has full knowledge of Section 6, Discharge & parole, as to petitioner sentence, the Boards duty is under DSL's 1170(b), to review sentences of imates committed to prison to determine IF a substantial difference exists between subject sentence

1  and a sentence imposed on other offenders committing the same offense under

2  similar circumstances, as 3041(a) does comply with 1170.3 Rules of Judicial

3  Council.

4  Where, In People v. Rizo (2000) 22 C. 4th 681, 688, 94 C.R. 2d 375, 996 P.

5  2d 931; Noted the historical circumstances of the DSL's enactment to consider

6  every statute with reference to all other statutes covering similar subjects

7  so that each part of the law operates as a whole & is given effect by harmon-

8  ized pari materia statutes. Also see, Franchise Tax Bd. v. Superior Court (19-

9  98) 63 C.A. 4th 794, 73 C.R. 2d 889.

10  Thus, as here, petitioner 209(b) kidnap has P.C. credits, to apply to re-

11  duce his term. Just as in Weaver v. Graham (1981) 450 U.S. 24, 29, 67 L.Ed.2d

12  17, 23, 101 S.Ct. 960, the court held a statute which, changes the computation

13  of 'gain time credits' violates the ex post facto clause.

14  As noted in Weaver, supra, when applied to Prop. 222, the Title & Summary,

15  its text nor its analysis establish SB 1231 S 1, nor AB 446 S 1, the Legisla-

16  tures P.C. S 190, (1996) Ch. 598 SS 1, 4; has made Prop. 7's, P.C. 190's, 'The

17  -ory Sentence' 'to life' between 1978-1998, minimums of 10/16.8 latter minimum

18  only the minimum, leaving 15/25 minimum now only the maximum sentence.

19  This is because Prop. 222, repealed P.C. credits SS 2930-2932, of Prop. 7,

20  to reduce the 'theory Sentence' 'to life' minimum. As here, the law needs not

21  impair vested rights to violate ex post facto prohibitions; As 'critical to re

22  -lief under ex post facto is not the individual's right to less punishment,

23  but the lack of fair notice & the governmental restraint when the crime was

24  consummated. Id. Weaver v. Graham, supra.

25  just as Prop. 222, and state Supreme Court precendent line of cases Dannen

26  berg, the United States Supreme Court noted in a similar line of cases, In re

27  to, Lindsey v. Washington (1937) 301 U.S. 397, 81 L.Ed. 1182, 57 S.Ct. 797;

28  considered a law, where, the legislature amended a discreationary term that

1 could have been set at any period of time up to 15 years, the amendment pro-

2 voded for an indeterminate 15 years 'to life' term, and it could not be app-

3 lied retroactively. 'The effect here, are just the same, in that Prop. 222,

4 has made the new statute that was before only the maximum sentence. see, Lind-

5 sey, supra, id. at p. 400. Thus, the ex post facto clause looks to the stan-

6 dard of punishment, rather than the sentence actually imposed. id. 81 LEd.

7 1185-1186.

8     Petitioner alleges, the objective factor, is entirely the opinion & analy-

9 sis of criteria. Where, as here, the Board has deprived petitioner of his lib-

10 erty. U.S. v. Dexter 143 F.3d 577 (10th Cir. 1998); Schweilker v. McClure 456

11 U.S. 188, 195, 102 S.Ct. 1665 (1982). As in this case, there is nothing in the

12 record to establish, or even hint, that the Board members at petitioners hea-

13 ring have the same professional credential as a California Board Certified Psy

14 chologist/Psychiatrist. In fact, per the Department of Corrections Operational

15 Manual § 62090.14.1, staff, icluding Parole Board Members, cannot evaluate an

16 inmate unless they have at least (2) years of graduate training in psychiat-

17 rity. As in this case, the above shows how after (6) hearing, the record Is a

18 systematic denial, of cryptic 'word' 'reasons' of the same factors without any

19 'new information', estblishing a NO PAROLE POLICY, by the pre-determined den-

20 ials, O'Bremski v. mass, 915 F.2d 418, 422 (9th Cir. 1990); by plainly disre-

21 garding the 'substantial law', [law of pleading, of evidence, of jurisdiction]

22 denying equal protection as to a 'class of one', to establish 'in jeapordy of

23 punishment', see, Fain v. Duff C.A. Fla. 488 F.2d 218, 255; by avoiding gain

24 time credits to set MFRPD and MFPD, increasing punishment over regulations,

25 violating the 6th Amendment of the Federal Constitution.

26     Thus, as petitioner has a liberty interest, being in a 'class of one', the

27 Board and the Judicial are not immune from review. As state Court's (i.e. Dan-

28 nenberg, line of cases) Judge Made Law, has construed away the meaning in P.C.

1  3041(a), by subterfuging to evade, by finding meaning in 3041(b) that the Leg-

2  islature never intended, creating a constructive amendment of statutes and of

3  regulations, putting petitioner outside 209(b) kidnap, to a life without the

4  possibility of parole, leaving petitioner outside the (4) distinct release to

5  a period of parole scheme of the DSL.

6    Thus, petitioner's 209(b) kidnap, pursuant to the DSL, has the right to

7  due process, stemming from his liberty interest thats attached to release with

8  -in the 6th Amendment of federal constitution, as petitioner has served beyond

9  the matrix's maximum of 17 years, with any or all parole period being served.

10    Petitioner re-alleges, Docket # 1, Claims 1-3, in Toto, as the Board fail-

11  ed to distinguish or acknowledge petitioners term setting date, or his equally

12  culpability, to the current level of threat to public is his own. Thus, the

13  Boards determination to focus upon public safety risk, does not flow from 'new

14  information' of 'pertinent criteria', being supported by 'some evidence' in

15  the record [not an opinion] before the Board, to indicate a continuing danger

16  to the public.

17    As here, the evidence must show an unreasonable risk to the public. The

18  Board fails to show or indicate such risk, and therefore the writ should be

19  granted in full.

20    Petitioner re-alleges Docket # 1, Claim # 4, in Toto, as the Superior Cour

21  made no comments to Claim # 4, by reference or denialissues. Thus, Claim # 4,

22  must be deemed true and correct.id at pp. 13-15.

23    As the Board violates 3041 objective, evades established federal due pro-

24  cess, by the subterfuge to evade statutes using Judge Made Law of the Dannen-

25  berg line of cases, finding meaning thats not within statutes, creating a vagu

26  3041(b) as follows:

27    1)  Has the Board violated California's parole scheme, by the use of Jud-
        ge made Law, violating regulations maximum matrix's, placing petition
28        er in jeapordy, or twice the jeapordy of finality of the maximum?

2)   has state Courts interpretation been contrary to federal due process
     rights, as statutes create a liberty interest?

3)   has the interpretation of Sass, Dannenberg, line of cases, effective-
     ly changed 25 years of reliance on plain language, disposing of pro-
     porationality, to ignore jury verdicts, facts admitted to, creating
     a standard of 'some evidence' not found within the statutes?

4)   has the judicial decisions of case law, violated Judicial Councils
     sentencing rules and statutory intent of cross reference of 60 Ops.
     Att. gen. 143, by Prop.7's, Dannenberg, line of cases?

5)   Has Dannenberg line of cases, hidden and evaded sentence schemes of
     (4) of the (6) that was drafted as part of the DSL?

6)   has the Dannenberg line of cases, been used to evade provisions and
     mandates found pursuant to 3041, violating a cognizable liberty in-
     terest, where 3041 language is virtually idential to Allen?

Petitioner re-alleges Docket # 1, Claim # 5, at pp. 15-29; in _Toto_; that c:
pursuant to Judge made Law, the _Sass & Dannenberg_, decisions is clearly con-
trary to each other; Being violative of protected liberty interest of release
to a period of parole pursuant to gain time credits by the Voters, and by the
Legislature's, incorporated by cross reference statutroy scheme of the Deter-
minate Sentencing law, to which, _Sass & Dannenberg_, as a line of cases, were
not drafted as part of the ISL, nor a continuing DSL' scheme as follows:

1)   has the state court provided a low level review standard for the Board
     Board by adopting a odisplinary standard of review call the 'Some
     evidence', in which, the Supreme Court found for a state prison
     system which, had no standard of review?

2)   has the 'some evidence' standard provided a new tier of facts to
     be enuniciated in statutory language of incorporation by cross
     reference statutes?

3)   has the Board eliminated the comparative terms, by recharacterizing
     the term without a preponderance of evidence, by the Dannenberg line
     of cases?

4)   has the Board decisions been contrary to contemporenous case law,
     and of 60 Ops. Att. Gen. 143; and that of the regulations maximum
     matrix's?

5)   has the _Dannenberg & Rosenkrantz_, line of cases, been used by the
     Board as a bar to release, irrespective of risk or danger, in the
     act of avoiding legislative intent of statutes §§ 1170.1, 3041, 3000.

6)    has the Rosenkrantz & Dannenberg line of cases, violated the leg-
      islatures intended intent of due process and equal protection in
      permitting the Board to create a 'class of one', and by voiding
      the presumptive range of the matrix's?

7)    has the Dannenberg & Rosenkrantz line of decisions, allowed the Board
      to violate incorporation by incorporated cross reference statutes
      to combine (4) of the (6) different types of sentences into one by
      borrowing a little from this & to take a little from that, in an
      attempt to make a coherent release scheme, but violating statutes
      in doing so?

8)    has state courts evaded federal issues of rights by an obvious
      subterfuge to evade statutes interpretation?

9)    has the Board violated their discreationary powers?

10)   has the Board evaded the presumption of Evidence Code § 605, that
      implements public policy, and has the Board eliminated uniformity
      of punishment by voiding 3041(a) procedures at hearings?

11)   has the Board violated the limited procedures they posses at hearing
      pursuant to P.C. §§ 3041.5, 3041(a) provisions, 1170.1 & 2931, 2932
      in fixing the maximum pursuant to regulations of supra, penal codes?

12)   was the 'some evidence' by the Supreme Courts Ruling ever ment to
      control Board Hearings for release to parole? see, Hill...

13)   has the Board evaded the preponderance of evidence standard and that
      of  Evidence Code Section 115 of California Statutes?

The Dannenberg decision is contrary to clearly established Supreme Court

Law, as it relies on a subterfuge to evade the vague language of 3041(b) as

follows:

1)    has the Dannenberg decision allowed vague meanings, where men of com-
      mon intelligence has guessed at the interpretation, and has invited
      an arbitrary & discriminatory (i.e. 'class of one') enforcement?

2)    has the Board recharacterized every crime to a greater crime by using
      rote wording to create 'some evidence' after (6) hearings with the
      same reason for denial?

3)    has Dannenberg line of cases created a constructive amendment to the
      intent of statutes, voiding legislatures designed intent, by finding
      meaning thats not in 3041(b)?

4)    has not the Board, and the findings by state Courts taken the statu-
      tory scheme of the maxtrix by Legislatures designed intent to be
      void, by subterfuging the controling statutes of incorporation of
      incorporated by cross reference harmonized pari materia statutes,
      and by voiding jury or judges findings violating due process?

20

## PROOF OF SERVICE BY MAIL
### (C.C.P. 1013(a), 2015.5)

I, Elkins Gomez, declare that I am over 18 years of age and that I am the pro per petitioner to the herein attached cause of action.

My Complete mailing address is: Elkins Gomez E-44776, P.O. Box 689, F-205L CTF Central, Soledad State Prison, Soledad, CA. 93960-0689.

I further declare that I have deposited a true and complete copy(s) of the attached; PETITION FOR REVIEW FROM A DENIAL OF HABEAS CORPUS PETITION CASE NO. B196037 OF CALIFORNIA COURT OF APPEALS SECOND DISTRICT OF LOS ANGELES; SUPER. CT. NO. BH003906, David S. Wesley, Judge, addressed to the following list below, in sealed envelope(s) with postage fully pre-paid, and deposited said document in the U.S. Mail Box (Prison Mail Box) at CTF Central, Soledad State Prison, Soledad, CA. 93960-0689.

```
1-copy    Supreme Court of California
          Clerk  of the Court
          350 McAllister Street
          San Francisco, Ca. 94102-4797

1-copy    Second Appellate District
          300 Spring Street
          Fl. 2, N. Tower (Clerk)
          Los Angeles, Ca. 90013

1-copy    Attorney General
          110 West A Street, Suite 1100
          P.O. Box 85266
          San Diego, Ca. 92186-5266
```

I declare under penalty of perjury that the foregoing is true and correct, excuted this 22 day of Feburary, 2007 at CTF Central, Soledad State prison, Soledad, Ca. 93960-0689.

_____
ELKINS GOMEZ, in pro se